UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

KRISTY DUMONT; DANA
DUMONT; ERIN BUSK-SUTTON;
REBECCA BUSK-SUTTON; and
JENNIFER LUDOLPH,

No. 17-cv-13080-PDB-EAS

     Plaintiffs,

HON. PAUL D. BORMAN

v.

MAG. ELIZABETH A.
STAFFORD

NICK LYON, in his official capacity
as the Director of the Michigan
Department of Health and Human
Services; and HERMAN MCCALL,
in his official capacity as the
Executive Director of the Michigan
Children's Services Agency,

**DEFENDANTS NICK LYON
AND HERMAN MCCALL'S
MOTION TO DISMISS**

     Defendants.

_____

Ann-Elizabeth Ostrager
Ryan D. Galisewski
Jason W. Schnier
Attorneys for Plaintiffs
Sullivan & Cromwell LLP
125 Broad Street
New York, NY 10004
(212) 558-7357
Ostragerae@sullcrom.com
Galisewskir@sullcrom.com
Schnierj@sullcrom.com

Daniel Mach
Attorney for Plaintiffs

Leslie Cooper
Attorney for Plaintiffs
ACLU Foundation
125 Broad St., 18th Floor
New York, NY 10004
(212) 549-2584
lcooper@aclu.org

Jay D. Kaplan (P38197)
Michael Steinberg (P43085)
Kary L. Moss (P49759)
Attorneys for Plaintiffs
American Civil Liberties
Fund of Michigan

American Civil Liberties Union
915  15th St., NW
Washington, DC 20005
(202) 675-2330
dmach@aclu.org

2966 Woodward Avenue
Detroit, MI 48201
(313) 578-6814
kaplan@aclumich.org
msteinberg@aclumich.org

_____

Joshua S. Smith (P63349)
Jonathan S. Ludwig (P64919)
Attorneys for Defendants
Michigan Department of Attorney General
Health, Education & Family
Services Division
P.O. Box 30758
Lansing, MI 48909
(517) 373-7700
smithj46@michigan.gov
ludwigj1@michigan.gov

John J. Bursch (P57679)
Attorney for Defendants
Bursch Law PLLC
9339 Cherry Valley
Avenue SE, #78
Caledonia, MI 49316
(616) 450-4235
jbursch@burschlaw.com

_____/

## DEFENDANTS NICK LYON AND HERMAN MCCALL'S MOTION TO DISMISS

Defendants Nick Lyon and Herman McCall move this Court under
Fed. R. Civ. P. 12(b)(1) and (6) to dismiss the Complaint, for the reasons
below and explained more fully in the attached Brief.

1. When Plaintiffs lack standing under U.S. Const., art. III, § 2,
the Court does not have subject matter jurisdiction and the complaint
must be dismissed under Fed. R. Civ. P. 12(b)(1). *Conley v. Gibson*, 355
U.S. 41, 45-46 (1957); *Carver v. Bunch*, 946 F.2d 451, 452 (6th Cir.
1991). Plaintiffs primarily allege they have been injured as taxpayers.

1

(Doc. 1, Cplt., ¶¶ 64, 69, 74, 79, Pg. ID 17-19.)  But because Plaintiffs challenge discretionary executive activity, they lack taxpayer standing and their claims should all be dismissed.

2.    This Court should also dismiss a complaint that fails to state a claim upon which relief can be granted.  Fed. R. Civ. P. 12(b)(6).  A Rule 12(b)(6) motion should be granted when "it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations."  *Hishon v. King & Spalding*, 467 U.S. 69, 73 (1984).  Here, Plaintiffs fail to state a claim because they challenge facially neutral contracting policies that neither establish a religion nor discriminate.  And, because there is no fundamental right to be a foster parent, the challenged contracting policy survives the applicable rational basis test.

3.    "Courts may also consider public records, matters of which a court may take judicial notice, and letter decisions of governmental agencies."  *Jackson v. City of Columbus*, 194 F.3d 737, 745 (6th Cir. 1999), abrogated on other grounds, *Swierkiewicz v. Sorema N. A.*, 534 U.S. 506 (2002).  Similarly, courts may consider exhibits attached to the pleadings that are central to the claims without converting the motion

2

to one for summary judgment. *Kaminski v. Coulter*, 865 F.3d 339, 344 (6th Cir. 2016).

4.      Pursuant to Local Rule 7.1(d), on December 14, 2017, counsel for Defendants contacted Plaintiffs' counsel to determine if they would concur in the relief sought, providing an explanation of the nature of and basis for the motion, in addition to the opportunity to confer.  Plaintiffs' counsel refused to concur, thereby necessitating this motion.

Respectfully submitted,

Bill Schuette
Attorney General


/s/ Joshua S. Smith
Assistant Attorney General
Attorneys for Defendants
Health, Education & Family
Services Division
P.O. Box 30758
Lansing, MI 48909
(517) 373-7700
Smithj46@michigan.gov
P63349

Dated:  December 15, 2017

## CERTIFICATE OF SERVICE

I hereby certify that on December 15, 2017, I electronically filed the above document(s) with the Clerk of the Court using the ECF System, which will provide electronic copies to counsel of record.

