## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF MICHIGAN

KRISTY DUMONT; DANA DUMONT;
ERIN BUSK-SUTTON; REBECCA
BUSK-SUTTON; and JENNIFER
LUDOLPH,

     *Plaintiffs*,

  v.

NICK LYON, in his official capacity as
the Director of the Michigan Department
of Health and Human Services; and
HERMAN MCCALL, in his official
capacity as the Executive Director of the
Michigan Children's Services Agency,

     *Defendants,*
and

ST. VINCENT CATHOLIC
CHARITIES; MELISSA BUCK; CHAD
BUCK; and SHAMBER FLORE,

     *Proposed Defendant-Intervenors.*

No. 2:17-CV-13080-PDB-EAS

HON. PAUL D. BORMAN

MAG. ELIZABETH A.
STAFFORD

**MOTION TO INTERVENE**

**ORAL ARGUMENT
REQUESTED**

Proposed Intervenors St. Vincent Catholic Charities, Melissa and Chad Buck, and Shamber Flore move this Court under Fed. R. Civ. P. 24(a)(2) and (b)(1) for leave to intervene, for the reasons below and explained more fully in the attached Brief.

1. Proposed Intervenors meet the criteria for intervention as of right as this

1

motion is timely, they have a "substantial legal interest in the case" that could be impaired in the absence of intervention, and no other party adequately represents their interests. *See Providence Baptist Church v. Hillandale Comm., Ltd.*, 425 F.3d 309, 315 (6th Cir. 2005).

2. Intervention is timely as Plaintiffs filed their suit less than three months ago, and Defendants filed their responsive Motion to Dismiss just three days ago. Proposed Intervenors have a substantial legal interest that may be impaired, because Plaintiffs' complaint could force St. Vincent to close its foster and adoption programs, and also harm the Buck Family and Shamber Flore through the resulting loss of services. No other party adequately represents Proposed Intervenors' interests, because the State (a) has not raised the arguments advanced by Proposed Intervenors, (b) cannot adequately advance Proposed Intervenors' Free Exercise interests (on which the State would be adverse), (c) cannot present the same factual evidence as Proposed Intervenors, and (d) is a purchaser of St. Vincent's services, and therefore may have different priorities and interests in this litigation.

3. Alternatively, this Court should exercise its discretion to grant permissive intervention. Fed. R. Civ. P. 24(b)(1). For the same reasons as above, Proposed Intervenors satisfy this standard.

4. Pursuant to Local Rule 7.1(a), on the morning of December 18, 2017, counsel for Proposed Intervenors contacted Plaintiffs' and Defendants' counsel to

determine if they would concur in the motion to intervene, explaining the nature of and basis for the motion and offering to confer. Defendants' counsel said they "concur in [Proposed Intervenors'] request." Plaintiffs' counsel said they were unable to provide a response today.

Dated: December 18, 2017

William J. Perrone (P 27591)
Attorney for Proposed Defendant-
   Intervenors
Diocese of Lansing
228 North Walnut Street
Lansing, Michigan 48933-1122
(517) 342-2522
wperrone@dioceseoflansing.org

Respectfully submitted,

/s/ Stephanie H. Barclay
Stephanie H. Barclay
Mark L. Rienzi
Attorneys for Proposed Defendant-
   Intervenors
The Becket Fund for Religious
   Liberty
1200 New Hampshire Ave. NW,
   Suite 700
Washington, DC 20036
(202) 955-0095
sbarclay@becketlaw.org

3

## CERTIFICATE OF SERVICE

I hereby certify that on December 18, 2017, I electronically filed the above document(s) with the Clerk of Court via CM/ECF, which will provide electronic copies to counsel of record.

 /s/ Stephanie H. Barclay
Stephanie H. Barclay
Attorney for Proposed Defendant-
Intervenors
The Becket Fund for Religious Liberty
1200 New Hampshire Ave. NW,
Suite 700
Washington, DC 20036
(202) 955-0095
sbarclay@becketlaw.org

# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF MICHIGAN

KRISTY DUMONT; DANA DUMONT; ERIN BUSK-SUTTON; REBECCA BUSK-SUTTON; and JENNIFER LUDOLPH,

     *Plaintiffs*,

  v.

NICK LYON, in his official capacity as the Director of the Michigan Department of Health and Human Services; and HERMAN MCCALL, in his official capacity as the Executive Director of the Michigan Children's Services Agency,

     *Defendants,*

and

ST. VINCENT CATHOLIC CHARITIES; MELISSA BUCK; CHAD BUCK; and SHAMBER FLORE,

     *Proposed Defendant-Intervenors.*

No. 2:17-CV-13080-PDB-EAS

HON. PAUL D. BORMAN

MAG. ELIZABETH A. STAFFORD

**MEMORANDUM IN SUPPORT OF PROPOSED INTERVENORS' MOTION TO INTERVENE**

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ..................................................................................iv

CONCISE STATEMENT OF ISSUES PRESENTED ......................................... viii

CONTROLLING OR MOST APPROPRIATE AUTHORITY ..............................ix

INTRODUCTION ...............................................................................................1

BACKGROUND ................................................................................................2

    A. Shortage of Families for Children in Michigan.......................................2

    B. Adoption and Foster Care in Michigan ..............................................4

    C. Referrals of Families to Other Adoption Agencies .............................5

    D. Proposed Intervenors ......................................................................7

        1. St. Vincent Catholic Charities .....................................................7

        2. Melissa and Chad Buck ............................................................11

        3. Shamber Flore.............................................................................13

    E. The Present Lawsuit ........................................................................14

LEGAL STANDARDS .....................................................................................15

ARGUMENT ....................................................................................................16

    I. Proposed Intervenors are entitled to intervention as of right .......................16

        A. The motion to intervene is timely................................................16

        B. Proposed Intervenors have a substantial legal interest
            in the case ..................................................................................17

