# UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF MICHIGAN
# SOUTHERN DIVISION

KRISTY DUMONT; DANA DUMONT;
ERIN BUSK-SUTTON; REBECCA
BUSK-SUTTON; and JENNIFER
LUDOLPH,

           Plaintiffs,

           v.

NICK LYON, in his official capacity as
the Director of the Michigan Department
of Health and Human Services; and
HERMAN MCCALL, in his official
capacity as the Executive Director of the
Michigan Children's Services Agency,

           Defendants.

No. 2:17-cv-13080-PDB-EAS

HON. PAUL D. BORMAN

MAG. ELIZABETH A. STAFFORD

**PLAINTIFFS' RESPONSE IN
OPPOSITION TO THE STATE'S
MOTION TO DISMISS**

Plaintiffs hereby submit this Response in Opposition to Defendants' Motion to Dismiss (the "Motion"), ECF No. 16.[1] For the reasons stated below, and as explained more fully in the attached Brief, the Motion should be denied.

    1.    Plaintiffs have pled facts establishing standing. The Complaint alleges that when Plaintiffs Kristy and Dana Dumont and Erin and

---

[1]    Plaintiffs will address the additional arguments raised in Proposed Defendants-Intervenors' proposed motion to dismiss, ECF No. 19, if and when the Court grants their pending motion to intervene, ECF No. 18, currently scheduled for oral argument on March 7, 2018.

Rebecca Busk-Sutton contacted state-contracted, taxpayer-funded child placing agencies to pursue public adoptions, they were turned away solely because of religious objection their sexual orientation. The resulting stigma and practical barrier to adopting a child out of the state-run foster care system constitute cognizable injuries, which were caused by the State of Michigan and are redressable by this court. *See*, *e.g.*, *Heckler* v. *Mathews*, 465 U.S. 728, 739-40 (1984). Furthermore, all Plaintiffs have state taxpayer standing to raise an Establishment Clause challenge to the State's funding of agencies that carry out a public function using religious criteria. *See Flast* v. *Cohen*, 392 U.S. 83 (1968).

2.    The Complaint alleges facts showing that the State endorses and promotes religion in violation of the Establishment Clause by delegating to religiously affiliated child placing agencies the authority to license and select foster and adoptive parents for children in State custody and allowing those agencies to use religious criteria to exclude same-sex couples from consideration. *See Larkin* v. *Grendel's Den, Inc.*, 459 U.S. 116 (1982). The State's practice further violates the Establishment Clause because it privileges religion to the detriment of third parties—not only prospective families, but

also the very children the foster care system was created to serve. *See Estate of Thornton* v. *Caldor, Inc.*, 472 U.S. 703 (1985). This is not a permissible accommodation of religion. In addition, the subjective purpose of the State's practice is, and it objectively appears, to advance a particular religious view about same-sex couples. *See Edwards* v. *Aguillard*, 482 U.S. 578 (1987).

3. The State knowingly permits state-contracted child placing agencies to categorically exclude prospective foster and adoptive families headed by same-sex couples, regardless of their ability to care for a child, in violation of the Equal Protection Clause. This practice violates *Obergefell* v. *Hodges*, 135 S. Ct. 2584 (2015), by denying married same-sex couples a benefit of marriage afforded to married heterosexual couples. And denying children access to potentially qualified families furthers no conceivable legitimate government interest; indeed, it undermines the core purpose of Michigan's child welfare system—to find loving, stable families for all children who need them.

Dated:        February 6, 2018

                                        /s/ Garrard Beeney

Jay Kaplan (P38197)                      Leslie Cooper
Michael J. Steinberg (P43085)            American Civil Liberties Union
American Civil Liberties Union              Foundation
   Fund of Michigan                      125 Broad Street, 18th Floor
2966 Woodward Avenue                     New York, NY  10004
Detroit, MI  48201                       Telephone:  (212) 549-2633
Telephone:  (313) 578-6823               lcooper@aclu.org
jkaplan@aclumich.org
msteinberg@aclumich.org                  Garrard R. Beeney
                                         Ann-Elizabeth Ostrager
Daniel Mach                              Ryan D. Galisewski
American Civil Liberties Union           Jason W. Schnier
   Foundation                            SULLIVAN & CROMWELL LLP
915 15th Street NW                       125 Broad Street
Washington, DC  20005                    New York, NY  10004-2498
Telephone:  (202) 675-2330               Telephone:  (212) 558-4000
dmach@aclu.org                           beeneyg@sullcrom.com
                                         ostragera@sullcrom.com
                                         galisewskir@sullcrom.com
                                         schnierj@sullcrom.com

                                         *Counsel for Plaintiffs*

# UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF MICHIGAN
### SOUTHERN DIVISION

KRISTY DUMONT; DANA DUMONT;
ERIN BUSK-SUTTON; REBECCA
BUSK-SUTTON; and JENNIFER
LUDOLPH,

      Plaintiffs,

      v.

NICK LYON, in his official capacity as
the Director of the Michigan Department
of Health and Human Services; and
HERMAN MCCALL, in his official
capacity as the Executive Director of the
Michigan Children's Services Agency,

      Defendants.

No. 2:17-cv-13080-PDB-EAS

HON. PAUL D. BORMAN

MAG. ELIZABETH A. STAFFORD


**BRIEF IN SUPPORT OF
PLAINTIFFS' RESPONSE IN
OPPOSITION TO THE STATE'S
MOTION TO DISMISS**

# TABLE OF CONTENTS

**Page**

CONCISE STATEMENT OF ISSUES PRESENTED ...........................................IX

CONTROLLING OR MOST APPROPRIATE AUTHORITY ..............................X

PRELIMINARY STATEMENT ...................................................................1

LEGAL STANDARD .................................................................................3

BACKGROUND ......................................................................................3

    A.   Michigan's Child Welfare System .....................................................3

    B.   Pursuant to State Contracts, Children in Michigan's Child Welfare System Are Cared for by Private Agencies ...........................4

    C.   The State's Contracts Prohibit Agencies from Discriminating Against Prospective Parents Based on Sexual Orientation ................5

    D.   The State Knowingly Contracts with Agencies that Refuse to License or Place Children with Same-Sex Couples ...........................6

    E.   Michigan's 2015 Adoption Law .......................................................7

ARGUMENT ...........................................................................................8

I.    PLAINTIFFS HAVE ESTABLISHED STANDING ...................................8

    A.   The Prospective Parent Plaintiffs Have Standing Based on Being Turned Away by State-Contracted Child Placing Agencies ......................................................................................9

    B.   All Plaintiffs Have Taxpayer Standing to Assert Establishment Clause Claims ............................................................................12

II.    THE STATE'S PRACTICE VIOLATES THE ESTABLISHMENT
       CLAUSE ..................................................................................14

       A.    Delegation of a Government Function To Be Performed Using
             Religious Criteria Violates the Establishment Clause ........................15

       B.    The State's Practice Violates the Establishment
             Clause by Privileging Religious Exercise in a Manner that
             Harms Children and Prospective Foster and Adoptive Families ........16

       C.    The State's Practice Intentionally and Objectively Favors
             Religion in Contravention of the Establishment Clause .....................19

III.   THE STATE'S SANCTIONING THE CATEGORICAL
       EXCLUSION OF SAME-SEX PROSPECTIVE PARENTS BY
       CHILD PLACING AGENCIES VIOLATES THE EQUAL
       PROTECTION CLAUSE ........................................................................20

