# UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

KRISTY DUMONT; DANA DUMONT; ERIN BUSK-SUTTON; and REBECCA BUSK-SUTTON,

        Plaintiffs,

        v.

ROBERT GORDON, in his official capacity as the Director of the Michigan Department of Health and Human Services; and JENNIFER WRAYNO, in her official capacity as the Acting Executive Director of the Michigan Children's Services Agency,

        Defendants,

and

ST. VINCENT CATHOLIC CHARITIES; MELISSA BUCK; CHAD BUCK; and SHAMBER FLORE,

        Intervenor Defendants.

No. 2:17-cv-13080-PDB-EAS

HON. PAUL D. BORMAN

MAG. ELIZABETH A. STAFFORD

**STIPULATION OF VOLUNTARY DISMISSAL WITH PREJUDICE**

        Plaintiffs Kristy Dumont, Dana Dumont, Erin Busk-Sutton, and

Rebecca Busk-Sutton (collectively, "Plaintiffs") and Defendants Robert Gordon and

Jennifer Wrayno[1] (collectively, "State Defendants") file this stipulation of dismissal of the above-captioned action (the "Action") under Rule 41(a)(2) of the Federal Rules of Civil Procedure.  Plaintiffs and State Defendants state as follows:

On September 20, 2017, Plaintiffs filed the complaint in the Action with the U.S. District Court for the Eastern District of Michigan against the State Defendants.  (ECF No. 1.)

On December 18, 2017, St. Vincent Catholic Charities, Melissa and Chad Buck, and Shamber Flore ("Intervenor Defendants") moved to intervene in this case (ECF No. 18), which motion was granted on March 22, 2018.  (ECF No. 34.)

On September 14, 2018, this Court denied in substantial part the motions to dismiss filed by State Defendants and Intervenor Defendants.  (ECF No. 49 at 93.)

On September 17, 2018, the Court entered a schedule for discovery and briefing to "manage the progress of the case" (the "September 17 Scheduling Order").  (ECF No. 51 at 1.)

On October 31, 2018, all Parties jointly moved to modify the September 17 Scheduling Order.  (ECF No. 61.)  On November 2, 2018, this Court granted in part and denied in part that motion.  (ECF No. 62.)

---

[1]  Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, this stipulation reflects the substitution of Herman McCall, a party in his official capacity who has ceased to hold office during the pendency of the Action, for Jennifer Wrayno, who is "automatically substituted as a party."

On November 13, 2018, this Court issued an Amended Scheduling Order. (ECF No. 63.)

The Parties have engaged in substantial discovery, including the exchange of written discovery and document production.

On January 23, 2019, Plaintiffs and State Defendants moved this Court to stay proceedings as Plaintiffs and State Defendants actively worked to reach a resolution.  (ECF No. 74.)  On that same day, Plaintiffs filed a Joint Motion for Immediate Consideration of the Motion to Stay Proceedings.  (ECF No. 75.)

On January 24, 2019, this Court granted in part Plaintiffs' and State Defendants' Joint Motion to Stay Proceedings, entering a thirty (30) day stay of proceedings.  (ECF No. 76.)

On February 22, 2019, State Defendants moved this Court to stay proceedings as Plaintiffs and State Defendants actively worked to reach a resolution.  (ECF No. 79.)  On that same day, State Defendants filed a Motion for Immediate Consideration of the Motion to Stay Proceedings (ECF No. 80) and this Court granted State Defendants' Motion to Stay Proceedings, entering a thirty (30) day stay of proceedings (ECF No. 81).

Plaintiffs and State Defendants have since entered into a Settlement Agreement, disposing of all claims asserted in the Action.  An executed copy of the Settlement Agreement is attached hereto as Exhibit A.  Intervenor Defendants,

who have asserted no claims and against whom no claims have been asserted, are not party to the Settlement Agreement.