/s/ Joshua S. Smith
Assistant Attorney General
Attorneys for Defendants
Health, Education & Family
Services Division
P.O. Box 30758
Lansing, MI 48909
(517) 373-7700
Smithj46@michigan.gov
P63349

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

KRISTY DUMONT; DANA
DUMONT; ERIN BUSK-SUTTON;
REBECCA BUSK-SUTTON; and
JENNIFER LUDOLPH,                      No. 17-cv-13080-PDB-EAS

     Plaintiffs,                          HON. PAUL D. BORMAN

v.                                     MAG. ELIZABETH A.
                                       STAFFORD
NICK LYON, in his official capacity
as the Director of the Michigan        **DEFENDANTS NICK LYON**
Department of Health and Human         **AND HERMAN MCCALL'S**
Services; and HERMAN MCCALL,           **BRIEF IN SUPPORT OF**
in his official capacity as the        **MOTION TO DISMISS**
Executive Director of the Michigan
Children's Services Agency,

     Defendants.
_____

Ann-Elizabeth Ostrager            Leslie Cooper
Ryan D. Galisewski                Attorney for Plaintiffs
Jason W. Schnier                  ACLU Foundation
Attorneys for Plaintiffs          125 Broad St., 18th Floor
Sullivan & Cromwell LLP           New York, NY 10004
125 Broad Street                  (212) 549-2584
New York, NY 10004                lcooper@aclu.org
(212) 558-7357
Ostragerae@sullcrom.com           Jay D. Kaplan (P38197)
Galisewskir@sullcrom.com          Michael Steinberg (P43085)
Schnierj@sullcrom.com             Kary L. Moss (P49759)
                                  Attorneys for Plaintiffs
                                  American Civil Liberties
Daniel Mach                       Fund of Michigan
Attorney for Plaintiffs

American Civil Liberties Union
915  15th St., NW
Washington, DC 20005
(202) 675-2330
dmach@aclu.org

2966 Woodward Avenue
Detroit, MI 48201
(313) 578-6814
kaplan@aclumich.org
msteinberg@aclumich.org

_____

Joshua S. Smith (P63349)
Jonathan S. Ludwig (P64919)
Attorneys for Defendants
Michigan Department of Attorney General
Health, Education & Family
Services Division
P.O. Box 30758
Lansing, MI 48909
(517) 373-7700
smithj46@michigan.gov
ludwigj1@michigan.gov

John J. Bursch (P57679)
Attorney for Defendants
Bursch Law PLLC
9339 Cherry Valley
Avenue SE, #78
Caledonia, MI 49316
(616) 450-4235
jbursch@burschlaw.com

_____/

## DEFENDANTS NICK LYON AND HERMAN MCCALL'S BRIEF IN SUPPORT OF MOTION TO DISMISS

Bill Schuette
Attorney General

Joshua S. Smith
Assistant Attorney General
Attorneys for Defendants
Health, Education & Family
Services Division
P.O. Box 30758
Lansing, MI 48909
(517) 373-7700
Smithj46@michigan.gov
P63349

Dated:  December 15, 2017

# TABLE OF CONTENTS

Page

Table of Contents ....................................................................................i

Index of Authorities................................................................................ iii

Concise Statement of Issues Presented ...................................................viii

Controlling or Most Appropriate Authority............................................viii

Introduction............................................................................................1

Statement of Facts ..................................................................................2

    Foster care and adoption in Michigan ..............................................2

    2015 P.A. 53.....................................................................................4

    Facts alleged....................................................................................6

Argument................................................................................................8

I.    Plaintiffs do not have standing........................................................8

    A.    Because Plaintiffs challenge discretionary executive
          activity, they lack taxpayer standing. ....................................9

    B.    Plaintiffs also fail to satisfy the injury, causation, and
          redressability requirements for standing............................. 12

          1.    The Dumonts and Busk-Suttons cannot show
               injury redressable by this Court.................................. 12

          2.    Ms. Ludolph lacks standing for failure to allege
               any redressable injury. ................................................ 14

          3.    Plaintiffs lack standing to assert the claims of
               foster children. ........................................................... 15

II.    Plaintiffs fail to state a claim upon which relief may be
    granted. ....................................................................................... 16

A.  Plaintiffs fail to state a claim under the Establishment Clause (Count I). .................................................................. 16

B.  Plaintiffs fail to state a claim based on the Equal Protection Clause (Count II). ............................................. 19

    1.  Plaintiffs fail to challenge state action. ....................... 19

    2.  Michigan's foster and adoption system satisfies the rational-basis test. .................................................. 22

Conclusion and Relief Requested ............................................ 25

Certificate of Service .............................................................. 26

# INDEX OF AUTHORITIES

Page

## Cases

*Adult Video Ass'n v. Dep't of Justice,*
    71 F.3d 563 (6th Cir. 1995) ........................................................... 8, 15

*Corporation of Presiding Bishop of Jesus Christ of Church of*
    *Latter-day Saints v. Amos,*
    483 U.S. 327 (1987) ...................................................................viii, 16

*Cutter v. Wilkinson,*
    544 U.S. 709 (2005) ............................................................................ 18

*DaimlerChrysler Corp. v. Cuno,*
    547 U.S. 332 (2006) .............................................................................. 9

*Doremus v. Bd. of Educ. Of Hawthorne,*
    342 U.S. 429 (1952) ............................................................................ 10

*Edmonson v. Leesville Concrete Co.,*
    500 U.S. 614 (1992) ...................................................................viii, 20

*Flast v. Cohen,*
    392 U.S. 83 (1968) ..................................................................... 1, 9, 10

*Gillette v. United States,*
    401 U.S. 437 (1971) ............................................................................ 18

*Hein v. Freedom from Religion Foundation, Inc.,*
    551 U.S. 587 (2007) ...........................................................viii, 10, 11

*Heller v. Doe by Doe,*
    509 U.S. 312 (1993) ............................................................................ 23

*Kach v. Hose,*
    589 F.3d 626 (3d Cir. 2009)............................................................. 20

*Kowalski v. Tesmer,*
    543 U.S. 125 (2004) ............................................................................ 15

*Lemon v. Kurtzman,*
  403 U.S. 602 (1971) ...............................................................viii, 16, 17

*Lintz v. Skipski,*
  807 F. Supp. 1299 (W.D. Mich. 1992) ..................................................20

*Lujan v. Defenders of Wildlife,*
  504 U.S. 555 (1992) ..............................................................viii, 2, 8, 12

*Massachusetts v. Mellon,*
  262 U.S. 447 (1923) ..........................................................................9

*Mitchell v. Helms,*
  530 U.S. 793 (2000) ........................................................................19

*Molnar v. Care House,*
  574 F. Supp. 2d 772 (E.D. Mich. 2008) ..............................................21

*Rendell-Baker v. Kohn,*
  457 U.S. 830 (1982) ..................................................................viii, 21