        C. Proposed Intervenors' interests may be impaired
            without intervention....................................................................19

D. No other party adequately represents their interest...................................20

II. Alternatively, this Court should exercise its discretion
to allow intervention .......................................................................................24

CONCLUSION.................................................................................................24

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Agency for Int'l Dev. v. All. for Open Soc'y Int'l, Inc.*,
  570 U.S. 205 (2013)...................................................................22

*Americans United for Separation of Church & State v.
  City of Grand Rapids*,
  922 F.2d 303 (6th Cir. 1990) ....................................................23

*Atlas Noble, LLC v. Krizman Enterprises*,
  692 F. App'x 256 (6th Cir. 2017) ..............................................17

*Blount-Hill v. Bd. of Educ. of Ohio*,
  195 F. App'x 482 (6th Cir. 2006) ..............................................18

*Donaldson v. United States*,
  400 U.S. 517 (1971)...................................................................19

*Grutter v. Bollinger*,
  188 F.3d 394 (6th Cir. 1999) ....................................................20

*Jansen v. City of Cincinnati*,
  904 F.2d 336 (6th Cir. 1990) ..............................................20, 22

*Johnson v. City of Memphis*,
  73 F. App'x. 123 (6th Cir. 2003) ..............................................16

*Lemon v. Kurtzman*,
  403 U.S. 602 (1971)...................................................................22

*Linton by Arnold v. Comm'r of Health & Env't*,
  30 F.3d 55 (6th Cir. 1994) ........................................................17

*Linton by Arnold v. Comm'r of Health & Env't*,
  973 F.2d 1311 (6th Cir. 1992) .............................................*passim*

iv

*Macomb Interceptor Drain Drainage Dist. v. Kilpatrick*,
 No. 11-13101, 2012 WL 1598154 (E.D. Mich. May 7, 2012) ..........................16

*Michigan State AFL-CIO v. Miller*,
 103 F.3d 1240 (6th Cir. 1997) .......................................................................*passim*

*New York Pub. Interest Research Group, Inc. v. Regents*,
 516 F.2d 350 (2d Cir. 1975) ...............................................................................18

*Providence Baptist Church v. Hillandale Comm., Ltd.*,
 425 F.3d 309 (6th Cir. 2005) ..............................................................................15

*Purnell v. City of Akron*,
 925 F.2d 941 (6th Cir. 1991) ..................................................................16, 18, 21

*Town of Greece v. Galloway*,
 134 S. Ct. 1811 (2014) .........................................................................................22

*United States v. Tennessee*,
 260 F.3d 587 (6th Cir. 2001) ...............................................................................17

**Statutes and Rules**

Fed. R. Civ. P. 24 ............................................................................................19, 24

Mich. Admin. Code R. 400.12101– 400.12808 ..........................................................5

Mich. Admin. Code R. 400.12201 ...............................................................................5

Mich. Admin. Code R. 400.12304 ...............................................................................4

Mich. Admin. Code R. 400.12325 ...............................................................................5

Mich. Admin. Code R. 400.12605 ...............................................................................5

Mich. Admin. Code R. 400.12607 ...............................................................................5

Mich. Admin. Code R. 400.12706 ...............................................................................4

Mich. Comp. Laws § 710.21-710.70 ...........................................................................5

Mich. Comp. Laws § 722.111-722.128 ........................................................................5

Mich. Comp. Laws § 722.115 ...............................................................5

Mich. Comp. Laws § 722.117 ...............................................................5

Mich. Comp. Laws § 722.118 ...............................................................5

Mich. Comp. Laws § 722.124e ..........................................................4, 7

## Other Authorities

AdoptUSKids, *Minority Specializing Agency and Resource Directory*,
    https://www.adoptuskids.org/_assets/files/NRCRRFAP/resources/
    minority-specializing-agency-directory.pdf ..........................................6

Child Trends, *Transition-Age Youth in Foster Care in Michigan*,
    https://www.childtrends.org/wp-content/uploads/2017/09/
    Transition-Age-Youth_Michigan.pdf; ..................................................3

Children's Rights, *Aging Out*, http://www.childrensrights.org/
    newsroom/fact-sheets/aging-out/ .........................................................3

Leslie Cooper, *Same-Sex Couples Are Being Turned Away From
    Becoming Foster and Adoptive Parents in Michigan. So We're
    Suing.*, ACLU (Sept. 20, 2017) https://www.aclu.org/blog/lgbt-
    rights/lgbt-parenting/same-sex-couples-are-being-turned-away-
    becoming-foster-and-adoptive ............................................................2

Mark E. Courtney, Amy Dworsky, Adam Brown, Colleen Cary, Kara
    Love & Vanessa Vorhies, *Midwest evaluation of the adult
    functioning of former foster youth: Outcomes at age 26* (2011) .........3

Julia Duin, *Catholics end D.C. foster-care program*, Washington
    Times (Feb. 18, 2010) .........................................................................7

Erick Eckholm, *Offering Help for Former Foster Care Youths*,
    The New York Times (Jan. 27, 2007) ..................................................3

Michigan Adoption Resource Exchange, *Find a Licensed Agency*,
    http://mare.org/For-Families/New-to-Adoption/Find-a-Licensed-
    Agency ................................................................................................6

Michigan Adoption Resource Exchange, *View Waiting Children*,
http://www.mare.org/For-Families/View-Waiting-Children .............................3

Michigan Department of Health & Human Services, *Foster Care*,
http://www.michigan.gov/mdhhs/0,5885,7-339-73971_7117---
00.html ....................................................................................................3

National One Church One Child, Inc., *About Us*,
http://www.nationalococ.org/about.html ............................................................4