       CONCLUSION.................................................................................25

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*ACLU of Mass.* v. *Sebelius*,
    821 F. Supp. 2d 474 (D. Mass. 2012) ........................................................ 13, 15

*Agency for Int'l Dev.* v. *Open Soc'y Int'l, Inc.*,
    133 S. Ct. 2321 (2013) ........................................................................... 17

*Am. Jewish Congress* v. *Corp. for Nat'l & Cmty. Serv.*,
    399 F.3d 351 (D.C. Cir. 2005) ................................................................ 13

*Ariz. Christian Sch. Tuition Org.* v. *Winn*,
    563 U.S. 125 (2011) .............................................................................. 12

*Ark. Dep't of Human Servs.* v. *Cole*,
    380 S.W.3d 429 (Ark. 2011) .................................................................... 6

*Awad* v. *Ziriax*,
    670 F.3d 1111 (10th Cir. 2012) ............................................................... 10

*Barber* v. *Bryant*,
    193 F. Supp. 3d 677, 709 (S.D. Miss. 2016) .............................................. 21

*Bd. of Educ. of Kiryas Joel Village Sch. Dist.* v. *Grumet*,
    512 U.S. 687 (1994) ....................................................................... 15, 16, 17

*Bowen* v. *Kendrick*,
    487 U.S. 589 (1988) .......................................................................... 13, 14

*Bower* v. *Village of Mt. Sterling*,
    44 F. App'x 670 (6th Cir. 2002) .............................................................. 24

*Campaign for S. Equality* v. *Miss. Dep't of Human Servs.*,
    175 F. Supp. 3d 691 (S.D. Miss. 2016) .................................................... 21

*City of Cleburne, Tex.* v. *Cleburne Living Ctr.*,
    473 U.S. 432 (1985) .............................................................................. 20

*Cleveland Branch, NAACP* v. *City of Parma*,
    263 F.3d 513 (6th Cir. 2001) .................................................................. 12

*Commercial Money Ctr., Inc.* v. *Ill. Union Ins. Co.*,
   508 F.3d 327 (6th Cir. 2007) ............................................................5

*Corp. of Presiding Bishops of Church of Jesus Christ of Latter-Day*
*Saints* v. *Amos*,
   483 U.S. 327 (1987) ............................................................. 18, 19

*Cutter* v. *Wilkinson*,
   544 U.S. 709 (2005) ............................................................. 17, 19

*Davis* v. *Prison Health Servs.*,
   679 F.3d 433 (6th Cir. 2012) ..........................................................23

*Doe* v. *Porter*,
   370 F.3d 558 (6th Cir. 2004) ..........................................................15

*Doe* v. *State*,
   808 S.E.2d 807 (S.C. 2017) ............................................................21

*Edwards* v. *Aguillard*,
   482 U.S. 578 (1987) ......................................................................19

*Estate of Thornton* v. *Caldor, Inc.*,
   472 U.S. 703 (1985) ................................................................. 16, 17

*Fla. Dep't of Children & Families* v. *Adoption of X.X.G.*,
   45 So. 3d 79 (Fla. Dist. Ct. App. 2010) ...........................................6

*Flast* v. *Cohen*,
   392 U.S. 83 (1968) ........................................................................13

*Galaria* v. *Nationwide Mut. Ins. Co.*,
   663 F. App'x 384 (6th Cir. 2016) ...................................................11

*Gillette* v. *United States*,
   401 U.S. 437 (1971) ......................................................................19

*Handy-Clay* v. *City of Memphis, Tenn.*,
   695 F.3d 531 (6th Cir. 2012) ............................................................3

*Heckler* v. *Mathews*,
   465 U.S. 728 (1984) ......................................................................10

*Hein* v. *Freedom from Religion Found., Inc.*,
    551 U.S. 587 (2007) ................................................................ 14

*Heller* v. *Doe*,
    509 U.S. 312 (1993) ................................................................ 24

*Henderson* v. *Adams*,
    209 F. Supp. 3d 1059 (S.D. Ind. 2016) ................................ 21

*Lambert* v. *Hartman*,
    517 F.3d 433 (6th Cir. 2008) ................................................ 11

*Lamont* v. *Woods*,
    948 F.2d 825 (2d Cir. 1991) .......................................... 13, 14

*Larkin* v. *Grendel's Den, Inc.*,
    459 U.S. 116 (1982) ...................................................... 15, 16

*Lee* v. *Weisman*,
    505 U.S. 577 (1992) ...................................................... 17, 18

*Lehr* v. *Robertson*,
    463 U.S. 248 (1983) ................................................................ 20

*Lujan* v. *Defenders of Wildlife*,
    504 U.S. 555 (1992) ........................................................ 9, 12

*McLaughlin* v. *Jones*,
    401 P.3d 492 (Ariz. 2017) ...................................................... 21

*Mich. Catholic Conf.* v. *Burwell*,
    755 F.3d 372 (6th Cir. 2014) ................................................ 18

*Miller* v. *Davis*,
    123 F. Supp. 3d 924 (E.D. Ky. 2015) .............................. 10, 11

*Minnesota* v. *Clover Leaf Creamery Co.*,
    449 U.S. 456 (1981) ................................................................ 24

*Mitchell* v. *Helms*,
    530 U.S. 793 (2000) ................................................................ 18

*Moss* v. *Spartanburg Cnty. Sch. Dist. Seven*,
683 F.3d 599 (4th Cir. 2012) ............................................................................ 10

*Ne. Fla. Chapter of Associated Gen. Contractors of Am.* v.
*Jacksonville*,
508 U.S. 656 (1993) ........................................................................................ 10

*Obergefell* v. *Hodges*,
135 S. Ct. 2584 (2015) ........................................................................ 10, 20, 21

*Ondo* v. *City of Cleveland*,
795 F.3d 597 (6th Cir. 2015) ............................................................................ 20

*Parsons* v. *U.S. DOJ*,
801 F.3d 701 (6th Cir. 2015) .............................................................. 10, 11, 12

*Pavan* v. *Smith*,
137 S. Ct. 2075 (2017) ...................................................................................... 21

*Pedreira* v. *Ky. Baptist Homes for Children, Inc.*,
579 F.3d 722 (6th Cir. 2009) ............................................................................ 13

*Pedreira* v. *Sunrise Children's Servs., Inc.*,
802 F.3d 865 (6th Cir. 2015) ............................................................................ 14

*Santa Fe Indep. Sch. Dist.* v. *Doe*,
530 U.S. 290 (2000) .................................................................................... 19, 20

*Smith* v. *Jefferson Cnty. Bd. of Sch. Comm'rs*,
788 F.3d 580 (6th Cir. 2015) ............................................................................ 19

*Solo* v. *United Parcel Serv. Co.*,
819 F.3d 788 (6th Cir. 2016) ............................................................................ 11

*State* v. *Arlene's Flowers, Inc.*,
389 P.3d 543 (Wash. 2017) ............................................................................... 10

*Stewart* v. *Heineman*,
892 N.W.2d 542 (Neb. 2017) ............................................................................. 6

*Tex. Monthly, Inc.* v. *Bullock*,
489 U.S. 1 (1989) .............................................................................................. 17

*Trinity Lutheran Church of Columbia, Inc.* v. *Comer*,
   137 S. Ct. 2012 (2017) ........................................................................ 18

*Walz* v. *Tax Comm'n of the City of New York*,
   397 U.S. 664 (1970) ............................................................................ 19

*Windsor* v. *United States*,
   699 F.3d 169 (2d Cir. 2012) ................................................................ 20

*Zelman* v. *Simmons-Harris*,
   536 U.S. 639 (2002) ............................................................................ 18

## Statutes & Regulations

Mich. Comp. L.