Plaintiffs and State Defendants have agreed that all costs and attorneys' fees are the responsibility of the party incurring same.  For the foregoing reasons, Plaintiffs and State Defendants respectfully request that the Court enter an order to dismiss all of Plaintiffs' claims in the Action.

Dated:  March 22, 2019

                                              */s/ Ann-Elizabeth Ostrager*

Jay Kaplan (P38197)                  Leslie Cooper
Michael J. Steinberg (P43085)        American Civil Liberties Union
American Civil Liberties Union          Foundation
   Fund of Michigan                  125 Broad Street, 18th Floor
2966 Woodward Avenue                 New York, NY  10004
Detroit, MI  48201                   Telephone:  (212) 549-2633
Telephone:  (313) 578-6823           lcooper@aclu.org
jkaplan@aclumich.org
msteinberg@aclumich.org              Garrard R. Beeney
                                     Ann-Elizabeth Ostrager
Daniel Mach                          Jason W. Schnier
American Civil Liberties Union       SULLIVAN & CROMWELL LLP
   Foundation                        125 Broad Street
915 15th Street NW                   New York, NY  10004-2498
Washington, DC  20005                Telephone:  (212) 558-4000
Telephone:  (202) 675-2330           beeneyg@sullcrom.com
dmach@aclu.org                       ostragerae@sullcrom.com
                                     schnierj@sullcrom.com

                                     *Counsel for Plaintiffs*

*/s/ Joshua S. Smith*

Joshua S. Smith (P63349)
Assistant Attorney General
Attorneys for State Defendants
Health, Education &
Family Services Division
P.O. Box 30758
Lansing, MI 48909
(517) 335-7603
Smithj46@michigan.gov

*Counsel for State Defendants*

# EXHIBIT A

## Settlement Agreement

# SETTLEMENT AGREEMENT

### *Dumont et al. v. Gordon et al.*
USDC EDMI Case No. 2:17-cv-13080-PDB-EAS

This Settlement Agreement (the "Agreement") between Kristy Dumont, Dana Dumont, Erin Busk-Sutton and Rebecca Busk-Sutton (collectively, the "Plaintiffs"), and Robert Gordon, in his official capacity as the Director of the Michigan Department of Health and Human Services ("MDHHS"), and Jennifer Wrayno, in her official capacity as the Acting Executive Director of the Michigan Children's Services Agency ("MCSA") (Gordon, Wrayno, MDHHS and MCSA collectively referred to herein as the "Department"), resolves Plaintiffs' claims against the Department in the case captioned *Dumont et al. v. Gordon et al.*, Case No. 2:17-cv-13080-PDB-EAS, pending in the United States District Court for the Eastern District of Michigan (the "Litigation"), as stated herein.  Throughout this Agreement, Plaintiffs and the Department may be referred to as a "Party" or collectively referred to as "Parties."

WHEREAS, the Department contracts with licensed child placing agencies ("CPAs") to provide adoption-related services for permanent wards placed with the Department for care, supervision, and adoption ("Adoption Services Contracts").

WHEREAS, the Department contracts with licensed CPAs to provide foster care case management related services for children placed with the Department for care, supervision, and foster care placement ("PAFC Services Contracts").  Throughout this Agreement, the Adoption Services Contracts and the PAFC Services Contracts are collectively referred to as "Contracts."

WHEREAS, the Department may contract with one or more licensed CPAs ("Contractors") to subcontract with other licensed CPAs to provide adoption related services, in substantial compliance with the terms of the Adoption Services Contract, for permanent wards placed with the Department for care, supervision, and adoption ("Adoption Services Subcontracts").

WHEREAS, the Department may contract with one or more Contractors to subcontract with other licensed CPAs to provide foster care case management related services, in substantial compliance with the terms of the PAFC Services Contracts, for children placed with the Department for care, supervision, and foster care placement ("PAFC Services Subcontracts"). Throughout this Agreement, Adoption Services Subcontracts and PAFC Services Subcontracts are collectively referred to as "Subcontracts."