*Renfro v. Cuyahoga Cty Dep't of Human Servs,*
  884 F.2d 943 (6th Cir. 1989) ............................................................12

*S&M Brands Inc. v. Cooper,*
  527 F.3d 500 (6th Cir. 2008) ............................................................14

*Scarbrough v. Morgan Cnty. Bd. of Educ.,*
  470 F.3d 250 (6th Cir. 2006) ......................................................viii, 22

*Schlesinger v. Reservists Comm. to Stop the War,*
  418 U.S. 208 (1974) ........................................................................10

*Smith v. Gristin*a,
  2012 WL 247017, at *3 (S.D.N.Y. Jan. 6, 2012) ..................................22

*Smith v. Jefferson County Bd. of School Comm'rs,*
  641 F.3d 197 (6th Cir. 2011) ............................................................16

*Smith v. Org. of Foster Families for Equality and Reform,*
  431 U.S. 816 (1977) ........................................................................12

*Storino v. Borough of Point Pleasant Beach,*
 322 F.3d 293 (9th Cir. 2003) ............................................................. 10

*Trinity Lutheran Church of Columbia, Inc. v. Comer,*
 137 S. Ct. 2012 (2017) ............................................................... 19, 24

*U.S. v. Decastro,*
 682 F.3d 160 (2d Cir. 2012) ............................................................. 13

*U.S. v. Hayes,*
 515 U.S. 737 (1995) .................................................................... 9, 15

*Valley Forge Christian Coll. v. Americans United for Separation of
 Church & State, Inc.,*
 454 U.S. 464 (1982) ........................................................................ 10

*Walz v. Tax Comm'n of the City of New York,*
 397 U.S. 664 (1970) ........................................................................ 18

*Warth v. Seldin,*
 422 U.S. 490 (1975) ........................................................................ 15

*Whitmore v. Arkansas,*
 495 U.S. 149 (1990) ..................................................................... 8, 15

*Wilder v. Bernstein,*
 645 F. Supp. 1292 (S.D.N.Y. 1986), *aff'd,* 848 F.2d 1338 (2d Cir.
 1988) ............................................................................................ 24

*Will v. Michigan Department of State Police,*
 491 U.S. 58, 71 (1989) .................................................................... 14

*Wolfe v. Perry,*
 412 F.3d 707 (6th Cir. 2005) ........................................................... 15

*Wolotsky v. Huhn,*
 960 F.2d 1331 (6th Cir. 1992) ......................................................... 20

*Young,*
 209 U.S. 123 (1908) ........................................................................ 14

*Zelman v. Simmons-Harris,*
  536 U.S. 639 (2002) ................................................................... 19

**Statutes**

42 U.S.C. § 2000e-1 ................................................................... 16

42 U.S.C. § 290kk-1 .................................................................... 5

42 U.S.C. § 604a(d)(1) ................................................................ 22

Mich. Comp. Laws § 400.14f ........................................................ 4

Mich. Comp. Laws § 712A.13a(1)(e) ............................................. 3

Mich. Comp. Laws § 712A.13a(9) ................................................. 2

Mich. Comp. Laws § 722.111 ....................................................... 4

Mich. Comp. Laws § 722.111(1)(c) ............................................... 4

Mich. Comp. Laws § 722.124e ...................................................... 4

Mich. Comp. Laws § 722.124e(1)(e) .............................................. 5

Mich. Comp. Laws § 722.124e(1)(g) .............................................. 5

Mich. Comp. Laws § 722.124e(1)(i) .............................................. 21

Mich. Comp. Laws § 722.124e(2) ................................................ 5, 6

Mich. Comp. Laws § 722.124e(3) ................................................... 5

Mich. Comp. Laws § 722.124e(7)(b) .............................................. 6

Mich. Comp. Laws § 722.124f ..................................................... 4, 6

Mich. Comp. Laws § 722.124f(1) ................................................... 6

Mich. Comp. Laws § 722.124f(1)(a) ............................................... 6

Mich. Comp. Laws § 722.124f(1)(b) ............................................... 6

Mich. Comp. Laws § 722.954(1) .................................................... 4

**Regulations**

Mich. Admin. Code R. 400.12201 ............................................................. 4

## CONCISE STATEMENT OF ISSUES PRESENTED

1. Whether Plaintiffs have taxpayer standing when the actions they challenge do not derive from a specific legislative appropriation for a specific legislative purpose.

2. Whether Plaintiffs have Article III standing when the injuries they allege flow from third parties and are not redressable here.

3. Whether Plaintiffs have stated a claim under the Establishment Clause when Defendants have not established a preference for religion but have advanced the secular purpose of attempting to provide a greater number of loving families for foster children.

4. Whether Plaintiffs have stated a claim under the Equal Protection Clause when Plaintiffs challenge private conduct, not government action, and Defendants' actions are reasonably related to the rational purpose of providing a greater number of loving families for foster children.

## CONTROLLING OR MOST APPROPRIATE AUTHORITY

*Authority*: *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992); *Hein v. Freedom from Religion Foundation, Inc.*, 551 U.S. 587, 602-03 (2007); *Lemon v. Kurtzman*, 403 U.S. 602 (1971); *Corporation of Presiding Bishop of Jesus Christ of Church of Latter-day Saints v. Amos*, 483 U.S. 327 (1987); *Edmonson v. Leesville Concrete Co.*, 500 U.S. 614, 619 (1992); *Rendell-Baker v. Kohn*, 457 U.S. 830 (1982); *Scarbrough v. Morgan Cnty. Bd. of Educ.*, 470 F.3d 250, 260-61 (6th Cir. 2006).

## INTRODUCTION

The State of Michigan faces a monumental task:  finding loving families to care for the more than 13,000 children who have been determined to be dependent due to maltreatment and now require foster care and/or adoption services.  Identifying families to care for these children requires many public and private agencies, faith-based and non-faith-based, working diligently to recruit foster and adoptive parents. Maximizing the number and diversity of agencies can help that effort by increasing connections to communities and options for child placement.