Sault Ste. Marie Tribe of Chippewa Indians, *Adoption and Foster
Home Promotion and Recruitment*, https://www.saulttribe.com/
membership-services/acfs/child-placement/69-membership-
services/acfs/acfs-child-placement/18-adoption-and-foster-home-
promotion-and-recruitment ....................................................................................6

Kristi Tanner, *More than 900 Michigan foster care youth age out*,
Detroit Free Press (Jan. 31, 2015) https://www.freep.com/story/
opinion/contributors/raw-data/2015/01/31/michigan-foster-care-
youth/22621127/ ....................................................................................................3

Washington Times, *Catholic Charities pulls out of adoptions* (Mar.
14, 2006), https://www.washingtontimes.com/news/
2006/mar/14/20060314-010603-3657r/......................................................... 6-7

**CONCISE STATEMENT OF ISSUES PRESENTED**

1.      Whether Proposed Intervenors are entitled to intervention as a right because of their direct stake in this litigation that is not adequately represented by other parties.

2.      Whether Proposed Intervenors are entitled to discretionary intervention as a right because their motion was timely filed and will not prejudice any parties.

## CONTROLLING OR MOST APPROPRIATE AUTHORITY

*Providence Baptist Church v. Hillandale Comm., Ltd.*, 425 F.3d 309 (6th Cir. 2005); *Purnell v. City of Akron*, 925 F.2d 941 (6th Cir. 1991); *Linton by Arnold v. Comm'r of Health & Env't,* 973 F.2d 1311 (6th Cir. 1992); *Jansen v. City of Cincinnati*, 904 F.2d 336 (6th Cir. 1990); *Michigan State AFL-CIO v. Miller*, 103 F.3d 1240 (6th Cir. 1997).

## INTRODUCTION

This case is about whether Proposed Intervenors will be forced to stop partnering with the State and serving Michigan's most vulnerable children. If Plaintiffs succeed, St. Vincent Catholic Charities ("St. Vincent"), an adoption agency specifically named in the Complaint, will be forced to shut down its successful adoption and foster programs. Melissa and Chad Buck will lose critical support for the special needs children they adopted through St. Vincent. Shamber Flore—a young woman who would not have been adopted as a child if it were not for St. Vincent—will lose her ability to continue mentoring other youth in foster care who have dealt with abuse. No one has more at risk from Plaintiffs' claims than the Proposed Intervenors—the agency the lawsuit seeks to exclude and the parents and children who depend on, and participate in, that agency's loving and successful work.

Proposed Intervenors easily satisfy all four criteria for intervention as of right. *First*, their motion is timely. It is being filed only three days after the Defendants filed their Motion to Dismiss, and less than three months after Plaintiffs filed their Complaint. No party will be delayed or prejudiced by intervention. *Second*, Proposed Intervenors have a "substantial legal interest" in the litigation. St. Vincent is explicitly named in Plaintiffs' Complaint, and the lawsuit seeks to

1

prohibit the State from working with St. Vincent. The other Proposed Intervenors both receive and offer critical services to vulnerable children through the work of St. Vincent. **Third**, Proposed Intervenors face severe impairment of their interests. If Plaintiffs are successful, St. Vincent will have to immediately close its adoption and foster care programs and transfer children under its care to other agencies and families, and the other Proposed Intervenors will no longer be able to adopt or receive critical services through St. Vincent. **Fourth**, Proposed Intervenors are not adequately represented. In its Motion to Dismiss, Defendants have not raised the same legal arguments Proposed Intervenors plan to raise to defend their interests, nor do Defendants have access to many facts relevant to Plaintiffs' claims. In fact, Defendants highlighted potential areas where there is adversity of interests with Proposed Intervenors. Thus, Proposed Intervenors are entitled to intervention as a right. Alternatively, the Court should grant permissive intervention.

## BACKGROUND

### A. Shortage of Families for Children in Michigan

As the ACLU has recognized, Michigan "doesn't have enough families willing and able to meet the[] needs" of the State's foster children."[1] Every year over 600

---

[1] Leslie Cooper, *Same-Sex Couples Are Being Turned Away From Becoming Foster and Adoptive Parents in Michigan. So We're Suing.*, ACLU, (Sept. 20, 2017) https://www.aclu.org/blog/lgbt-rights/lgbt-parenting/same-sex-couples-are-

children in Michigan "age out" of foster care,[2] which generally means that they exit the foster system at age 18 without any permanent family, and lacking the resources and skills to make it on their own.[3] These youth are much more likely to end up in poverty and much less likely to graduate from college or even high school.[4] There are also nearly 13,000 children in foster care in Michigan, all of whom need safe homes while they are in the State's custody.[5] And as of this writing, over 340 of those children are waiting to be adopted, over half of whom are minority children.[6] As a foster child ages, the prospect of finding a permanent

---

being-turned-away-becoming-foster-and-adoptive.

[2]  Child Trends, *Transition-Age Youth in Foster Care in Michigan*, https://www.childtrends.org/wp-content/uploads/2017/09/Transition-Age-Youth_Michigan.pdf; Kristi Tanner, *More than 900 Michigan foster care youth age out*, Detroit Free Press (Jan. 31, 2015) https://www.freep.com/story/opinion/contributors/raw-data/2015/01/31/michigan-foster-care-youth/22621127/.

[3] Children's Rights, *Aging Out*, http://www.childrensrights.org/ newsroom/fact-sheets/aging-out/ (last visited Dec. 15, 2017).

[4] Mark E. Courtney, Amy Dworsky, Adam Brown, Colleen Cary, Kara Love & Vanessa Vorhies, *Midwest evaluation of the adult functioning of former foster youth: Outcomes at age 26* (2011); Erick Eckholm, *Offering Help for Former Foster Care Youths*, The New York Times (Jan. 27, 2007) http://www.nytimes.com/2007/01/27/us/27foster.html.