   § 400.14f .............................................................................................. 4

   § 400.111 *et seq.* ................................................................................ 13

   § 400.951 *et seq.* ................................................................................ 13

   § 710.21a ............................................................................................ 22

   § 710.22 .............................................................................................. 22

   § 722.111 ............................................................................................ 4

   § 722.112 ............................................................................................ 4

   § 722.124e ................................................................................. 7, 8, 14

   § 722.124f ............................................................................................ 8

   § 722.953 ........................................................................................ 4, 22

   § 722.954b .......................................................................................... 4

Mich. Admin. Code.

   R. 400.2001 *et seq.* ............................................................................ 13

   R. 400.12201 *et seq.* .......................................................................... 4

R. 400.12304 ..................................................................................4

R. 400.12310 ..................................................................................5

R. 400.12404 ..................................................................................5

R. 400.12605 ..................................................................................5

R. 400.12706 ..................................................................................4

R. 400.12709 ..................................................................................5

**Other Authorities**

Implementation, Sustainability & Exit Plan, *Dwayne B.* v. *Snyder*,
    No. 06-cv-13548 (E.D. Mich. Feb. 2, 2016) .......................................6

Michigan Department of Health & Human Services,
    Adoption Services Manual ..................................................................4

Michigan FY2018 Appropriations Act, 2017 P.A. 107 .........................13

## CONCISE STATEMENT OF ISSUES PRESENTED

1.  Whether Plaintiffs Dumonts and Busk-Suttons have pled standing based on the stigma and practical burden of being turned away by state-contracted child placing agencies when they sought to adopt, solely because of those agencies' religious objections to placing children with same-sex couples.

2.  Whether Plaintiffs have standing to assert an Establishment Clause challenge to the State's provision of taxpayer funds to child placing agencies to carry out foster care and adoption services under State contract, knowing that certain agencies use religious criteria to screen out prospective families.

3.  Whether Plaintiffs stated an Establishment Clause claim when they have pled facts showing that: (a) the State delegates to private child placing agencies the authority to license and select families for wards of the State knowing that some screen out families based solely on religious criteria; (b) this practice causes harm to children and prospective parents; and (c) the practice promotes a particular religious view about same-sex couples.

4.  Whether Plaintiffs stated an Equal Protection claim by pleading facts showing that the State's permitting state-contracted agencies to disqualify prospective foster and adoptive families headed by same-sex couples, without regard to parenting ability, interferes with marriage rights and harms children, and is thus contrary to any legitimate state interest.

## CONTROLLING OR MOST APPROPRIATE AUTHORITY

*Lujan* v. *Defenders of Wildlife*, 504 U.S. 555 (1992); *Heckler* v. *Mathews*, 465 U.S. 728 (1984); *Parsons* v. *U.S. DOJ*, 801 F.3d 701 (6th Cir. 2015); *Lambert* v. *Hartman*, 517 F.3d 433 (6th Cir. 2008); *Flast* v. *Cohen*, 392 U.S. 83 (1968); *Pedreira* v. *Ky. Baptist Homes for Children, Inc.*, 579 F.3d 722 (6th Cir. 2009); *Larkin* v. *Grendel's Den, Inc.*, 459 U.S. 116 (1982); *Estate of Thornton* v. *Caldor, Inc.*, 472 U.S. 703 (1985); *Bd. of Educ. of Kiryas Joel Village Sch. Dist.* v. *Grumet*, 512 U.S. 687 (1994); *Edwards* v. *Aguillard*, 482 U.S. 578 (1987); *Smith* v. *Jefferson Cnty. Bd. of Sch. Comm'rs*, 788 F.3d 580 (6th Cir. 2015); *City of Cleburne, Tex.* v. *Cleburne Living Ctr.*, 473 U.S. 432 (1985); *Obergefell* v. *Hodges*, 135 S. Ct. 2584 (2015); *Bower* v. *Village of Mt. Sterling*, 44 F. App'x 670 (6th Cir. 2002).

## PRELIMINARY STATEMENT

Plaintiffs allege—and the State of Michigan (the "State") confirms in its Brief in Support of its Motion to Dismiss ("Br.")—that the State permits state-contracted, taxpayer-funded child placing agencies, which perform the essential functions in the child welfare system of recruiting and selecting families to care for children the State has assigned to these agencies, to use religious criteria to exclude same-sex couples from fostering or adopting these children.  Compl. ¶ 1, ECF No. 1.  But, when the State hires private agencies to perform a government function, it must ensure those services are provided in accordance with the U.S. Constitution—just as if the State provided those services directly.[1]  Because the State could not, consistent with the Establishment and Equal Protection Clauses, disqualify prospective families headed by same-sex couples based solely on religious objections to such families, the State's authorization of such conduct by the contractors it hires to find families for wards of the State is unconstitutional. Accordingly, none of the State's arguments in favor of dismissal has any merit.

*First*, Plaintiffs have pled facts establishing standing.  The Dumonts and Busk-Suttons sought to adopt children from the State's child welfare system, but were turned away by state-contracted agencies based solely on the agencies'

---

[1]     Plaintiffs do not challenge the State's ability to contract out child welfare services to faith-based agencies, but only the use of religious screening criteria to exclude same-sex couples in the provision of this government service.

religious objections to their status as same-sex couples. The resulting stigma and practical barrier to adoption constitute cognizable injuries. The State caused these injuries by authorizing and failing to prevent the agencies' discrimination in the performance of State contracts, and a Court order enjoining the State's practice would provide redress. In addition, all Plaintiffs, as Michigan taxpayers, have standing to raise an Establishment Clause challenge to the State's practice of funding agencies that carry out a public function using religious screening criteria.

*Second*, the State cannot, consistent with the Establishment Clause, use religious criteria to exclude same-sex couples from public adoptions or foster parenting; nor can it authorize agencies that place children on its behalf to do so. In addition, the State's practice violates the Establishment Clause because it privileges religion to the detriment of third parties—prospective families who are turned away and the children who lose out on families to care for them. The State's practice is also unconstitutional because its subjective purpose is, and it objectively appears, to advance a particular religious view about same-sex couples.

*Finally*, the State's practice violates the Equal Protection Clause by interfering with Plaintiffs' marriage rights, as well as authorizing the disparate treatment of same-sex couples for no legitimate government reason. The exclusion of qualified and willing foster and adoptive families by state-contracted agencies contravenes the core purpose of Michigan's child welfare system—to quickly find

loving, stable families for each child in the State's care—and Plaintiffs' allegations rebut the State's proffered rationale that permitting agencies to exclude families somehow provides "more families" and "more services" for children.

## LEGAL STANDARD

The Court is required to "construe the complaint in the light most favorable to the plaintiff, accept its allegations as true, and draw all reasonable inferences in favor of the plaintiff." *Handy-Clay* v. *City of Memphis, Tenn.*, 695 F.3d 531, 538 (6th Cir. 2012). A motion to dismiss must be denied where, as here, plaintiffs allege "facts that state a claim to relief that is plausible on its face and that, if accepted as true, are sufficient to raise a right to relief above the speculative level." *Id.* (citing *Bell Atl. Corp.* v. *Twombly*, 550 U.S. 544, 555, 570 (2007)).