WHEREAS, the Contracts and the Subcontracts include a non-discrimination provision mandating that contracted CPAs comply with the Department's non-discrimination statement prohibiting discrimination "against any individual or group because of race, sex, religion, age, national origin, color, height, weight, marital status, gender identity or expression, sexual orientation, political beliefs, or disability" in the provision of services under contract with the Department (the "Non-Discrimination Provision").

WHEREAS, on September 20, 2017, Plaintiffs filed a complaint asserting claims against the Department in the Litigation.  Thereafter, St. Vincent Catholic Charities, Melissa Buck, Chad Buck, and Shamber Flore intervened as defendants (collectively, "Intervening Defendants") in the Litigation.  Plaintiffs have asserted no claims, and have no current intention to assert any claims,

against Intervening Defendants in the Litigation.  Likewise, the named Defendants have asserted no claims, and have no current intention to assert any claims, against Intervening Defendants in the Litigation.  Intervening Defendants have not asserted any claims, counter-claims or cross-claims against Plaintiffs, Defendants, or any third party in the Litigation.

WHEREAS, Plaintiffs and the Department wish to resolve the Litigation; the Parties agree that they are entering into this Agreement for that purpose only and it is not to be construed as an admission of any liability or wrongdoing.

THEREFORE, in addition to the foregoing, and in the interest of resolving the Litigation, the Parties agree as follows:

Section 1.  Unless prohibited by law or court order:

  a. The Department shall continue including in Contracts, and shall continue requiring all Contractors to include in Subcontracts, the Non-Discrimination Provision, or a materially and substantially similar provision ("Similar Provision").

  b. For the avoidance of doubt, policies and practices prohibited under the Non-Discrimination Provision include, without limitation,

  i. turning away or referring to another contracted CPA an otherwise potentially qualified LGBTQ individual or same-sex couple that may be a suitable foster or adoptive family for any child accepted by the CPA for services under a Contract or a Subcontract;

  ii. refusing to provide orientation or training to an otherwise potentially qualified LGBTQ individual or same-sex couple that may be a suitable foster or adoptive family for any child accepted by the CPA for services under a Contract or a Subcontract;

  iii. refusing to perform a home study or process a foster care licensing application or an adoption application for an otherwise potentially qualified LGBTQ individual or same-sex couple that may be a suitable foster or adoptive family for any child accepted by the CPA for services under a Contract or a Subcontract; and

  iv. refusing to place a child accepted by the CPA for services under a Contract or a Subcontract with an otherwise qualified LGBTQ individual or same-sex couple suitable as a foster or adoptive family for the child;

in each case, without regard to whether such individual or couple has identified any particular child for foster placement or adoption.

  c. The Department shall enforce the Non-Discrimination Provision or Similar Provision against a CPA that the Department determines is in violation of, or is unwilling to comply with, such provisions (collectively, a "Contract

2

Violation"), up to and including termination of the Contracts in accordance with the termination provisions therein, including without limitation:

i. In the event a CPA refuses to comply with the Non-Discrimination Provision or Similar Provision within a reasonable time after notification by the Department of a Contract Violation, the Department will terminate the CPA's Contracts.

ii. The Department will initiate an investigation when made aware of an alleged Contract Violation.  In the event the Department determines that a CPA has committed a Contract Violation, the Department will provide the CPA with notice and a reasonable opportunity to implement a Department-approved corrective action plan mandating immediate, regular, and continuous provision of foster care case management services or adoption services, as applicable, in compliance with the Non-Discrimination Provision or Similar Provision; where the CPA fails to demonstrate compliance after a reasonable opportunity to implement the approved corrective action plan, the Department will terminate the CPA's Contracts.