Michigan's 2015 child-protection law, and Defendants' implementation of it, further that goal.  If faith-based agencies are not allowed to operate according to their religious principles, they will shut down, which can have the effect of reducing the number of available families. Such a result will do nothing to help a single child find a home.

Plaintiffs do not directly challenge the 2015 child-protection law. Instead they attack the law's implementation.  But there is no basis for allowing this lawsuit to proceed.

To begin, Plaintiffs lack Article III standing either under the test for taxpayer standing of *Flast v. Cohen*, 392 U.S. 83 (1968), or the usual

standing test of *Lujan v. Defenders of Wildlife*, 504 U.S. 555 (1992).

That is because they challenge executive, not legislative appropriations,

and claim no redressable injury.  In addition, Plaintiffs fail to state a

claim on either Count I or Count II.  Michigan's adoption law and

practices are designed to ensure there is no religious entanglement of

government and religion—they do not establish a religion.  And the

Equal Protection Clause applies only to government conduct, while this

lawsuit attacks the conduct of private actors.  Accordingly, Defendants

respectfully ask that the Court grant their motion to dismiss.

## STATEMENT OF FACTS

### Foster care and adoption in Michigan

This case concerns Michigan's foster and adoption system, which

is administered by the Department of Health and Human Services.  The

Department, led by Defendant Director Nick Lyon, administers the

system through the Michigan Children's Services Agency, led by

Defendant Dr. Herman McCall, Ed.D.  This system provides temporary

care and custody to children when a court finds that children have no

legal guardian or have been neglected or abused.  Mich. Comp. Laws

§ 712A.13a(9).  There are more than 13,000 children in foster care,

about 300 of whom are available for adoption.[1]  That care is provided in foster-family homes, child-care institutions, and relative homes.  Mich. Comp. Laws § 712A.13a(1)(e).

Child Placing Agencies, or CPAs, are licensed to provide services at 108 locations throughout the state, including the counties where Plaintiffs reside.[2]  Three of the Plaintiffs, the Busk-Suttons and Ms. Ludolph, live in Detroit.  (Doc. 1, Cplt., ¶¶ 20-21, Pg. ID 6.)  Wayne County contains 19 CPAs[3], 10 of which are in Detroit.[4]  The other two Plaintiffs, the Dumonts, live in Dimondale, in Eaton County near the border with Ingham County.  (Doc. 1, Cplt., ¶ 19, Pg. ID 6.)  Although Eaton County does not contain any CPAs, Ingham County contains six.[5]

---

[1] http://www.michigan.gov/mdhhs/0,5885,7-339-73971_7117---,00.html (last accessed September 27, 2017).

[2] See https://w2.lara.state.mi.us/CWL-Search.  Results obtained by selecting "Child Placing Agency, Private" under the "Facility Type" menu (last accessed November 20, 2017).

[3] *Id.*  Results obtained by selecting "Child Placing Agency, Private" under the "Facility Type" menu and "Wayne" under the "County" menu (last accessed November 20, 2017).

[4] *Id.*  Results obtained by selecting "Child Placing Agency, Private" under the "Facility Type" menu and entering "Detroit" in the "City" menu (last accessed November 20, 2017).

[5] *Id.* Results obtained by selecting "Child Placing Agency, Private" under the "Facility Type" menu and "Eaton" and then "Ingham" under the "County" menu (last accessed November 20, 2017).

3

In addition, the Department itself offers foster care services in Eaton, Ingham and Wayne Counties.

The Department licenses and regulates CPAs.  See generally Mich. Comp. Laws § 722.111 *et seq*.; Mich. Admin. Code R. 400.12201 *et seq*.  The Department has discretion to contract with licensed CPAs. Mich. Comp. Laws § 400.14f.  Under the terms of the contracts, the Department pays CPAs for the services they render.  One of the many tasks undertaken by government and non-government CPAs is to license foster families.  Mich. Comp. Laws § 722.954(1); Mich. Comp. Laws § 722.111(1)(c).

**2015 P.A. 53**

Plaintiffs make several allegations about 2015 House Bills Nos. 4188, 4189 and 4190, which were enacted as 2015 P.A. 53 and are codified at Mich. Comp. Laws §§ 722.124e and 722.124f.  (Doc. 1, Cplt., ¶¶ 38-50, Pg. ID 11-14.)  Plaintiffs do not challenge P.A. 53's constitutionality, but they do challenge Defendants' compliance with it.

In enacting P.A. 53, the Legislature concluded that "[c]hildren and families benefit greatly from the adoption and foster care services pro-

vided by faith-based and non-faith-based child placing agencies.  Ensuring that faith-based child placing agencies can continue to provide adoption and foster care services will benefit the children and families who receive publicly funded services."  Mich. Comp. Laws § 722.124e(1)(g).[6] Accordingly, P.A. 53 guarantees CPAs "the right to free exercise of religion under both the state and federal constitutions," including "the freedom to abstain from conduct that conflicts with an agency's sincerely held religious beliefs."  Mich. Comp. Laws § 722.124e(1)(e). Section 124e provides that, "to the fullest extent permitted by state and federal law," a CPA is not required to provide any "service" that conflicts with its sincerely held religious beliefs, and the government may not take adverse action against a CPA on that basis.  Mich. Comp. Laws § 722.124e(2), (3).

P.A. 53 does not preclude the Department from taking adverse action against a CPA *after* the agency accepts a Department referral for services related to a particular child or particular individuals.  Mich.

---

[6] Federal law similarly recognizes that religious organizations may participate in providing services and, when they do, retain their free exercise rights.  42 U.S.C. § 290kk-1.

5

Comp. Laws § 722.124f.[7]  A CPA accepts a referral by either submitting
to the Department a written agreement to perform services related to
the particular child or particular individuals referred by the Depart-
ment, or engaging in any other activity that results in the Department
being obligated to pay the agency for the services related to the
particular child or particular individuals referred by the Department.
Mich. Comp. Laws § 722.124f(1)(a), (b).