[5]  Michigan Department of Health & Human Services, *Foster Care*, http://www.michigan.gov/mdhhs/0,5885,7-339-73971_7117---,00.html (last visited Dec. 15, 2017).

[6]  Michigan Adoption Resource Exchange, *View Waiting Children*, http://www.mare.org/For-Families/View-Waiting-Children (last visited Dec. 15, 2017).

family diminishes.

**B. Adoption and Foster Care in Michigan**

When children are removed from their families by a court order, the Department of Health and Human Services ("DHHS") works with contracted Child Placing Agencies ("CPAs" or agencies) to recruit and license temporary foster homes until the children can return to their families or be adopted. Mich. Admin. Code R. §§ 400.12304, 400.12706. Faith-based agencies are often particularly effective at reaching different segments of the population and recruiting families that would not work with other agencies.[7] *See* Ex. 2 ¶ 8. Michigan has concluded, for example: "Ensuring that faith-based child placing agencies can continue to provide adoption and foster care services will benefit the children and families who receive publicly funded services." Mich. Comp. Laws § 722.124e(1)(g).

A private agency may only perform public adoption and foster services related to placing children with families if that agency partners with and is authorized by

---

[7]     National One Church One Child, Inc., *About Us*, http://www.nationalococ.org/about.html (last visited Dec. 18, 2017) ("Historically, the church has provided leadership in the African American community. As such, the state of Illinois recognized that a possible solution to moving African American children to permanency lay in forming a relationship between the state and the African American churches.").

the DHHS.[8] Agencies do not make any final determinations regarding the placement of children for adoption or foster care. Instead, the agency's role is limited to providing written evaluations and recommendations to the State regarding foster licensing and approval of adoption for families.[9] The ultimate determination about placement of children and licensing of families for foster and adoptive purposes is made by DHHS. *See* Ex. 1 ¶ 6.

## C. Referrals of Families to Other Adoption Agencies

Adoption agencies in Michigan have long been able to refer families to other agencies for a variety of reasons, including: (1) the family may live further away than the agency would like to drive for home visits, so they refer them to a closer agency, (2) the agency already has a waiting list, (3) the family has not been satisfied with the agency's services, and (4) the family is looking for a specific type of child not currently in that agency's care. Ex. 1 ¶ 14. Some agencies even

---

[8] Mich. Comp. Laws §§ 722.115, 722.117, 722.118; Mich. Admin. Code R. 400.12201. Detailed requirements govern the services provided by such agencies. See Mich. Comp. Laws §§ 710.21–710.70, 722.111–722.128 and Mich. Admin. Code R. 400.12101– 400.12808.

[9] Mich. Admin. Code R. 400.12325 ("An agency shall recommend to the department the appropriate licensing action . . . ."); Mich. Admin. Code R. 400.12605 ("An agency social service worker shall complete a written adoptive evaluation within 90 days of the family signing an adoption application and prior to approving a family for adoption."); Mich. Admin. Code R. 400.12607 ("An agency shall recommend the appropriate action consistent with the facts contained in the adoptive evaluation.").

specialize in placing children with Native American families,[10] or in finding homes for black children.[11] And Faith-based agencies have also long referred families elsewhere when those agencies cannot adequately serve those families consistent with their religious values.[12]

After faith-based foster and adoption service providers were forced out of Massachusetts and the District of Columbia,[13] Michigan passed a law in 2015

---

[10] Sault Ste. Marie Tribe of Chippewa Indians, *Child Placement*, https://www.saulttribe.com/membership-services/acfs/child-placement (last visited Dec. 15, 2017) ("The Sault Tribe Binogii Placement Agency is our tribal child placement agency. The agency is licensed by the state of Michigan to provide foster care and adoption services to children ages 0-19 who reside within the tribe's seven-county service area. The agency services children who are enrolled or eligible for enrollment as Sault Ste. Marie Tribe of Chippewa Indians members and Sault Tribe households.").

[11] Michigan Adoption Resource Exchange, *Find a Licensed Agency*, http://mare.org/For-Families/New-to-Adoption/Find-a-Licensed-Agency (listing Homes for Black Children) (last visited Dec. 15, 2017); AdoptUSKids, *Minority Specializing Agency and Resource Directory*, 4 https://www.adoptuskids.org/_assets/files/NRCRRFAP/resources/minority-specializing-agency-directory.pdf (discussing how Homes for Black Children focused on the "adoptive placement of black children").

[12] Historically, a number of state laws allowed religious organizations to make placements consistent with the religious beliefs of the religious adoption agency. Ellen Herman, Kinship by Design: A History of Adoption in the Modern United States 60, 125 (2008). Children were routinely placed with families of the same faith whether through self-selection, informal referrals between adoption agencies, or religion matching laws. Barbara Melosh, Strangers and Kin: The American Way of Adoption 77-79 (2002) 77-79 (describing how religious organizations referred adoptive parents to each other based on the parent's religious beliefs).

[13] Washington Times, *Catholic Charities pulls out of adoptions* (Mar. 14,

ensuring that faith-based providers could continue partnering with the State and providing more homes for children. The statute requires that such an agency refer the applicant to another foster or adoption agency that is willing to provide the declined services or to the DHHS website. Mich. Comp. Laws § 722.124e(4). There are eight other agencies in St. Vincent's service area. Ex. 1 ¶ 3.