## BACKGROUND

### A.   Michigan's Child Welfare System

The Michigan Department of Health and Human Services ("DHHS") is responsible for administering Michigan's foster care and adoption system.[2] Compl. ¶¶ 2, 24. This system is mandated to "promote the well-being and safety of all children who receive foster care or are adopted, . . . eliminate barriers to the adoption of children[,] and . . . promote the provision of a stable and loving family

---

[2]   Defendants, sued in their official capacity as officers of the State, are Nick Lyon, Director of DHHS, and Herman McCall, Executive Director of the Michigan Children's Services Agency, a sub-agency of DHHS. Compl. ¶¶ 22-23.

environment." Mich. Comp. L. § 722.953. There is an insufficient number of foster and adoptive families for the thousands of children under the care and protection of DHHS, and many children languish in the system until they age out, without ever being placed in a "forever family." Compl. ¶¶ 2, 11, 51.

## B. Pursuant to State Contracts, Children in Michigan's Child Welfare System Are Cared for by Private Agencies.

To carry out its responsibilities to children, DHHS is authorized by statute to enter into contracts with private child placing agencies. *See* Compl. ¶ 25; Mich. Comp. L. §§ 400.14f, 722.111(1)(c). DHHS is "responsible for the development of rules for the care and protection of children" it cares for, including those assigned to private agencies, and those agencies are obligated to comply with such rules. *Id.* § 722.112(1); Mich. Admin. Code R. 400.12201 *et seq.* (rules governing child placing agencies). DHHS and each child placing agency is required to "strive to achieve a permanent placement for each child in its care." Mich. Comp. L. § 722.954b. Under DHHS's regulations, part of a child placing agency's responsibility in handling a child's case is to recruit potential foster and adoptive parents. *See*, *e.g.*, Mich. Admin. Code R. 400.12304, .12706.[3] DHHS has granted agencies substantial discretion in evaluating families and selecting

---

[3] DHHS's Adoption Services Manual ("ADM") also expressly provides that "[c]hild placing agencies . . . must develop and maintain an ongoing program to recruit adoptive families for children available for adoption." ADM 0400, *available at* dhhs.michigan.gov/OLMWEB/EX/AD/Public/ADM/0400.pdf.

appropriate placements for children. *See*, *e.g.*, *id.* 400.12310, .12404, .12605, .12709. Agencies generally choose families for children under their care from the roster of families they have recruited and licensed. Compl. ¶¶ 26, 34.

The agencies' contracts with the State make clear that the agencies' sole responsibilities under the contract are to the children. *See* Motion Ex. 1 ("Adoption Contract") § 1.1, at 2 ("The Contractor shall perform activities for Michigan permanent wards."); *id.* § 2.6, at 4; Motion Ex. 2 ("Foster Contract") § 1(B), at 2.[4] Once an agency accepts DHHS's referral for a child's case, it receives taxpayer dollars to carry out services for the child under the State contracts. Compl. ¶¶ 27-28; *see also* Adoption Contract § 3.1(a)-(b), at 20-22.

### C.   The State's Contracts Prohibit Agencies from Discriminating Against Prospective Parents Based on Sexual Orientation.

The State's contracts expressly forbid discrimination on the basis of, *inter alia*, religion, marital status, and sexual orientation, including with respect to "applications filed for adoption of MDHHS supervised children including MDHHS supervised children assigned to a contracted agency." Adoption Contract § 2.9(c), at 5; Compl. ¶ 31. DHHS also provides eligibility criteria to be used in assessing a prospective adoptive parent, which likewise forbid discrimination on the basis of

---

[4]    Because these contracts are "referred to" in the Complaint and "integral" to Plaintiffs' claims, this Court may consider them on a motion to dismiss. *Commercial Money Ctr., Inc.* v. *Ill. Union Ins. Co.*, 508 F.3d 327, 336 (6th Cir. 2007).

sexual orientation.  Compl. ¶ 35.  If an agency violates its contract, including the anti-discrimination provision, then the State can demand compliance with the contract and, if necessary, terminate it.  *See* Adoption Contract § 4.23, at 36-37.[5]

### D.    The State Knowingly Contracts with Agencies that Refuse to License or Place Children with Same-Sex Couples.

Plaintiffs Kristy and Dana Dumont and Erin and Rebecca Busk-Sutton seek to adopt from the State's child welfare system.  Compl. ¶¶ 57-60, 65-67.  As recognized by the State through its contractual prohibition of sexual-orientation discrimination, that the Dumonts and Busk-Suttons are same-sex couples is irrelevant to their capacity to care for a child, and the consensus of child welfare professionals agrees.  Compl. ¶ 54.[6]  Nevertheless, two agencies contacted by the

---

[5]    The contracts also require compliance with an active consent decree against DHHS, Adoption Contract § 2.9(h), at 6, which arose out of litigation on behalf of children in the State's care alleging systemic deficiencies.  *See* Implementation, Sustainability & Exit Plan, *Dwayne B.* v. *Snyder*, No. 06-cv-13548 (E.D. Mich. Feb. 2, 2016), ECF No. 261.  This consent decree recognizes that "[t]he first priority of the DHHS child welfare system is to keep children safe" and DHHS must "provide children with a permanent home and/or permanent connection with caring, supportive adults as soon as possible."  *Id.* § 2.1(a), (e).  Among other things, the consent decree requires DHHS to "independently monitor and enforce" its contracts with child placing agencies, ensuring that its contractors "compl[y] with all aspects of all DHHS policies and procedures that apply."  *Id.* § 4.20.

[6]    Courts around the country have credited the professional view that sexual orientation has no bearing on a person's ability to parent.  *E.g.*, *Stewart* v. *Heineman*, 892 N.W.2d 542 (Neb. 2017); *Ark. Dep't of Human Servs.* v. *Cole*, 380 S.W.3d 429 (Ark. 2011); *Fla. Dep't of Children & Families* v. *Adoption of X.X.G.*, 45 So. 3d 79 (Fla. Dist. Ct. App. 2010).

Dumonts and Busk-Suttons turned them away based solely on the agencies' religious objections to same-sex couples.   Compl. ¶¶ 57-69.   When Plaintiffs' counsel notified the State in 2016 that agencies were using religious criteria to screen out same-sex couples, the State refused to confer with Plaintiffs' counsel and did not disclaim the practice.   Compl. ¶ 50.   Now, the State admits that some state-contracted agencies "for religious reasons, only work with married, opposite-sex couples."   Br. at 13.   This practice harms children in the care of these agencies by potentially preventing a prompt placement with a "forever family" or denying them the family best suited to meet their individual needs.   Compl. ¶ 53.

### E.   Michigan's 2015 Adoption Law

In 2015, the Michigan Legislature passed 2015 P.A. 53 (the "2015 Adoption Law" or "the Law"), which purports to provide certain protections for child placing agencies that decline to provide certain "services" on account of their "sincerely held religious beliefs."   Mich. Comp. L. § 722.124e(2).   The legislative history shows that the Law's purpose was to allow agencies with religious objections to same-sex couples to decline to work with them in providing child placing services.   Compl. ¶¶ 38-47.   However, the Law's protections do not extend to the "services" provided for State wards under the State contracts that are at issue in this case.   As the State acknowledges, Br. at 6 n.7, the 2015 Adoption Law

expressly *excludes* "foster care case management and adoption services provided under a contract with [DHHS]."  Mich. Comp. L. § 722.124e(7)(b).