d. The Department shall require all Contractors to enforce the Non-Discrimination Provision or Similar Provision against a CPA that the Contractor or the Department determines is in violation of, or is unwilling to comply with, such provisions (collectively, a "Subcontract Violation"), up to and including termination of the Subcontracts in accordance with the termination provisions therein, including without limitation:

i. In the event a CPA refuses to comply with the Non-Discrimination Provision or Similar Provision within a reasonable time after notification by the Contractor or the Department of a Subcontract Violation, the Department will require the Contractor to terminate the CPA's Subcontracts.

ii. The Department will require a Contractor to initiate an investigation when made aware of an alleged Subcontract Violation. In the event the Contractor or the Department determines that a CPA has committed a Subcontract Violation, the Department will require the Contractor to provide the CPA with notice and a reasonable opportunity to implement a Contractor-approved corrective action plan mandating immediate, regular, and continuous provision of foster care case management services or adoption services, as applicable, in compliance with the Non-Discrimination Provision or Similar Provision; where the CPA fails to demonstrate compliance after a reasonable opportunity to implement the approved corrective action plan, the Department will require the Contractor to terminate the CPA's Subcontracts.

3

e. The Department shall provide ongoing training as part of the Department's existing training programs to Department employees, Contractors, and contracted CPAs with respect to:

    i. the Litigation and the obligations under this Agreement;

    ii. the obligations of, and reporting channels available to, the Department's employees and Contractors to report any Contract or Subcontract Violation or suspected Contract or Subcontract Violation by contracted CPAs, including, without limitation, to the Department's Division of Child Welfare Licensing via the "Online Complaint Form" accessible on the Department's website;

    iii. the Department's obligations to investigate any Contract Violation or suspected Contract Violation reported verbally or in writing to the Department and to enforce the Non-Discrimination Provision or Similar Provision; and

    iv. a Contractor's obligations to investigate any Subcontract Violation or suspected Subcontract Violation by contracted CPAs reported verbally or in writing to the Contractor, and to enforce the Subcontracts.

f. The Department shall publish and maintain a hyperlink to the Department's Division of Child Welfare Licensing "Online Complaint Form" in a prominent place on the landing page of the Department's website; and

g. The Department shall make a public announcement in substantially the following form:

> The Department's contracts with child placing agencies prohibit discrimination against any individual or group because of race, religion, age, national origin, color, height, weight, marital status, sex, sexual orientation, gender identity or expression, political beliefs or disability.
>
> Examples of prohibited discriminatory conduct include:
>
> - turning away or referring to another contracted CPA an otherwise potentially qualified LGBTQ individual or same-sex couple that may be a suitable foster or adoptive family for any child accepted by the CPA for contracted services;
>
> - refusing to provide orientation or training to an otherwise potentially qualified LGBTQ individual or same-sex couple that may be a suitable foster or adoptive family for any child accepted by the CPA for contracted services;

4

- refusing to perform a home study or process a foster care licensing application or an adoption application for an otherwise potentially qualified LGBTQ individual or same-sex couple that may be a suitable foster or adoptive family for any child accepted by the CPA for contracted services; and

- refusing to place a child accepted by the CPA for contracted services with an otherwise qualified LGBTQ individual or same-sex couple suitable as a foster or adoptive family for the child.

If you are aware of a violation or suspected violation of these nondiscrimination provisions, a complaint may be made via the Online Complaint Form accessible on the Department's website.

Section 2.  For the avoidance of doubt, nothing in this Agreement shall require the Department to take adverse action against any CPA on the basis that such CPA has decided to accept or not accept a referral from the Department of a particular child for services under a contract with the Department.

Section 3.  Subject to Section 1, nothing in this Agreement shall affect the Department's obligations, authority, or discretion to audit, train, diligently investigate, or vigorously enforce the terms of the Contracts or Subcontracts in accordance with applicable laws, rules, regulations, policies, court orders, and contract terms.

Section 4.  Subject to Section 1, the Department retains sole authority and sole discretion on all matters pertaining to all Contracts and Subcontracts, including without limitation all training, all aspects of investigating an alleged Contract or Subcontract Violation, determining whether a Contract or Subcontract Violation occurred, and all enforcement measures.