A CPA may decline to accept a referral if acceptance of the referral
will result in a conflict with the CPA's sincerely held religious beliefs
contained in a written policy, statement of faith, or other document
adhered to by the CPA.  Mich. Comp. Laws §§ 722.124e(2), 722.124f(1).

**Facts alleged**

Plaintiffs ask this Court to enjoin Defendants from contracting
with any CPAs that follow their religious beliefs with respect to
marriage.  The Dumonts and the Busk-Suttons, both same-sex couples,
allege that they would like to adopt.  (Doc. 1, Cplt., ¶¶ 59, 67, Pg. ID 16,

---

[7] The definition of "services" does not include "foster care case
management and adoption services provided under a contract with the
department."  Mich. Comp. Laws § 722.124e(7)(b).

17.)  With 108 CPA locations to choose from, including many in their local areas (as noted above), these Plaintiffs contacted *only* faith-based agencies that, based on their religious beliefs, work with married, opposite-sex couples:  St. Vincent Catholic Charities and Bethany Christian Services.  (*Id.* ¶¶ 61-63, 68, Pg. ID 16-18.)  Both couples claim standing as taxpayers.  (*Id.* ¶¶ 64, 69, Pg. ID 17, 18.)

St. Vincent Catholic Charities and Bethany Christian Services are both licensed CPAs, and the Department has contracted with them to provide foster care and adoption services.  (See generally, SVCC Adoption Contract, Ex. 1; SVCC Adoption Contract, Amd. 1, Ex. 9; SVCC Foster Care Contract, Ex. 2; SVCC Foster Care Contract, Amd. 5, Ex. 3; BCS Adoption Contract, Ex. 4; BCS Adoption Contract, Amd. 1, Ex. 11; BCS Foster Care Contract, Ex. 5; BCS Foster Care Contract, Amd. 4, Ex. 6; BCS Foster Care Contract, Amd. 5, Ex. 7.)  Under the contracts, the CPAs agree to comply with the Department's non-discrimination statement with respect to contract services provided, and that statement includes protection based on sexual orientation.  (Ex. 1, § 2.9(c), p. 5; Ex. 3, § 2.9(c), p. 3; Ex. 4, § 2.9(c), p. 5; Ex. 7, § 2.9(c), p. 3.) But as Michigan law requires, the contracts also expressly incorporate

and protect a CPA's rights under P.A. 53.  (Ex. 1, § 2.9(e), p. 5; Ex. 4,

§ 2.9(3), p. 5; SVCC Foster Care Contract, Amd. 3, § 2.9(h), p 8, Ex. 8;

BCS Foster Care Contract, Amd. 3, § 2.9(h), p 8, Ex. 10.)

The fifth plaintiff, Ms. Ludolph, is a former foster child who has

also served as a foster parent.  (Doc. 1, Cplt., ¶¶ 71-72, Pg. ID 18.)  She

also alleges taxpayer standing and believes Defendants' policies could

have prevented her from finding her family two decades ago because

her foster father is an atheist.  (*Id.* ¶ 73, Pg. ID 18.)  Ms. Ludolph

overlooks that Defendants contracted with faith-based CPAs then, too.

## ARGUMENT

## I.    Plaintiffs do not have standing.

For standing to exist, a plaintiff must show:  (1) a "concrete, par-

ticularized, and actual or imminent" injury; (2) that is "fairly traceable"

to the defendant's alleged conduct; and (3) which the court could redress

by a favorable decision.  *Lujan v. Defenders of Wildlife*, 504 U.S. 555,

560-61 (1992).  The injury necessary to invoke constitutional standing

must be concrete and palpable, not merely abstract or hypothetical.

*Whitmore v. Arkansas*, 495 U.S. 149, 155 (1990); *Adult Video Ass'n v.*

*Dep't of Justice*, 71 F.3d 563, 567 (6th Cir. 1995).  Generalized

grievances "against allegedly illegal governmental conduct" are insufficient.  *U.S. v. Hayes*, 515 U.S. 737, 743 (1995).

## A. Because Plaintiffs challenge discretionary executive activity, they lack taxpayer standing.

Plaintiffs allege they have been injured as taxpayers and "object to the use of taxpayer funds to underwrite and endorse religious beliefs to which they do not subscribe."  (Doc. 1, Cplt., ¶¶ 64, 69, 74, 79, Pg. ID 17-19.)  But because Plaintiffs challenge discretionary executive activity, as opposed to legislatively mandated spending, they lack taxpayer standing.

Litigants generally do not have standing based on their status as taxpayers.  *Massachusetts v. Mellon*, 262 U.S. 447, 487 (1923).  That is because any particular taxpayer's burden is "comparatively minute and indeterminable."  *Id*.  The rules apply equally to state taxpayers. *DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332, 343-45 (2006).

In *Flast v. Cohen*, 392 U.S. 83 (1968), the Supreme Court created a narrow exception to this rule—though only in the context of an Establishment Clause challenge.  There is no such thing as taxpayer standing for an Equal Protection challenge.  *Storino v. Borough of Point*

*Pleasant Beach*, 322 F.3d 293, 298 n.2 (9th Cir. 2003) (citing Erwin

Chemerinsky, Federal Jurisdiction § 2.3.5 (3d ed. 1999)).

The *Flast* exception applies where a taxpayer alleges the unconstitutionality of a legislative act under the taxing and spending clause, where the challenged enactment exceeds constitutional limitations on the taxing and spending power.  392 U.S. at 102–04.  This exception is narrow and applies only where there is a specific legislative appropriation to implement a legislative mandate.  *Hein v. Freedom from Religion Foundation, Inc.*, 551 U.S. 587, 602-03 (2007).  An expenditure that results from *executive* discretion—like those here—does not qualify.  *Id.* at 605.  Taxpayers also lack standing to challenge issues of religious disagreement rather than "'direct dollar-and-cents'" injuries, *id.* at 601 (citing *Doremus v. Bd. of Educ. Of Hawthorne*, 342 U.S. 429, 433 (1952)), or to challenge executive actions that may aid religious groups, *id.* at 605-06, (citing *Valley Forge Christian Coll. v. Americans United for Separation of Church & State, Inc.*, 454 U.S. 464, 479 (1982) and *Schlesinger v. Reservists Comm. to Stop the War*, 418 U.S. 208, 228 (1974)).