## D. Proposed Intervenors.

*1. St. Vincent Catholic Charities.* St. Vincent is one of the oldest and most effective adoption agencies in Michigan. Ex. 1 ¶ 3. St. Vincent has served children and families for over 65 years, helping those in crisis find hope and safety both in their own homes and with new families. *Id*. ¶ 4. As a nonprofit, faith-based organization, St. Vincent's mission is "to share the love of Christ by performing the corporal and spiritual works of mercy." *Id*. The work began in 1948 when a parish priest, John Slowey, recognized the need for adoption services in the Catholic Diocese of Lansing. *Id*. A few years later, Slowey founded a children's home to provide temporary housing for children. *Id*. Although its focus has always remained on serving children and families, St. Vincent provides a range of services

---

2006), https://www.washingtontimes.com/news/2006/mar/14/20060314-010603-3657r/; Julia Duin, *Catholics end D.C. foster-care program*, Washington Times (Feb. 18, 2010), https://www.washingtontimes.com/news/2010/feb/18/dc-gay-marriage-law-archdiocese-end-foster-care/.

in fulfillment of its mission. *Id*. Current programs include professional mental health and substance abuse counseling, marital and family counseling, and refugee resettlement. *Id*.

In the last fiscal year, St. Vincent recruited more new families than seven of the eight other adoption agencies in St. Vincent's tri-county service area, which includes the Michigan counties of Ingham, Eaton, and Clinton. *Id*. ¶ 3. Through St. Vincent's work in 2016, 79 children were placed in foster care, 24 children had their adoptions finalized, and 17 additional children began the process of finalizing an adoption. *Id*. Most of the children in St. Vincent's care are minority children, and St. Vincent excels in providing extra support for families with special needs children. *Id*. St. Vincent is also very effective at finding homes for sibling groups and older children. *Id.*

Many of the children St. Vincent serves have undergone the trauma of physical or emotional abuse, neglect, or the illness or death of a parent. *Id*. ¶ 11. To address these needs, St. Vincent provides services including individual, family and group therapy, monthly visits to the foster home, visitation with birth parents and other relatives, monitoring and referrals to community resources for additional treatment and support. *Id*. Unlike many agencies, staff at St. Vincent are on-call 24 hours a day to respond to foster families' concerns. *Id*.

8

St. Vincent's also operates a Children's Home that complements its other program, providing residential care and treatment for up to 40 children in the foster care system at a time. *Id.* ¶ 12. Teenagers and younger children live in three living units and have programming specific to their treatment needs. *Id.* Over 90% of the youth served by the Children's Home are wards of the court due to abuse or neglect. *Id.* Many need intensive support and cannot be cared for in a family setting due to safety issues. *Id.* St. Vincent cares for these children regardless of their faith, nationality, race, or sexual orientation. *Id.* Children in St. Vincent's care include LGBT youth. *Id.*

St. Vincent is also dedicated to ensuring that children find the best possible homes. *Id.* ¶ 5. Consistent with State requirements, St. Vincent performs in-depth home studies assessing the characteristics of each family that make them suitable to adopt and foster children. *Id.* The home evaluation involves an exhaustive review of the family's eligibility, considering factors such a family history, strengths and weaknesses of family members, parenting ability, education and employment history, acceptance of family towards children, the family's capacity and disposition to give an adopted child love and guidance, and other characteristics of the child relevant to the family. *Id.*

St. Vincent is responsible for providing its written evaluations and

recommendations to the State regarding foster licensing and approval of adoption for families. *Id*. ¶ 6. DHHS makes the ultimate determination about placement of children and licensing of families for foster and adoptive purposes. *Id*.

Adoptive and foster families are not expected to share St. Vincent's religious beliefs. *Id*. ¶ 7. However, as a Catholic organization, St. Vincent cannot provide a written recommendation to the State evaluating and endorsing a family situation that would conflict with St. Vincent's religious beliefs. *Id*. If unmarried or same-sex couples want to obtain their license through St. Vincent then, consistent with State law, staff provide written information on the State's website and contact information for a list of other local adoption or foster care service providers that would be willing to work with the family. *Id*. ¶ 9. There are seven other foster or adoption agencies in the tri-county area that are willing to work with unmarried or same-sex couples. *Id*.

St. Vincent does not prevent any couples from fostering or adopting. *Id*. ¶ 10. Families working with any other adoption agencies are not restricted to children in the care of their chosen licensing agency, and any family could be matched with children in St. Vincent's care through the Michigan Adoption Resource Exchange. *Id*.

10

St. Vincent would not be able to continue its adoption and foster programs if the State were not allowed to partner with it, either legally or financially. *Id*. ¶ 13. St. Vincent does not make a profit providing adoption or foster services—it actually *loses* money on foster services. *Id*. But losing the State contract and authorization to perform these public services would result in the immediate closure of St. Vincent's public foster and adoption programs. *Id*. St. Vincent's other programs, including the Children's Home, counseling services, and refugee resettlement, would be impacted by this financial loss as well and may no longer be financially sustainable. *Id*.

**2. Melissa and Chad Buck.** After getting married, Melissa and Chad Buck envisioned having a small family with one or two children. Ex. 2 ¶ 2. After years of heartbreaking infertility and unsuccessful treatments, the Bucks decided to adopt. *Id*. They still planned to adopt only one or two children. *Id*. But when St. Vincent approached them about a sibling group of three children who had suffered severe abuse, the Bucks couldn't say no. *Id*. They felt that after these children had lost all of the other connections they had, all they had left was each other, and the Bucks wanted to keep them together. *Id*.

When St. Vincent later approached them about adopting a new infant sibling of these children, the Bucks' first instinct was to say no, that their home was full. *Id*.

11

¶ 3. But they couldn't stop thinking about how much it would mean to this child to be raised with his siblings, and they realized they had the resources to provide for another child. *Id*. So the Bucks put aside their fears and opened their home again. *Id*. The Bucks also worked with St. Vincent to adopt a baby girl. *Id*.