To the extent the State suggests that the 2015 Adoption Law authorizes child placing agencies to apply religious screening criteria to prospective families in their work done under State contract, *see* Br. at 5-6, they are wrong.  The provision the State cites only permits agencies to decline a *DHHS referral* "for foster care case management or adoption services under a contract with the child placing agency."  Mich. Comp. L. § 722.124f(1).  Once an agency accepts a DHHS referral to provide services for a child, it must then provide the services for that child in full compliance with the relevant State contract, including DHHS's non-discrimination policy.[7]  Categorically turning away potentially good families is a denial of services the agencies agreed to provide for these children.

## ARGUMENT

## I.    PLAINTIFFS HAVE ESTABLISHED STANDING.

Plaintiffs have established standing to bring this action on two separate grounds.  *First*, the Dumonts and Busk-Suttons (the "Prospective Parent Plaintiffs") have standing to bring Equal Protection and Establishment Clause claims based on being turned away by state-contracted child placing agencies when

---

[7]    The contracts at issue are clear that the only "services under [] contract" are services *for the children*, and "referrals" for services are of children's cases to the agencies.  *See* Adoption Contract § 1.2, at 3-5; Foster Contract § II.A, at 12.

they sought to adopt. *Second*, all Plaintiffs have standing as Michigan taxpayers to bring Establishment Clause claims arising out of the disbursement of taxpayer funds spent under Michigan's statutory child welfare system.[8]

### A. The Prospective Parent Plaintiffs Have Standing Based on Being Turned Away by State-Contracted Child Placing Agencies.

The Prospective Parent Plaintiffs have pled facts establishing standing because their injuries are (1) each an "injury in fact," (2) "fairly traceable" to Defendants' practices, and (3) "redress[able] by a favorable decision." *Lujan* v. *Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992). The Dumonts and Busk-Suttons seek to adopt children from the state foster care system. Compl. ¶¶ 59-63, 67-68. When they contacted certain state-contracted child placing agencies, however, those agencies turned them away solely because of the agencies' religious objections to same-sex couples. Compl. ¶¶ 61-63, 68.[9]

These allegations establish both stigmatic and practical injuries: *First*, under longstanding Supreme Court precedent, "discrimination itself . . . can cause

---

[8]    Plaintiff Jennifer Ludolph does not assert standing based on her adoption history. *See* Br. at 14-15. Nor do Plaintiffs "rely on alleged generalized harm to children to establish standing," *see* Br. at 16, though harm to children is relevant to the merits of Plaintiffs' claims. *See* pp. 16-19, 21-24, *infra*.

[9]    The State cites inapposite authority holding that the foster parent relationship is not a "liberty interest" protected by substantive due process. *See* Br. at 12 (citing cases). The Prospective Parent Plaintiffs' claims are based only upon their rights to equal protection and to be free from establishment of religion.

serious non-economic injuries to those persons who are personally denied equal treatment solely because of their membership in a disfavored group." *Heckler* v. *Mathews*, 465 U.S. 728, 739-40 (1984); *see also Parsons* v. *U.S. DOJ*, 801 F.3d 701, 712 (6th Cir. 2015) ("Stigmatization also constitutes an injury in fact."). As the Supreme Court has ruled, "excluding same-sex couples [from government benefits] impose[s] stigma and injury of the kind prohibited by our basic charter." *Obergefell* v. *Hodges*, 135 S. Ct. 2584, 2602 (2015); *id.* at 2601 (denying "constellation of benefits [related to marriage] . . . results in more than just material burdens"). And, courts have consistently recognized standing to raise Establishment Clause challenges based on stigmatic harm inflicted by government action. *E.g.*, *Moss* v. *Spartanburg Cnty. Sch. Dist. Seven*, 683 F.3d 599, 607 (4th Cir. 2012); *Awad* v. *Ziriax*, 670 F.3d 1111, 1120-24 (10th Cir. 2012).

*Second*, the refusal by state-contracted agencies to accept same-sex married couples like the Prospective Parent Plaintiffs "makes it more difficult for [them] to obtain a benefit than it is for" opposite-sex married couples. *Ne. Fla. Chapter of Associated Gen. Contractors of Am.* v. *Jacksonville*, 508 U.S. 656, 666 (1993); *see also Miller* v. *Davis*, 123 F. Supp. 3d 924, 944 (E.D. Ky. 2015) (granting preliminary injunction requiring county clerk to issue marriage licenses to all couples, including same-sex couples), *aff'd*, 2015 WL 10692640 (6th Cir. Aug. 26, 2015); *State* v. *Arlene's Flowers, Inc.*, 389 P.3d 543, 851 (Wash. 2017)

(rejecting argument that "since other florists were willing to serve [same-sex couple], no real harm will come from [defendant's] refusal" to serve them).[10]

These injuries are "fairly traceable" to Defendants. As Plaintiffs allege, the State contracts with certain agencies to perform public child welfare services knowing that they use religious criteria to turn away prospective families headed by same-sex couples. Compl. ¶¶ 3, 37, 50, 78, 84.[11] The State authorized and failed to take action under its contracts to rectify this conduct. An injury is "fairly traceable" to a defendant even where the injury is caused directly by a third party, so long as the defendant's conduct enables the third party's actions.[12]

---

[10] Whether other agencies would accept same-sex parent families is irrelevant to standing. *See Davis*, 123 F. Supp. 3d at 935. Moreover, the State cannot assert facts to rebut this injury on a motion to dismiss. *See Solo* v. *United Parcel Serv. Co.*, 819 F.3d 788, 795-96 (6th Cir. 2016); Br. at 13.

[11] Puzzlingly, the State argues that it did not cause Plaintiffs' injuries because its contracts "prohibit [child placing agencies] from discriminating against potential applicants" and, within one page, also acknowledges that it "contract[s] with faith-based agencies that, for religious reasons, only work with married, opposite-sex couples," Br. at 12-13—conceding that it knowingly fails to enforce its own contracts.

[12] *See Lambert* v. *Hartman*, 517 F.3d 433, 437-38 (6th Cir. 2008) (identity theft victim had standing to sue county clerk whose website displayed personal information, even though thief "was undoubtedly the direct cause of [her] injuries"); *Parsons*, 801 F.3d at 713-15 (plaintiff had standing to challenge DOJ's designation of group as "gang" where injuries alleged were caused "at least in part" by designation); *Galaria* v. *Nationwide Mut. Ins. Co.*, 663 F. App'x 384, 390 (6th Cir. 2016) (consumers had standing to sue insurer, even though "hackers are the direct cause of Plaintiffs' injuries," where "but for [insurer's] allegedly lax security, the hackers would not have been able to steal Plaintiffs' data").

Lastly, Plaintiffs' injuries are "likely" to be "redressed by a favorable decision" of this Court. *Lujan*, 504 U.S. at 560-61. If the State's practice is enjoined, the Prospective Parent Plaintiffs and others like them interested in public adoption would no longer be turned away by child placing agencies solely because of a religious objection to an applicant's sexual orientation. So long as a plaintiff has a continuing interest in pursuing the conduct that led to her injury, an injunction can redress her injury. *See Cleveland Branch, NAACP* v. *City of Parma*, 263 F.3d 513, 529 (6th Cir. 2001); *Parsons*, 801 F.3d at 717.[13]

### B.    All Plaintiffs Have Taxpayer Standing to Assert Establishment Clause Claims.

Plaintiffs have established taxpayer standing for their Establishment Clause claims because they are Michigan state taxpayers, Compl. ¶¶ 6-7, 20-21, and there are (1) "a logical link between [their] taxpayer status and the type of legislative enactment attacked" and (2) "a nexus between the[ir] taxpayer status and the precise nature of the constitutional infringement alleged." *Ariz. Christian Sch. Tuition Org.* v. *Winn*, 563 U.S. 125, 139 (2011). Funds for child placing

---

[13]    Defendants argue that Plaintiffs' injuries are not redressable because, if the Court grants the requested relief, "the two [agencies] with whom Plaintiffs wish to work—and many other faith-based [agencies]—will not provide any services at all." Br. at 13. In addition to relying on a factual assertion that cannot be credited on a motion to dismiss, this argument misconstrues the relief sought: it is not to work with any particular agency, but to require the State to ensure equal treatment and prohibit religious exclusion criteria in public child welfare services.

agencies come largely from appropriations made by the Michigan Legislature for foster care payments and the Child Care Fund, which must be spent according to relevant child welfare statutes.[14]  Compl. ¶¶ 38-50, 76-77.  The way in which the State spends these appropriated funds caused the alleged Establishment Clause violation.