Section 5.  Subject to Section 1, nothing in this Agreement expands the Department's obligation to monitor CPA compliance with Contracts and Subcontracts beyond that which is required under applicable law, rules, regulations, and policies.

Section 6.  This Agreement is intended for the direct benefit of the following individuals injured by a breach of this Agreement:  (i) the Parties hereto, (ii) any LGBTQ individual or same-sex couple that seeks to foster a child accepted by a CPA for foster care case management services or adoption services under a Contract or Subcontract and the CPA is alleged to have committed a Contract Violation or Subcontract Violation directly involving the individual or couple, (iii) any LGBTQ individual or married same-sex couple that seeks to adopt a child accepted by a CPA for foster care case management services or adoption services under a Contract or Subcontract and the CPA is alleged to have committed a Contract Violation or Subcontract Violation directly involving the individual or couple, and (iv) any child accepted by a CPA for foster care case management services or adoption services under a Contract or Subcontract and the CPA is alleged to have committed a Contract or Subcontract Violation directly involving the

5

child.  Each person described in subclauses (ii), (iii) and (iv) of the immediately preceding sentence shall be a direct third-party beneficiary of, and may, to the extent of their injury and ability to satisfy standing requirements, independently enforce the terms of this Agreement as if it were a party hereto.

Section 7.    In the event any Party or a third-party beneficiary asserts that another Party is not in compliance with one or more of its obligations in this Agreement, the Parties and any third-party beneficiaries shall address such alleged breach in good faith and act promptly in an attempt to resolve it.  The asserting Party or third-party beneficiary shall provide the other Party with written notice of such assertion and a ninety (90) day opportunity to cure such noncompliance prior to taking legal action.  Notice shall be made via certified mail, return receipt requested as follows:

| **Michigan Department of Health and Human Services State of Michigan** | **American Civil Liberties Union Fund of Michigan** |
|---|---|
| Director, Bureau of Legal Affairs | Jay D. Kaplan / Michael J. Steinberg |
| 333 South Grand Avenue | 2966 Woodward Avenue |
| Lansing, MI 48909 | Detroit, MI 48201 |
| 517.241.0048 | (313) 578-6823 |
| | jkaplan@aclumich.org |
| | msteinberg@aclumich.org |

Section 8.    Specific performance shall be the sole and exclusive remedy available to each Party and each third-party beneficiary asserting any claim relating to the Department's failure to meet its obligations under this Agreement.  Each Party and each third-party beneficiary asserting any claim relating to the Department's obligations under this Agreement waives all rights to recover any damage, loss, attorney fees, costs, or any other expense arising out of asserting such claims.  The Parties also agree that, regardless of the failure of the sole and exclusive remedy, the Department will not be liable to any Party or third-party beneficiary asserting any claim relating to the Department's obligations under this Agreement for any incidental or consequential damages of whatsoever kind or nature.  The Parties intend the exclusion of incidental and consequential damages as an independent agreement apart from the sole and exclusive remedy herein.  The limitations of this Section 8 apply only to claims relating to the Department's obligations under this Agreement.

Section 9.    Upon signing this Agreement, Plaintiffs shall file a Stipulation of Voluntary Dismissal with Prejudice substantially in the form attached to as Annex A and submit a Proposed Order on Stipulation of Dismissal substantially in the form attached hereto as Annex B.  This Agreement becomes effective upon entry of the Proposed Order on Stipulation of Dismissal by the district court.

Section 10.   The Parties shall bear their own attorneys' fees and costs associated with the Litigation.

Section 11.     The Parties understand that this Agreement is a public record that may be disclosed in response to a proper request under Michigan's Freedom of Information Act.

Section 12.     The Parties acknowledge and agree that this Agreement shall be governed by and construed in accordance with the laws of the State of Michigan without giving effect to conflict of laws, rules or statutes.