Here, Plaintiffs challenge discretionary executive action—the Department's practice of contracting with faith-based CPAs. (Doc. 1, Cplt., ¶¶ 64, 69, 74, 79, Pg. ID 17-19.) Such contracts result in the Department paying the CPAs for their services. But there is no specific legislative appropriation, and there is no particular legislative mandate, such as requiring the Department to contract with particular CPAs (or, for that matter, any CPAs at all). Rather, the Department pays for the services of CPAs out of general appropriations for such purposes. Indeed, whether the Department contracts with a particular CPA is a matter of discretion. Mich. Comp. Laws § 400.14f.[8] As a result, all Plaintiffs lack taxpayer standing. *Hein*, 551 U.S. at 608.

---

[8] The Department "may contract with a private individual or agency to administer a program created under this act or to perform a duty of the family independence agency under this act." Mich. Comp. Laws § 400.14f.

**B.   Plaintiffs also fail to satisfy the injury, causation, and redressability requirements for standing.**

**1.   The Dumonts and Busk-Suttons cannot show injury redressable by this Court.**

The Dumonts and Busk-Suttons claim that the policies of third-party CPAs prevent them from being foster or adoptive parents.  This fails to establish Article III standing for four independent reasons.

First, there is no right to be a foster care parent.  *Smith v. Org. of Foster Families for Equality and Reform*, 431 U.S. 816, 844-47 (1977); *Renfro v. Cuyahoga Cty Dep't of Human Servs*, 884 F.2d 943, 944 (6th Cir. 1989).  In the absence of a right, Plaintiffs cannot show an injury that is concrete and particularized, or even actual or imminent.  *Lujan*, 504 U.S. at 560–561.

Second, the injuries alleged are not "fairly traceable" to Defendants' alleged conduct.  *Lujan*, 504 U.S. 560-61.  The Dumonts and the Busk-Suttons base their claims on the actions of third-party CPAs, specifically the allegation that these CPAs do not place foster children with same-sex couples.  (Doc. 1, Cplt., ¶¶ 78-79, 83-86, Pg. ID 19, 21.)  The alleged injuries are not "fairly traceable" to Defendants, but to these third-party CPAs.  Indeed, the alleged injuries cannot be "fairly

traceable" to the Department because the contracts between the

Department and the CPAs prohibit CPAs from discriminating against

potential applicants.

Third, Plaintiffs' alleged injuries are a result of their own conduct,

or lack thereof.  For instance, out of the 108 total CPAs in Michigan,

including 25 CPAs within the same counties as the CPAs they

contacted, Plaintiffs decided to call only two, faith-based CPAs, and

when they were referred elsewhere, simply stopped.  (Doc. 1, Cplt., ¶¶

61, 62, 68, Pg. ID 16-18.)  In addition, though having a foster license

might help Plaintiffs to adopt from the foster system, they fail to allege

that they even applied for a foster license.  *U.S. v. Decastro*, 682 F.3d

160, 164 (2d Cir. 2012) (party who never applied for concealed weapon

license lacks standing to challenge licensing laws).

Finally, Plaintiffs claims are not redressable.  Plaintiffs ask this

Court to stop Defendants from contracting with faith-based agencies

that, for religious reasons, only work with married, opposite-sex

couples.  If the Court so orders, the two CPAs with whom Plaintiffs

wish to work—and many other faith-based CPAs—will not provide any

services at all.  At that point, Plaintiffs would have to work with a

different CPA, and they can do that now.  Accordingly, they lack standing.

### 2.    Ms. Ludolph lacks standing for failure to allege any redressable injury.

Ms. Ludolph's claims are even more tenuous.  Other than her generalized grievance as a taxpayer, her asserted injuries are based on her experience in the foster system.  (Doc. 1, Cplt., ¶¶ 71, 73, Pg. ID 18-19.)  But she entered the foster system 20 years ago.  (Doc. 1, Cplt., ¶¶ 70-71, Pg. ID 18.)  The prospective declaratory and injunctive relief she seeks—which she is limited to under the Eleventh Amendment[9]— would not redress any injury.  (Doc. 1, Cplt., ¶¶ A-D, Pg. ID 21-22.)

Ms. Ludolph also fails to allege an injury fairly traceable to the Department.  She speculates that the alleged actions of third-party CPAs "could have prevented her from finding her [foster] family."  (Doc. 1, Cplt., ¶ 73, Pg. ID 18.)  This is an abstract, hypothetical, generalized grievance against the practices of third-party CPAs (that, incidentally, existed at the time of Ms. Ludolph's adoption as well).  It is wholly

---

[9] *Ex Parte Young*, 209 U.S. 123, 155-156 (1908); *Will v. Mich. Dept. of State Police*, 491 U.S. 58, 71 (1989); *S&M Brands v. Cooper*, 527 F.3d 500, 507 (6th Cir. 2008).

14

insufficient to establish standing. *Hayes*, 515 U.S. at 743; *Whitmore*, 495 U.S. at 155; *Adult Video Ass'n*, 71 F.3d at 567.

The injuries Ludolph alleges are also not "fairly traceable" to Defendant's alleged conduct, but to those of the third-party CPAs. And the limitations period for any such claim has long passed.[10]

### 3. Plaintiffs lack standing to assert the claims of foster children.

Plaintiffs also claim that the Department's actions "harm children" by denying access to foster families. (Doc. 1, Cplt., ¶¶ 79, 86, Pg. ID 19, 21.) But prospective foster families can work with any CPA at any location; the only way that allegation is true is if a family insists it must work with a particular CPA and that CPA, for any reason, declines.