All of the children the Bucks adopted have a range of special needs. *Id*. ¶ 4. These include autism, a genetic disorder similar to diabetes, severe anxiety, attachment disorder, and other learning disabilities. *Id*. Most of the children also suffered severe trauma, including being physically thrown across rooms, slammed into walls, and frequently hit before they entered foster care. *Id*.

Most of the Bucks' adoptions involved a heart-wrenching and difficult process that would not have been possible without the services St. Vincent workers lovingly provided. *Id*. ¶ 5. This included acting as an intermediary for the Bucks with hostile birth parents, being available all hours on the phone to provide emotional support, and accompanying the Bucks to endless medical appointments to help address the special needs of the children. *Id*. The Bucks are not aware of any other agencies who go to these lengths to support families the agencies are working with. *Id*.

It is possible that someday the Bucks could be asked to adopt a new biological sibling of their adopted children who is now an infant. *Id*. ¶ 6. The Bucks are open

to this possibility. *Id*. But if St. Vincent closed its adoption and foster program, the Bucks would not be able to work with their trusted social workers anymore. *Id*. These St. Vincent staff members already know the history of the Bucks' special needs children and the hostile dynamics with the birth parents. *Id*. The Bucks cannot envision putting their family through such a traumatic process again without St. Vincent's deep institutional knowledge and support. *Id*.

St. Vincent also provides ongoing services to the Bucks. *Id*. ¶ 7; Ex. 1 ¶ 11. For example, the Bucks attend a monthly parent support group. Ex. 2 ¶ 2. This group provides critical resources that allow the Bucks to meet the needs of their special needs children, including training and helpful literature. *Id*. If St. Vincent closed its foster and adoptive programs and these ancillary services were impacted, it would leave a gaping hole where a pillar of support used to exist for the Buck family. *Id*. Many other families would similarly be left without support or the ability to continue taking children into their homes if St. Vincent closed its program. *Id.* at ¶ 8.

**3. Shamber Flore.** Shamber Flore was removed from her birth home at the age of five after experiencing years of abuse, poverty, and neglect, as well as exposure to drugs, gangs, and prostitution. Ex. 3 ¶ 2. Many of her young memories are scarred by feelings of terror and agitation. *Id*. As a child, Shamber didn't know

13

what love meant, and she felt worthless and broken inside. *Id*. But when St. Vincent placed Shamber and her two siblings with their new adoptive family—the Flores—Shamber was finally able to begin a path of healing. *Id*.

Today, Shamber is a vibrant young woman who loves her family and mentors other youth at St. Vincent who have dealt with trauma and abuse. *Id*. ¶¶ 3-4. Shamber wouldn't have been adopted by her Flore family if it were not for the work of St. Vincent. *Id*. ¶ 3. Shamber's adoptive parents, Tam'al and Jerry Flore, had previously tried to adopt with a state adoptive agency and had a very negative experience. *Id*. Because adoption is already such a difficult process, the Flores would not have been able to continue with the adoption process if they had not found in St. Vincent a trusted partner and ally. *Id*. Shamber is one of 16 children the Flores have adopted over the past 14 years. *Id*.

If St. Vincent were forced to close its adoption and foster services, Shamber would lose the opportunity to mentor many of these youth as a volunteer at St. Vincent. *Id*. ¶ 5. She also believes that if St. Vincent can no longer recruit families like the Flores to adopt, many children who were abused and alone like she was will lose the opportunity to find a loving and permanent home. *Id*.

**E. The Present Lawsuit.**

Plaintiffs filed suit on September 20, 2017, asking this Court to enjoin

14

Michigan from partnering with St. Vincent and other religious adoption agencies. The Defendant filed a motion to dismiss on December 15, 2017.

## LEGAL STANDARDS

The Sixth Circuit has made clear that the rules governing intervention are to be "construed broadly in favor of the applicants." *Michigan State AFL-CIO v. Miller*, 103 F.3d 1240, 1246 (6th Cir. 1997) (citations omitted). Federal Rule of Civil Procedure 24(a)(2) provides: "On timely motion, the court must permit anyone to intervene who . . . claims an interest relating to the property or transaction that is the subject of the action, and is so situated that disposing of the action may as a practical matter impair or impede the movant's ability to protect its interest, unless existing parties adequately represent that interest." To establish a right to intervene under this rule, Proposed Intervenors must satisfy four criteria: (1) their motion must be timely; (2) they must have a "substantial legal interest in the case"; (3) there must be a potential "impairment of the applicant's ability to protect that interest in the absence of intervention"; and (4) "inadequate representation of that interest by parties already before the court." *See Providence Baptist Church v. Hillandale Comm., Ltd.*, 425 F.3d 309, 315 (6th Cir. 2005).

Even if a party does not satisfy the requirements for mandatory intervention under Rule 24(a)(2), a court may nonetheless permit intervention under Rule 24(b),

15

which "grants the district court discretionary power to permit intervention if the motion is timely, and if the applicant's claim or defense and the main action have a question of law or fact in common." *Purnell v. City of Akron*, 925 F.2d 941, 950 (6th Cir. 1991) (citations omitted). In exercising its discretion, a court "must consider whether the intervention will unduly delay or prejudice the adjudication of the rights of the original parties." *Id.* at 951.

## ARGUMENT

### I. Proposed Intervenors are entitled to intervention as of right.

### A. The motion to intervene is timely.

Intervention here is timely because the lawsuit is at its very earliest stage. Plaintiffs filed their suit less than three months ago, and Defendants filed their responsive Motion to Dismiss just three days ago. This Court has not yet scheduled any hearings or entered any orders. *See Johnson v. City of Memphis*, 73 F. App'x. 123, 131-32 (6th Cir. 2003) (considering factors for timeliness).