There is no meaningful distinction between this case and the many cases in which taxpayer standing has been found where an administrator of taxpayer funds appropriated for a legislative program spent them in violation of the Establishment Clause.[15]  For example, in *Pedreira*, the Sixth Circuit held that state taxpayers, like Plaintiffs here, had standing to challenge Kentucky's funding of a religious organization to engage in religious activity under a legislatively established "regulatory structure to authorize the placement of children with private facilities."  *Pedreira* v. *Ky. Baptist Homes for Children, Inc.*, 579 F.3d 722,

---

[14]   For example, the FY2018 Appropriations Act, 2017 P.A. 107, at 128, made specific appropriations for foster care payments and the Child Care Fund.  DHHS is empowered to promulgate regulations and oversee spending under the Child Care Fund.  *See* Mich. Comp. L. § 400.111 *et seq.* (Child Care Organizations); *id.* § 400.951 *et seq.* (Foster Care and Adoption Services Act); Mich. Admin. Code R. 400.2001 *et seq.* (Child Care Fund Regulations).

[15]   *E.g.*, *Flast* v. *Cohen*, 392 U.S. 83, 105-06 (1968); *Bowen* v. *Kendrick*, 487 U.S. 589, 618-20 (1988); *Am. Jewish Congress* v. *Corp. for Nat'l & Cmty. Serv.*, 399 F.3d 351, 355-56 (D.C. Cir. 2005); *Lamont* v. *Woods*, 948 F.2d 825, 830 (2d Cir. 1991); *ACLU of Mass.* v. *Sebelius*, 821 F. Supp. 2d 474, 478-480 (D. Mass. 2012), *vacated as moot sub nom.*, *ACLU of Mass.* v. *U.S. Conf. of Catholic Bishops*, 705 F.3d 44 (1st Cir. 2013).

731 (6th Cir. 2009); *accord Pedreira* v. *Sunrise Children's Servs., Inc.*, 802 F.3d 865, 870 (6th Cir. 2015) (reaffirming holding).[16]

By the State's argument that some "executive discretion" eliminates taxpayer standing, Br. at 10, is contradicted by precedent finding taxpayer standing when the challenged funding "flowed through and [was] administered" by an executive agency. *Bowen*, 487 U.S. at 619-20; *see also*, *e.g.*, *Lamont*, 948 F.2d at 830.[17] States cannot avoid constitutional scrutiny simply by adding some measure of executive "discretion" to the manner in which funds are disbursed.

## II. THE STATE'S PRACTICE VIOLATES THE ESTABLISHMENT CLAUSE.

By its own admission, the State permits agencies performing a state function, standing in the shoes of the State, to use religious criteria to exclude prospective foster and adoptive parents for children in State custody. *See* Br. at 13; Compl. ¶¶ 37, 50, 78. This constitutes endorsement and promotion of religion in violation of the Establishment Clause because: (1) the State has delegated a public

---

[16]    The Legislature's precise knowledge about the details of the challenged spending is irrelevant. *See Bowen*, 487 U.S. at 608, 619-20 (taxpayer had standing to challenge program though act was "neutral with respect to the grantee's" religion). In any event, the Legislature was well aware of DHHS's practices when making the relevant appropriations. *See* Compl. ¶¶ 38-48 (legislative history); Mich. Comp. L. § 722.124e (concerning "faith-based" child placing agencies).

[17]    The program challenged in *Hein* v. *Freedom from Religion Foundation, Inc.*, 551 U.S. 587 (2007) is distinguishable because it was created exclusively by executive order and the appropriations at issue "did not expressly authorize, direct, or even mention the expenditures of which respondents complain." *Id.* at 605.

function and allowed it to be impermissibly exercised according to religious tenets;

(2) the State's practice privileges religion to the detriment of third parties; and

(3) the practice is intended, and objectively appears, to promote religion.

### A.    Delegation of a Government Function To Be Performed Using Religious Criteria Violates the Establishment Clause.

In Michigan, the primary point of contact with the State for many children who are wards of the State and prospective foster and adoptive parents are private child placing agencies, which are responsible under contracts with the State for licensing families and placing into families children assigned to their care. Compl. ¶ 25.  In violation of its own contracts, the State permits agencies to use religious eligibility criteria to screen out prospective families.  Compl. ¶ 78.  In so doing, the State violates "the core rationale underlying the Establishment Clause[:] preventing a fusion of governmental and religious functions." *Larkin* v. *Grendel's Den*, 459 U.S. 116, 127 (1982).[18]

In *Grendel's Den*, the Supreme Court invalidated a municipal ordinance that gave churches discretion to veto a liquor license application for any

---

[18]    *See also Bd. of Educ. of Kiryas Joel Village Sch. Dist.* v. *Grumet*, 512 U.S. 687, 702 (1994) (religious community's control over public education policy violated Establishment Clause); *Doe* v. *Porter*, 370 F.3d 558, 564 (6th Cir. 2004) (school board violated Establishment Clause by "ced[ing] its supervisory authority over [certain] classes to Bryan College, which requires its students and faculty to subscribe to a sectarian statement of belief"); *Sebelius*, 821 F. Supp. 2d at 486-88 (permitting religious organization to disburse taxpayer-funded services according to religious criteria violated Establishment Clause).

premises located within 500 feet of a church. Like the State's conduct here, the ordinance at issue "delegate[d] to private, nongovernmental entities . . . a power ordinarily vested in agencies of government." 459 U.S. at 122. There, the Court concluded that the relevant provision merely "*could* be employed for explicitly religious goals." *Id.* at 125 (emphasis added). Here, the State *knows* that religious entities in which it has vested discretionary authority are screening out certain prospective parents based solely on religious criteria. *See* Compl. ¶ 50.

Vesting discretionary governmental power in a religious organization, to be exercised pursuant to religious strictures, presents the "danger of political oppression through a union of civil and ecclesiastical control" that motivated the Framers to draft the Establishment Clause. *Grendel's Den*, 459 U.S. at 127 n.10. DHHS's delegation of public child welfare services to private child placing agencies with permission to use religious eligibility criteria violates the Establishment Clause principle that "civil power must be exercised in a manner neutral to religion," *Kiryas Joel*, 512 U.S. at 704, and it must be enjoined.