Section 13.     The Parties acknowledge, understand, and agree that they are entering into this Agreement knowingly, voluntarily, and of their own free will and volition, without coercion or undue influence.

Section 14.     Each Party has been represented by counsel and cooperated in the drafting and preparation of this Agreement.  Hence, this Agreement shall not be construed against any Party on the basis that the Party was the drafter.

Section 15.     This Agreement may be executed in any number of counterparts, and each such counterpart shall be deemed to be an original instrument, but all such counterparts shall constitute one Agreement.

Section 16.     The undersigned represent that they are authorized to sign this Agreement.

Section 17.     Each Party represents that they believe there is no state or federal law, rule, regulation, policy, contract term, or other obligation that prevents it from complying with its obligations under this Agreement; *provided*, that solely for purposes of this Section 17, the obligations in Section 1 shall be read without the introductory phrase "Unless prohibited by law or court order."

Section 18.     This Agreement shall be binding upon and inure to the benefit of the Parties and their respective successors and permitted assigns.  No Party may assign this Agreement or any rights or obligations hereunder without the prior written consent of each other Party hereto.

Section 19.     No modification or waivers of any provision of this Agreement shall be valid or binding unless made in writing and signed by each Party or by a person authorized to sign on behalf of such Party.

[*Signature Page Follows*]

7

IN WITNESS WHEREOF, this Agreement is executed as of March 22, 2019.

### PLAINTIFFS

_____

Kristy Dumont

_____

Dana Dumont

_____

Erin Busk-Sutton

_____

Rebecca Busk-Sutton

### DEFENDANTS

_____

Robert Gordon, in his official capacity as
Director, Michigan Department
of Health and Human Services

_____

Jennifer Wrayno, in her official capacity
as Acting Executive Director, Michigan
Children's Services Agency

*[Signature Page to Settlement Agreement]*

**IN WITNESS WHEREOF**, this Agreement is executed as of March 22, 2019.

**PLAINTIFFS**

_____

Kristy Dumont

_____

Dana Dumont

_____

Erin Busk-Sutton

_____

Rebecca Busk-Sutton

**DEFENDANTS**

_____

Robert Gordon, in his official capacity as
Director, Michigan Department
of Health and Human Services

_____

Jennifer Wrayno, in her official capacity
as Acting Executive Director, Michigan
Children's Services Agency

*[Signature Page to Settlement Agreement]*

**IN WITNESS WHEREOF**, this Agreement is executed as of March 22, 2019.

**PLAINTIFFS**

Kristy Dumont

_____

Dana Dumont

_____

Erin Busk-Sutton

_____

Rebecca Busk-Sutton

**DEFENDANTS**

Robert Gordon, in his official capacity as
Director, Michigan Department
of Health and Human Services

Jennifer Wrayno, in her official capacity as
Acting Executive Director, Michigan
Children's Services Agency

[_Signature Page to Settlement Agreement_]

**Annex A**

**Stipulation of Voluntary Dismissal with Prejudice**

## UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

KRISTY DUMONT; DANA DUMONT;
ERIN BUSK-SUTTON; and REBECCA
BUSK-SUTTON,

      Plaintiffs,

           v.

ROBERT GORDON, in his official
capacity as the Director of the Michigan
Department of Health and Human
Services; and JENNIFER WRAYNO, in
her official capacity as the Acting
Executive Director of the Michigan
Children's Services Agency,

      Defendants,

and

ST. VINCENT CATHOLIC
CHARITIES; MELISSA BUCK; CHAD
BUCK; and SHAMBER FLORE,

      Intervenor Defendants.