From a legal perspective, however, Plaintiffs cannot assert the alleged rights of other individuals in any event. *Kowalski v. Tesmer*, 543 U.S. 125, 129 (2004); *Warth v. Seldin*, 422 U.S. 490, 499-502 (1975); *Smith v. Jefferson County Bd. of School Comm'rs*, 641 F.3d 197, 206

---

[10] Claims under 42 U.S.C. § 1983 are subject to a three-year statute of limitations. *Wolfe v. Perry*, 412 F.3d 707, 714 (6th Cir. 2005).

(6th Cir. 2011).  Accordingly, Plaintiffs cannot rely on alleged generalized harm to children to establish standing.

## II.    Plaintiffs fail to state a claim upon which relief may be granted.

### A.    Plaintiffs fail to state a claim under the Establishment Clause (Count I).

To analyze Defendants' Establishment Clause claim, the Court must apply the three-part test established in *Lemon v. Kurtzman*, 403 U.S. 602 (1971).  That test considers whether a government act has (1) "a secular legislative purpose," (2) a "principal or primary effect" that "neither advances nor inhibits religion," and (3) "an excessive government entanglement with religion."  *Id.* at 612-13 (cleaned up). The outcome here is controlled by the Supreme Court's application of the *Lemon* test in *Corporation of Presiding Bishop of Jesus Christ of Church of Latter-day Saints v. Amos*, 483 U.S. 327 (1987).

*Amos* involved a challenge to the religious exemption in Section 702 of the Civil Rights Act, which "exempts religious organizations from Title VII's prohibition against discrimination in employment on the basis of religion."  42 U.S.C. § 2000e-1.  The plaintiff, a former Church employee who was fired because he lacked a certificate verifying that he

was a Church member, sued for religious discrimination and claimed that § 702's religious exemption violated the Establishment Clause.

Under *Lemon's* first prong, the Court recognized that a government act's purpose need not be "unrelated to religion." *Id.* at 334. The "purpose" requirement prevents the government from abandoning neutrality and promoting a particular point of view in religious matters." *Id.* "It is a permissible legislative purpose," said the Court, "to alleviate significant government interference with the ability of religious organizations to define and carry out their religious missions." *Id.* at 335. Accordingly, § 702 had a secular purpose.

Regarding the second prong, the Court held that § 702 did not have the primary purpose of advancing religion. All the government was doing was acting with the "proper purpose of lifting a regulation that burdens the exercise of religion." *Id.* at 338.

Finally, the Court held that § 702 did not impermissibly entangle church and state. To the contrary, the exemption "effectuates a more complete separation of the two and avoids the kind of intrusive inquiry into religious belief" that would otherwise be required. *Id.* at 339.

17

So too here.  P.A. 53 and Defendants' implementation of it have a secular purpose because they seek to "alleviate" interference with faith-based agencies' ability to "define and carry out their religious missions." Defendants are not seeking to advance religion, but to create a provider environment that allows faith-based *and* non-faith-based CPAs to flourish, for the benefit of children.  The legislation and Defendants' conduct avoid religious entanglement by not putting Defendants in the position of evaluating the religious or secular merits or demerits of a CPA's reason for declining a case referral.

That result is consistent with a long line of Supreme Court cases upholding religious exemptions.  *E.g.*, *Cutter v. Wilkinson*, 544 U.S. 709 (2005) (upholding religious accommodations for prison inmates over Establishment Clause challenge); *Walz v. Tax Comm'n of the City of New York*, 397 U.S. 664 (1970) (upholding religious exemption from a municipal property tax); *Gillette v. United States*, 401 U.S. 437 (1971) (upholding religious exemption from the military draft).

To the extent Plaintiffs argue that Defendants are paying money to faith-based agencies with whose religious beliefs Plaintiffs disagree, there is still no Establishment Clause violation.  The Supreme Court

has consistently approved public funding of religious entities under the *Lemon* test where funding advances a secular purpose, its primary effect is neither to advance nor inhibit religion, and the funding does not foster an excessive entanglement of religion. *E.g., Mitchell v. Helms*, 530 U.S. 793 (2000) (upholding public aid to schools); *Zelman v. Simmons-Harris*, 536 U.S. 639 (2002) (upholding school-voucher program). In fact, if Defendants adopted Plaintiffs' desired policy and conditioned faith-based CPAs' participation in the foster system on the agencies giving up their religious principles, those CPAs would likely file suit against Defendants. *E.g., Trinity Lutheran Church of Columbia, Inc. v. Comer*, 137 S. Ct. 2012, 2021-22 (2017) (government violates free exercise when it conditions participation on a religious entity's willingness to surrender its religious principles). Accordingly, Plaintiffs fail to state a claim under Count I.

### B. Plaintiffs fail to state a claim based on the Equal Protection Clause (Count II).

#### 1. Plaintiffs fail to challenge state action.

"The Constitution's protections of individual liberty and equal protection apply in general only to action by the government."

*Edmonson v. Leesville Concrete Co.*, 500 U.S. 614, 619 (1992).  Private

action is not circumscribed.  *Id.*  That is a problem for Plaintiffs here,

because they are challenging decisions of private CPAs, not the State.

To attribute a CPA's conduct to the government, Plaintiffs would

have to satisfy one of three tests: "(1) the public function test, (2) the

state compulsion test, [or] (3) the symbiotic relationship or nexus test."

*Wolotsky v. Huhn*, 960 F.2d 1331, 1335 (6th Cir. 1992) (cleaned up).

Here, only the third test is relevant, because adoption and foster care

have never been "exclusively reserved" to the state (Michigan allows

private adoption), and Michigan does not exercise the type of coercive

power over CPAs that amounts to compulsion, especially when the

CPAs have the freedom to follow their religious principles.  *See, e.g.,*

*Lintz v. Skipski*, 807 F. Supp. 1299, 1306 (W.D. Mich. 1992) (Foster

parents are not "state actors" for purposes of a § 1983 suit.).

In analyzing the nexus test, "the inquiry is not on whether the

state exercises control over a putative state actor as a general matter,

but whether the state has exercised control over the particular conduct

that gave rise to the plaintiff's alleged constitutional deprivation."