In other cases, the Sixth Circuit has found a motion timely when parties intervened much later in the proceedings. *See Macomb Interceptor Drain Drainage Dist. v. Kilpatrick*, No. 11-13101, 2012 WL 1598154 at *3 (E.D. Mich. May 7, 2012) (allowing intervention after a lawsuit had been pending for six months); *Linton by Arnold v. Comm'r of Health & Env't, State of Tenn.*, 973 F.2d 1311, 1318 (6th Cir. 1992) (allowing intervention "two and one-half years after the suit

16

was initiated"). Here, intervention this early in the proceedings will not cause any delay capable of prejudicing any existing parties to the action. Thus, the Court should find that this motion to intervene is timely.

**B. Proposed Intervenors have a substantial legal interest in the case.**

The Sixth Circuit has taken a "rather expansive" view of the "interest sufficient to invoke intervention of right." *Michigan State AFL-CIO*, 103 F.3d at 1245. The intervenor need not even "have the same standing necessary to initiate a lawsuit." *Atlas Noble, LLC v. Krizman Enterprises*, 692 F. App'x 256, 269 (6th Cir. 2017).

In *Linton*, 973 F.2d at 1319, the Sixth Circuit held that individual nursing homes were entitled to intervention as of right in a suit challenging aspects of Medicaid contracts between the State and nursing homes. Because the suit would impact the contractual and statutory rights of the nursing homes, the court held that they had a substantial interest justifying intervention. *See United States v. Tennessee*, 260 F.3d 587, 596 (6th Cir. 2001) (citing *Linton by Arnold v. Comm'r of Health & Env't, State of Tenn.*, 30 F.3d 55 (6th Cir. 1994)).

Like the nursing home in *Linton*, St. Vincent's foster and adoption services are directly implicated by Plaintiffs' suit. In fact, this is an *a fortiori* case to *Linton*, where the impact would be to prevent nursing homes from terminating membership in Medicaid. Here, St. Vincent will be prohibited from providing

17

adoption and foster services with the State *at all*, its programs offering those services will be closed down, and its staff will be laid off. Ex. 1 ¶ 13. The Buck family and Shamber will be directly harmed by that loss of services. Ex. 2 ¶¶ 6-7; Ex. 3 ¶ 5. It is difficult to conceive of a stronger interest for intervention. *See also Michigan State AFL-CIO*, 103 F.3d at 1246 (citing *New York Pub. Interest Research Group, Inc. v. Regents*, 516 F.2d 350 (2d Cir. 1975)) (intervention allowed to "defend . . . financial interests with respect to a state [law]").

Factors the Sixth Circuit has considered elsewhere for intervention include whether the would-be intervenor was "a party to any challenged contract," or was "directly targeted by Plaintiffs' complaint," or whose interest is directly implicated by "the constitutional . . . violations alleged in the litigation." *Blount-Hill v. Bd. of Educ. of Ohio*, 195 F. App'x 482, 486 (6th Cir. 2006). Here, Proposed Intervenor St. Vincent is a party to a contract with one Defendant that is directly challenged by Plaintiffs, is directly targeted in Plaintiffs' Complaint, and will be directly impacted by the constitutional arguments Plaintiffs raise. *See* Dkt. 1 ¶¶ 43, 61, 62.

Prospective intervenors need not show that an unfavorable disposition in the case would necessarily impair their right, only that it "*may* . . . impair or impede [their] ability to protect [their] interest." *Purnell*, 925 F.2d at 948 (quoting Rule 24(a)(2) and adding emphasis). *See Michigan State AFL-CIO*, 103 F.3d at 1247

18

(proposed intervenors need only show that impairment is "possible"). Thus, this Court should find that Proposed Intervenors also have "a significantly protectable interest" in the outcome of the lawsuit. *Donaldson v. United States*, 400 U.S. 517, 531 (1971).

**C. Proposed Intervenors' interests may be impaired without intervention.**

For the same reasons that Proposed Intervenors have a significantly protectable interest in the outcome of this litigation, the resolution of this case "may as a practical matter impair or impede the [Potential Intervenors'] ability to protect [their] interest[s]." Fed. R. Civ. P. 24(b)(2). The Sixth Circuit has recognized that "[t]his burden is minimal." *Michigan State AFL-CIO*, 103 F.3d at 1247. Further, "the application of stare decisis" in a way that would impede litigation elsewhere constitutes an impairment of interest. *Linton*, 973 F.2d at 1319. That minimal burden is satisfied here, where St. Vincent may be required to shut down the lynchpin programs offered by its organization, the Bucks could lose critical services and the possibility to adopt in the future, and Shamber could lose the opportunity to keep volunteering with youth through St. Vincent. Furthermore, the arguments raised by Defendants could mean that this Court will interpret St. Vincent's contractual obligations or consider St. Vincent's Free Exercise rights.

**D. No other party adequately represents their interest**

Finally, Proposed Intervenors are not adequately represented by the other parties already present in the litigation. Proposed Intervenors need only demonstrate that "representation *may* be inadequate." *Linton*, 973 F.2d at 1319 (emphasis added). The Sixth Circuit "has declined to endorse a higher standard for inadequacy when a governmental entity in involved." *Grutter v. Bollinger*, 188 F.3d 394, 400 (6th Cir. 1999). The burden in this context is again "minimal." *Id.*

Inadequacy can be demonstrated by showing that the Defendant is "unlikely to present evidence" regarding factors that "may be important and relevant" to determining legal issues at stake. *Id.* at 401. Here, Defendant is unable to present evidence of Proposed Intervenors' religious beliefs or practices for referring certain couples to other agencies. Defendant also has not presented evidence of families, such as Proposed Intervenors, who will be unable to continue adopting without the help of St. Vincent. In many instances, Defendants won't have access to this evidence, yet it is directly relevant to claims Plaintiffs raise.