**B.    The State's Practice Violates the Establishment Clause by Privileging Religious Exercise in a Manner that Harms Children and Prospective Foster and Adoptive Families.**

The First Amendment forbids "accommodations" of religion that impose substantial burdens on third parties. In *Estate of Thornton* v. *Caldor, Inc.*, the Supreme Court struck down a statute requiring that "those who observe a

Sabbath . . . must be relieved of the duty to work on that day, no matter what burden or inconvenience this imposes on the employer or fellow workers." 472 U.S. 703, 708-09 (1985). The Court rejected the notion that the government can accommodate religion even when it causes harm to third parties, and has since emphasized that "accommodation is not a principle without limits." *E.g.*, *Kiryas Joel*, 512 U.S. at 706.[19] Here, allowing state-contracted child placing agencies to use religious eligibility criteria when performing public child welfare services on behalf of the State runs afoul of the Establishment Clause because it imposes a significant burden on children, who lose out on qualified families, and the families who are turned away.[20]

---

[19]    *See also id.* at 722 (Kennedy, J., concurring) ("[A] religious accommodation demands careful scrutiny to ensure that it does not so burden nonadherents . . . as to become an establishment."); *Tex. Monthly, Inc.* v. *Bullock*, 489 U.S. 1, 15, 18 n.8 (1989) (plurality opinion) (invalidating tax exemption for religious periodicals that "burden[e]d nonbeneficiaries markedly"); *Cutter* v. *Wilkinson*, 544 U.S. 709, 720 (2005) ("[C]ourts must take adequate account of the burdens a requested accommodation may impose on nonbeneficiaries.").

[20]    In addition, no First Amendment interest is advanced by the State's attempt to "alleviate" a purported "interference" with "religious missions." *See* Br. at 18. Agencies are under no compulsion to provide services on behalf of the State and have no entitlement to contractual terms that comport with their religious preferences. *See Agency for Int'l Dev.* v. *Open Soc'y Int'l, Inc.*, 133 S. Ct. 2321, 2328 (2013) ("[I]f a party objects to a condition on the receipt of [government] funding, its recourse is to decline the funds."). Moreover, the State's practice is an unconstitutional delegation of government authority (pp. 15-16, *supra*), and "[t]he principle that government may accommodate the free exercise of religion does not supersede the fundamental limitations imposed by the Establishment Clause." *Lee*

(*footnote continued . . .*)

The State's reliance on *Trinity Lutheran Church of Columbia, Inc.* v. *Comer*, 137 S. Ct. 2012 (2017), *see* Br. at 19, is misplaced. *Trinity Lutheran* addressed a Free Exercise challenge to the government's denial of a public benefit to a religious institution—a grant for playground resurfacing—solely on the basis of the institution's religious identity. This case is not about religious institutions' access to government benefits, as the contracts at issue are not government benefits; nor do Plaintiffs challenge the State's ability to contract with religious child placing agencies. Rather, Plaintiffs challenge the constitutionality of the use of exclusionary religious screening criteria in carrying out a government service.[21]

Nor does *Corporation of Presiding Bishops of Church of Jesus Christ of Latter-Day Saints* v. *Amos*, 483 U.S. 327 (1987), offer any support for the State. *Amos* upheld Section 702 of the Civil Rights Act, which permitted religious organizations to hire only co-religionists. *Id.* at 331, 340. Unlike the child placing

---

( . . . *footnote continued*)

v. *Weisman*, 505 U.S. 577, 587 (1992). There is no legitimate "accommodation" interest, however agencies "define and carry out their religious missions." Br. at 18; *see Mich. Catholic Conf.* v. *Burwell*, 755 F.3d 372, 384-85 (6th Cir. 2014) ("Although we are in no position to determine the moral or theological consequences of appellants requesting the exemption or accommodation, we must determine the legal consequences."), *judgment vacated*, 135 S. Ct. 1914 (2015).

[21]     For the same reason, the State's other cited cases involving religious institutions' access to government benefits have no relevance here. *See Mitchell* v. *Helms*, 530 U.S. 793 (2000) (aid to schools); *Zelman* v. *Simmons-Harris*, 536 U.S. 639 (2002) (indirect funding for religious schools through voucher program).

-18-

agencies here, the defendants in *Amos* were not funded by the government, partnering with the government, or exercising government functions. *Id.* at 337.[22]

## C. The State's Practice Intentionally and Objectively Favors Religion in Contravention of the Establishment Clause.

Defendants' practice also violates the Establishment Clause because the State has deliberately structured public policy "to give preference to those religious groups" that oppose same-sex relationships as a matter of religious doctrine. *See Edwards* v. *Aguillard*, 482 U.S. 578, 593 (1987). The legislative history of the 2015 Adoption Law reveals the impermissible purpose behind DHHS's practice of authorizing discrimination by those with religious opposition to same-sex couples. Compl. ¶¶ 38-50. In addition to having an impermissible subjective purpose, the State's practice "objectively convey[s] a message" of endorsement of a particular religious view about same-sex relationships. *See Smith* v. *Jefferson Cnty. Bd. of Sch. Comm'rs*, 788 F.3d 580, 588 (6th Cir. 2015). Agencies, acting on behalf of the State, send to the families they turn away the "message . . . that they are outsiders, not full members of the political community." *Santa Fe Indep. Sch. Dist*. v. *Doe*, 530 U.S. 290, 309 (2000). And, by allowing

---

[22]    Similarly distinguishable are the exemptions for private or individual religious practice in *Cutter* v. *Wilkinson*, 544 U.S. 709 (2005), *Walz* v. *Tax Commission of the City of New York*, 397 U.S. 664 (1970), and *Gillette* v. *United States*, 401 U.S. 437 (1971). None of those cases involved a supposed right to a religious exemption in the execution of a government service under state contract.

religious agencies performing a state function to do this, regardless of the harms to prospective families and children, the State gives the appearance that these agencies' religious beliefs are favored. *Id.* at 310.

## III. THE STATE'S SANCTIONING THE CATEGORICAL EXCLUSION OF SAME-SEX PROSPECTIVE PARENTS BY CHILD PLACING AGENCIES VIOLATES THE EQUAL PROTECTION CLAUSE.

The Equal Protection Clause requires the government to treat all similarly situated persons alike. *City of Cleburne, Tex.* v. *Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985). At a minimum, this prohibits the government from making "distinctions between individuals based solely on differences that are irrelevant to a legitimate governmental objective." *Lehr* v. *Robertson*, 463 U.S. 248, 265 (1983). Under any level of scrutiny,[23] the State's practice of allowing state-contracted agencies to categorically turn away same-sex couples based on religious objections violates the Equal Protection Clause.

As the Supreme Court recognized in *Obergefell* v. *Hodges*, the State cannot "deny gays and lesbians [the] many rights and responsibilities intertwined with marriage"—expressly including "adoption rights." 135 S. Ct. 2584, 2601,

---

[23]   Although the Sixth Circuit has stated that rational basis review applies to "state actions involving sexual orientation," *Ondo* v. *City of Cleveland*, 795 F.3d 597, 608-09 (6th Cir. 2015), Plaintiffs expressly preserve the issue of whether sexual-orientation classifications are suspect or quasi-suspect and trigger heightened Equal Protection scrutiny. *See Windsor* v. *United States*, 699 F.3d 169, 185 (2d Cir. 2012) (intermediate scrutiny), *aff'd on other grounds*, 570 U.S. 744 (2013).