No. 2:17-cv-13080-PDB-EAS

HON. PAUL D. BORMAN

MAG. ELIZABETH A. STAFFORD

**STIPULATION OF
VOLUNTARY DISMISSAL
WITH PREJUDICE**

      Plaintiffs Kristy Dumont, Dana Dumont, Erin Busk-Sutton, and

Rebecca Busk-Sutton (collectively, "Plaintiffs") and Defendants Robert Gordon and

Jennifer Wrayno[1] (collectively, "State Defendants") file this stipulation of dismissal of the above-captioned action (the "Action") under Rule 41(a)(2) of the Federal Rules of Civil Procedure.  Plaintiffs and State Defendants state as follows:

On September 20, 2017, Plaintiffs filed the complaint in the Action with the U.S. District Court for the Eastern District of Michigan against the State Defendants.  (ECF No. 1.)

On December 18, 2017, St. Vincent Catholic Charities, Melissa and Chad Buck, and Shamber Flore ("Intervenor Defendants") moved to intervene in this case (ECF No. 18), which motion was granted on March 22, 2018.  (ECF No. 34.)

On September 14, 2018, this Court denied in substantial part the motions to dismiss filed by State Defendants and Intervenor Defendants.  (ECF No. 49 at 93.)

On September 17, 2018, the Court entered a schedule for discovery and briefing to "manage the progress of the case" (the "September 17 Scheduling Order").  (ECF No. 51 at 1.)

On October 31, 2018, all Parties jointly moved to modify the September 17 Scheduling Order.  (ECF No. 61.)  On November 2, 2018, this Court granted in part and denied in part that motion.  (ECF No. 62.)

---

[1]  Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, this stipulation reflects the substitution of Herman McCall, a party in his official capacity who has ceased to hold office during the pendency of the Action, for Jennifer Wrayno, who is "automatically substituted as a party."

On November 13, 2018, this Court issued an Amended Scheduling Order. (ECF No. 63.)

The Parties have engaged in substantial discovery, including the exchange of written discovery and document production.

On January 23, 2019, Plaintiffs and State Defendants moved this Court to stay proceedings as Plaintiffs and State Defendants actively worked to reach a resolution. (ECF No. 74.) On that same day, Plaintiffs filed a Joint Motion for Immediate Consideration of the Motion to Stay Proceedings. (ECF No. 75.)

On January 24, 2019, this Court granted in part Plaintiffs' and State Defendants' Joint Motion to Stay Proceedings, entering a thirty (30) day stay of proceedings. (ECF No. 76.)

On February 22, 2019, State Defendants moved this Court to stay proceedings as Plaintiffs and State Defendants actively worked to reach a resolution. (ECF No. 79.) On that same day, State Defendants filed a Motion for Immediate Consideration of the Motion to Stay Proceedings (ECF No. 80) and this Court granted State Defendants' Motion to Stay Proceedings, entering a thirty (30) day stay of proceedings (ECF No. 81).

Plaintiffs and State Defendants have since entered into a Settlement Agreement, disposing of all claims asserted in the Action. An executed copy of the Settlement Agreement is attached hereto as Exhibit A. Intervenor Defendants,

who have asserted no claims and against whom no claims have been asserted, are not party to the Settlement Agreement.

Plaintiffs and State Defendants have agreed that all costs and attorneys' fees are the responsibility of the party incurring same.  For the foregoing reasons, Plaintiffs and State Defendants respectfully request that the Court enter an order to dismiss all of Plaintiffs' claims in the Action.

Dated:            , 2019

_____

Jay Kaplan (P38197)
Michael J. Steinberg (P43085)
American Civil Liberties Union
   Fund of Michigan
2966 Woodward Avenue
Detroit, MI  48201
Telephone:  (313) 578-6823
jkaplan@aclumich.org
msteinberg@aclumich.org

Daniel Mach
American Civil Liberties Union
   Foundation
915 15th Street NW
Washington, DC  20005
Telephone:  (202) 675-2330
dmach@aclu.org

Leslie Cooper
American Civil Liberties Union
   Foundation
125 Broad Street, 18th Floor
New York, NY  10004
Telephone:  (212) 549-2633
lcooper@aclu.org