*Kach v. Hose*, 589 F.3d 626, 649 (3d Cir. 2009).  CPAs do not fit this

test.  The contract between the Department and a CPA does not require a CPA to take all cases that are referred.

The mere receipt of public funding paired with some state regulation is not enough to make a CPA a state actor.  For example, in *Rendell-Baker v. Kohn*, 457 U.S. 830 (1982), the Supreme Court held that a private school did not engage in state action when firing an employee, even though (1) the state referred the school's students, (2) 90% of the school's operating budget came from public funds, (3) a majority of the school's contracts were with government entities, and (4) the government required the school to comply with many state and local regulations as a condition to receive the public funds.  The Court focused on the facts that the school could refuse to accept any student, and the government did not coerce, control, or influence the school's decisions to discharge an employee.  *Id.* at 841-42.  P.A. 53 incorporates this standard.  Mich. Comp. Laws § 722.124e(1)(i).

Other courts have reached the same conclusion.  *E.g.*, *Molnar v. Care House*, 574 F. Supp. 2d 772, 784-86 (E.D. Mich. 2008) (private agency that prevented and treated child abuse and neglect was not a state actor, even though agency received government referrals, received

21

public funding, and state officials were on an advisory committee);
*Smith v. Gristin*a, 2012 WL 247017, at *3 (S.D.N.Y. Jan. 6, 2012) (foster
care providers are not state actors) (citing additional cases), Ex. 12; *see
also* 2003 ND Op Atty Gen L-18 (NDAG), 2003 WL 1829244 (North
Dakota Attorney General concluded that a private agency was not a
state actor when deciding whether to accept a placement), Ex. 13; 42
U.S.C. § 604a(d)(1) (religious agencies paid with federal funds to
provide social services retain private, independent status).

    In sum, Plaintiffs are in effect complaining about the actions of
private actors, whom Plaintiffs have not sued, and whose actions are
not attributable to Defendants.  As a result, Plaintiffs fail to state a
claim under the Equal Protection Clause.

### 2.    Michigan's foster and adoption system satisfies the rational-basis test.

Because the Sixth Circuit has held that sexual orientation is not a
protected class for equal-protection purposes, *Scarbrough v. Morgan
Cnty. Bd. of Educ.*, 470 F.3d 250, 260-61 (6th Cir. 2006), Plaintiffs con-
cede that rational-basis review applies to their equal-protection claim,
arguing that the Departments' decision to contract with faith-based

CPAs serves "no legitimate government interest."  (Compl, p 21, ¶ 86.)
To begin, Plaintiffs are again challenging the conduct of third-party
CPAs, not the Department.  That challenge is not actionable.

Nevertheless, if they had standing, Plaintiffs' burden would be
tremendously high.  A governmental classification must be affirmed "so
long as it bears a rational relation to some legitimate end." *Romer v.
Evans,* 517 U.S. 620, 631 (1996).  Under rational-basis review, courts
presume the constitutionality of the classification at issue and affirm it
if there is any rational relationship between the classification and a
legitimate government interest.  *Heller v. Doe by Doe*, 509 U.S. 312, 319
(1993).

Significantly, the government does not need to express its
rationale for the classification, nor does it need to produce any evidence
in support of it.  *Id.* at 320.  Rather, the government action survives an
"equal protection challenge if there is any reasonably conceivable state
of facts that could provide a rational basis for the classification." *Id.*
(cleaned up).  The classification survives review even where the fit
between the rule and the governmental interest is imperfect or rough.
*Id.* at 321.  And the party challenging the classification has the burden

23

"to negative every conceivable basis which might support it, whether or not the basis has a foundation in the record." *Id.* at 320 (cleaned up).

Here, the state's interest in providing and maintaining a quality system for foster and adoptive placement and care for children is not only legitimate, but compelling. *See, e.g., Wilder v. Bernstein*, 645 F. Supp. 1292, 1336–37 (S.D.N.Y. 1986), *aff'd,* 848 F.2d 1338 (2d Cir. 1988) ("The State and City clearly have a legitimate interest in ensuring the health and safety of children in foster care institutions, particularly those children in the State's official custody.")  Nor is there any reasonable dispute that the children in that system retain certain rights, including Free Exercise.  *Wilder*, 645 F. Supp. 2d at 1326.

The Department's practice of contracting with third-party CPAs is a rational means of achieving the legitimate state interest.  Contracting with both faith-based and non-faith based CPAs opens the door to more services and more families, a benefit vigorously espoused by Plaintiffs. In addition, as noted above, the State has a legitimate interest in not violating the U.S. Constitution by requiring CPAs to relinquish their religious beliefs to be providers.  *Trinity Lutheran*, 137 S. Ct. at 2021-22.  Plaintiffs' Equal Protection claim fails to state a claim.

## CONCLUSION AND RELIEF REQUESTED

The people of Michigan chose to maximize child-placing-provider options when they passed legislation to continue Michigan's longstanding practice of contracting with faith-based CPAs while ensuring that every person seeking to adopt has the ability to do so. Allowing faith-based and non-faith-based agencies to serve and be advocates for Michigan's foster children is a "win-win" solution, and there is no legal basis to invalidate it. Defendants' motion to dismiss should be granted.

Respectfully submitted,

Bill Schuette
Attorney General


/s/ Joshua S. Smith
Assistant Attorney General
Attorneys for Defendants
Health, Education & Family
Services Division
P.O. Box 30758
Lansing, MI 48909
(517) 373-7700
Smithj46@michigan.gov
P63349

Dated:  December 15, 2017

## CERTIFICATE OF SERVICE

I hereby certify that on December 15, 2017, I electronically filed the

above document(s) with the Clerk of the Court using the ECF System,

which will provide electronic copies to counsel of record.

/s/ Joshua S. Smith
Assistant Attorney General
Attorneys for Defendants
Health, Education & Family
Services Division
P.O. Box 30758
Lansing, MI 48909
(517) 373-7700
Smithj46@michigan.gov
63349