A government entity's failure to raise the same "affirmative defense[s]" to the action as Proposed Intervenors also "indicates that the [defendants] and the proposed intervenors have divergent views" demonstrating inadequacy. *Jansen v. City of Cincinnati*, 904 F.2d 336, 343 (6th Cir. 1990); *see also Michigan State*

20

*AFL-CIO,* 103 F.3d at 1247 ("[I]t may be enough to show that the existing party who purports to seek the same outcome will not make all of the prospective intervenor's arguments.").

Here, as described in the Proposed Motion to Dismiss, Proposed Intervenors plan to make additional constitutional arguments that the State has not made. At the heart of this case is the constitutionality of the State partnering with faith-based adoption agencies who cannot endorse and license couples for foster or adoption care inconsistent with their religious beliefs. On that issue, Proposed Intervenors will argue in their Proposed Motion to Dismiss that allowing them to partner with the State is not merely permissible under the federal constitution but also required under the Free Exercise Clause.

The State did not argue that Proposed Intervenors' Free Exercise rights would be violated by the result Plaintiffs seek; it only noted it under Plaintiffs' desired policy, faith-based agencies "would likely file suit against Defendants." Dkt. 16 at 19. If anything, this simply highlights the potential adversity of interest between Defendants and Proposed Intervenors on this constitutional issue. A government entity does not adequately represent a proposed intervenor if, as here, it "has an interest adverse to the proposed intervenor." *Purnell v. City of Akron*, 925 F.2d 941, 950 (6th Cir. 1991).

21

Moreover, Proposed Intervenors will argue that Plaintiffs' proposed policy would result in impermissible content-based compulsion of speech. Specifically, Proposed Intervenors will be required to adopt a policy as a condition of government funding and make written recommendations to the state that contradict their beliefs. *See Agency for Int'l Dev. v. All. for Open Soc'y Int'l, Inc*., 570 U.S. 205 (2013). Defendants did not address this issue at all in their Motion to Dismiss, thus indicating potential "divergent views" on this important issue. *Jansen*, 904 F.2d at 343.

Proposed Intervenors also plan to set forth a different standard for analyzing Establishment Clause claims. Specifically, Defendants rely on the three-part test established in *Lemon v. Kurtzman*, 403 U.S. 602 (1971). *See* Dkt. 16 at 16. But that test has been superseded by *Town of Greece v. Galloway*, 134 S. Ct. 1811 (2014), in which the Supreme Court made clear that the proper analysis looks to the historical purposes of the Establishment Clause. Proposed Intervenors are thus not adequately represented on this argument.

Inadequacy of representation can also be shown where a government entity has an interest in purchasing services from a proposed intervenor. In *Linton*, the State was unable to adequately represent the interests of the nursing homes because the State was "both a regulator and a purchaser of movants' services thereby creating

22

inherent inconsistencies between movants' interests and those of the State." 973 F.2d at 1320–21. So too, here, where the State purchases St. Vincent's services and emphasized that its contracts with St. Vincent control Proposed Intervenor's behavior at issue in this lawsuit. *See, e.g.*, Dkt. 16 at 12-13 ("[A]lleged injuries cannot be 'fairly traceable' to the Department because the contracts between the Department and the CPAs prohibit CPAs from discriminating against potential applicants.").

Finally, here Defendants may eventually want to settle this case with Plaintiffs. But the burden of settlement would fall on Proposed Intervenors. Were Proposed Intervenors unable to immediately appeal and protect their interest, the right to litigate their interest separately would be cold comfort after St. Vincent's programs were closed, the children it helps displaced, and its staff laid off. *See Michigan State AFL-CIO,* 103 F.3d at 1248 (different potential strategy on appealing demonstrates inadequacy of representation); *Americans United for Separation of Church & State v. City of Grand Rapids*, 922 F.2d 303, 306 (6th Cir. 1990) (inadequacy demonstrated where a failure to appeal "effectively would destroy" proposed intervenors interest on a time-sensitive basis). Thus, the Court should find that the existing parties do not adequately represent the interests of Proposed Intervenors and allow them to intervene as of right.

## II. Alternatively, this Court should exercise its discretion to allow intervention.

Even if the Court were to find that Proposed Intervenors are not entitled to intervene as a matter of right, this Court should exercise its discretion to grant permissive intervention. Fed. R. Civ. P. 24(b)(1). For the same reasons as above, Proposed Intervenors satisfy this standard.

## CONCLUSION

For all of the reasons discussed above, the Court should grant the motion and allow Proposed Intervenors to intervene.

Dated: December 18, 2017                        Respectfully submitted,

                                                /s/ Stephanie H. Barclay
William J. Perrone (P 27591)                    Stephanie H. Barclay
Attorney for Proposed Defendant-                Mark L. Rienzi
  Intervenors                                   Attorneys for Proposed Defendant-
Diocese of Lansing                                Intervenors
228 North Walnut Street                         The Becket Fund for Religious
Lansing, Michigan 48933-1122                      Liberty
(517) 342-2522                                  1200 New Hampshire Ave. NW,
wperrone@dioceseoflansing.org                     Suite 700
                                                Washington, DC 20036
                                                (202) 955-0905
                                                sbarclay@becketlaw.org

## CERTIFICATE OF SERVICE

I hereby certify that on December 18, 2017, I electronically filed the above document(s) with the Clerk of Court via CM/ECF, which will provide electronic copies to counsel of record.

<div style="margin-left:40%">

/s/ Stephanie H. Barclay
Stephanie H. Barclay
Attorney for Proposed Defendant-Intervenors
The Becket Fund for Religious Liberty
1200 New Hampshire Ave. NW, Suite 700
Washington, DC 20036
(202) 955-0095

</div>

25