2606 (2015). Under the State's practice here, married "same-sex couples are denied all the benefits afforded to opposite-sex couples" with respect to adoption and foster care. *Id.* at 2604. This principle was applied to adoptions, including public adoptions like those at issue here, in *Campaign for Southern Equality* v. *Mississippi Department of Human Services*, 175 F. Supp. 3d 691, 710 (S.D. Miss. 2016), in which the court enjoined the State of Mississippi's practice of excluding same-sex couples from adopting out of the foster care system because it "interfer[ed] with the right to marry" and thereby "violate[d] the Equal Protection Clause."[24] This Court should apply the same principle here.[25]

Moreover, the State's practice of allowing agencies to cast aside families that the State's children desperately need advances no legitimate child welfare interest. The primary purpose of Michigan's child welfare system is to

---

[24]    Courts around the country have similarly applied *Obergefell* to many aspects of childrearing and family law. *See*, *e.g.*, *Pavan* v. *Smith*, 137 S. Ct. 2075, 2077 (2017) (birth certificates); *Doe* v. *State*, 808 S.E.2d 807, 2017 WL 5907363, at *8 n.12 (S.C. 2017) (protections against domestic abuse); *McLaughlin* v. *Jones*, 401 P.3d 492, 498 (Ariz. 2017) (presumption of parenthood), *petition for cert. filed*, No. 17-878 (U.S. Dec. 18, 2017); *Henderson* v. *Adams*, 209 F. Supp. 3d 1059, 1076 (S.D. Ind. 2016) (birth certificates), *appeal docketed*, No. 17-1141 (7th Cir.).

[25]    *See also Barber* v. *Bryant*, 193 F. Supp. 3d 677, 709 (S.D. Miss. 2016) (finding that law allowing citizens to discriminate against LGBT and unmarried persons based on "sincerely held religious beliefs or moral convictions" offends Equal Protection Clause because "effect of [law] would demean LGBT citizens, remove their existing legal protections, and more broadly deprive them their right to equal treatment under the law"), *rev'd on other grounds*, 860 F.3d 345 (5th Cir. 2017), *cert. denied*, 2018 WL 311355 (U.S. Jan. 8, 2018).

"promote the well-being and safety of all children who receive foster care or are adopted under the laws of this state." *See*, *e.g.*, Mich. Comp. L. § 722.953(c). In carrying out that mission, DHHS must "eliminate the barriers to the adoption of children," *id.* § 722.953(b), "provide procedures and services that will safeguard and promote the best interests of each" child under its care, *id.* § 710.21a, and assure that the "best interests of the child" are advanced by "permanence at the earliest possible date," *id.* § 710.22(g). The Complaint's allegations, which must be accepted as true, establish that the State's practice is contrary to this purpose and actually harms children by turning away prospective families, thereby exacerbating a shortage of qualified families and denying some children the family best suited to meet their needs. Compl. ¶¶ 11, 51, 53, 55, 56.

The State offers no legitimate government interest that is rationally furthered by authorizing the exclusion, based solely on religious criteria, of prospective families headed by same-sex couples. Rather than do the impossible and try to justify such exclusion—which is forbidden by the State's own contracts and contrary to the consensus of child welfare professionals (*see* pp. 5-6 & n.6, *supra*)—the State asserts that "[c]ontracting with both faith-based and non-faith

based CPAs opens the door to more services and more families." Br. at 24.[26] This misses the point. Plaintiffs do not challenge the State's practice of contracting with "faith-based agencies," only its practice of authorizing state-contracted agencies to use religious screening criteria to turn away qualified same-sex parent families. As to *that* practice, the Complaint's allegations establish that it *diminishes* the number of families and services (*e.g.*, recruiting and licensing families) provided for children cared for by agencies under State contract.

This Court should not, on a motion to dismiss, credit the State's assertion that if religiously affiliated agencies are not allowed to discriminate against same-sex couples in providing state-contracted services, they will shut down (and others will not be able to provide the same services), thereby reducing the number of available families and the quantity of services that can be provided. *See* Br. at 1, 13-14. Defendants cannot present factual disputes that conflict with the Complaint, which this Court, respectfully, cannot resolve without the benefit of discovery and a factual record. *See Davis* v. *Prison Health Servs.*, 679 F.3d 433, 439 (6th Cir. 2012) (under rational basis review, "court was required to treat [plaintiff's] allegations—not the contested statements [defendants relied on]—as

---

[26]    Defendants' other asserted interest, in "not violating the U.S. Constitution by requiring [child placing agencies] to relinquish their religious beliefs," Br. at 24, fails as a matter of law; the State's practice vis-à-vis religion actually violates the First Amendment. (*See* pp. 14-20, *supra*.)

true"); *Bower* v. *Village of Mt. Sterling*, 44 F. App'x 670, 678 (6th Cir. 2002) (under rational basis review, "construing the allegations in a light most favorable to the Plaintiff").   Plaintiffs intend to present evidence showing that the State's suggestion that its policy increases the number of available families and the quantity of child welfare services has no basis in reality.[27]  *See Heller* v. *Doe*, 509 U.S. 312, 321 (1993) ("[E]ven the standard of rationality . . . must find some footing in the realities of the subject addressed."); *Minnesota* v. *Clover Leaf Creamery Co.*, 449 U.S. 456, 464 (1981) (equal protection plaintiffs "may introduce evidence supporting their claim that [government action] is irrational").

Because the allegations in the Complaint establish that no legitimate government interest is furthered by the State's practice, or at a minimum create a factual dispute as to whether there is any rational basis for the practice, Plaintiffs have adequately pled a violation of the Equal Protection Clause.

---

[27]    News reports describe how Illinois's child welfare system continued to function when Illinois prohibited state-contracted child placing agencies from turning away qualified same-sex couples:  Manya A. Brachear, *Catholic Charities in Peoria Diocese To End State Contracts, Transfer Foster Care Services*, CHI. TRIBUNE, Oct. 7, 2011, articles.chicagotribune.com/2011-10-07/news/ct-met-peoria-catholic-charities-foster-care-20111007_1_glenn-van-cura-peoria-diocese-civil-unions; *New name: 'Christian Social Services of Illinois'*, THE SOUTHERN ILLINOISAN, Feb. 1, 2012, thesouthern.com/news/local/new-name-christian-social-services-of-illinois/article_d98e7474-4c7f-11e1-a064-001871e3ce6c.html.

## CONCLUSION

For the reasons set forth above, the Court should deny the State's Motion. In the alternative, Plaintiffs seek leave to amend their Complaint.

Dated:        February 6, 2018

*/s/  Garrard Beeney*

<table>
<tr>
<td valign="top">

Jay Kaplan (P38197)
Michael J. Steinberg (P43085)
American Civil Liberties Union
  Fund of Michigan
2966 Woodward Avenue
Detroit, MI  48201
Telephone:  (313) 578-6823
jkaplan@aclumich.org
msteinberg@aclumich.org

Daniel Mach
American Civil Liberties Union
  Foundation
915 15th Street NW
Washington, DC  20005
Telephone:  (202) 675-2330
dmach@aclu.org

</td>
<td valign="top">

Leslie Cooper
American Civil Liberties Union
  Foundation
125 Broad Street, 18th Floor
New York, NY  10004
Telephone:  (212) 549-2633
lcooper@aclu.org

Garrard R. Beeney
Ann-Elizabeth Ostrager
Ryan D. Galisewski
Jason W. Schnier
SULLIVAN & CROMWELL LLP
125 Broad Street
New York, NY  10004-2498
Telephone:  (212) 558-4000
beeneyg@sullcrom.com
ostragera@sullcrom.com
galisewskir@sullcrom.com
schnierj@sullcrom.com

*Counsel for Plaintiffs*

</td>
</tr>
</table>

-25-

## CERTIFICATE OF SERVICE

I hereby certify that, on February 6, 2018, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to all counsel of record.

Dated:   February 6, 2018

*/s/ Garrard Beeney*

SULLIVAN & CROMWELL LLP
125 Broad Street
New York, NY  10004-2498
Telephone:  (212) 558-4000
beeneyg@sullcrom.com