Garrard R. Beeney
Ann-Elizabeth Ostrager
Jason W. Schnier
SULLIVAN & CROMWELL LLP
125 Broad Street
New York, NY  10004-2498
Telephone:  (212) 558-4000
beeneyg@sullcrom.com
ostragerae@sullcrom.com
schnierj@sullcrom.com

*Counsel for Plaintiffs*

_____

Joshua S. Smith (P63349)
Assistant Attorney General
Attorneys for State Defendants
Health, Education &
Family Services Division
P.O. Box 30758
Lansing, MI 48909
(517) 335-7603
Smithj46@michigan.gov

*Counsel for State Defendants*

# EXHIBIT A

## Settlement Agreement

## CERTIFICATE OF SERVICE

I hereby certify that, on March 22, 2019, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to all counsel of record.

Dated:              , 2019

_____

SULLIVAN & CROMWELL LLP
125 Broad Street
New York, NY  10004-2498
Telephone:  (212) 558-4000
ostragerae@sullcrom.com

**Annex B**

**Proposed Order on Stipulation of Dismissal**

# UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

KRISTY DUMONT; DANA DUMONT;
ERIN BUSK-SUTTON; and REBECCA
BUSK-SUTTON,

      Plaintiffs,

        v.

ROBERT GORDON, in his official
capacity as the Director of the Michigan
Department of Health and Human
Services; and JENNIFER WRAYNO, in
her official capacity as the Acting
Executive Director of the Michigan
Children's Services Agency,

      Defendants,

and

ST. VINCENT CATHOLIC
CHARITIES; MELISSA BUCK; CHAD
BUCK; and SHAMBER FLORE,

      Intervenor Defendants.

No. 2:17-cv-13080-PDB-EAS

HON. PAUL D. BORMAN

MAG. ELIZABETH A. STAFFORD

**[PROPOSED] ORDER ON
STIPULATION OF DISMISSAL**

After considering the Stipulation of Voluntary Dismissal with Prejudice and

the Settlement Agreement, attached thereto, provided by Plaintiffs Kristy Dumont,

Dana Dumont, Erin Busk-Sutton, and Rebecca Busk-Sutton (collectively,

"Plaintiffs") and Defendants Robert Gordon and Jennifer Wrayno,[1] it is hereby

ORDERED that Plaintiffs' claims in the above-captioned action (the "Action") are

dismissed with prejudice pursuant to the terms of the Settlement Agreement.

The Court retains jurisdiction over the enforcement of the Settlement

Agreement in the Action. *See Kokkonen* v. *Guardian Life Ins. Co. of Am.*, 511

U.S. 375, 381 (1994) ("If the parties wish to provide for the court's enforcement of

a dismissal-producing settlement agreement, they can seek to do so."); *RE/MAX*

*Int'l, Inc.* v. *Realty One, Inc.*, 271 F.3d 633, 641 (6th Cir. 2001) ("[A] district court

[has] the authority to dismiss pending claims while retaining jurisdiction over the

future enforcement of a settlement agreement.").

All costs and attorneys' fees are the responsibility of the party incurring

same.

_____

PAUL D. BORMAN
UNITED STATES DISTRICT JUDGE

Dated: [*date*]

---

[1]   Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, this order reflects
the substitution of Herman McCall, a party in his official capacity who has ceased
to hold office during the pendency of the Action, for Jennifer Wrayno, who is
"automatically substituted as a party."

## CERTIFICATE OF SERVICE

The undersigned certifies that a copy of the foregoing order was served upon

each attorney or party of record herein by electronic means or first class U.S. mail

on [*date*].

_____

Case Manager

## CERTIFICATE OF SERVICE

I hereby certify that, on March 22, 2019, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to all counsel of record.

Dated:  March 22, 2019

*/s/ Ann-Elizabeth Ostrager*

SULLIVAN & CROMWELL LLP
125 Broad Street
New York, NY  10004-2498
Telephone:  (212) 558-4000
ostragerae@sullcrom.com