# UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF MICHIGAN
# SOUTHERN DIVISION

KRISTY DUMONT; DANA DUMONT;
ERIN BUSK-SUTTON; and REBECCA
BUSK-SUTTON,

      Plaintiffs,

      v.

ROBERT GORDON, in his official
capacity as the Director of the Michigan
Department of Health and Human
Services; and JOOYEUN CHANG in her
official capacity as the Senior Deputy
Director of the Michigan Children's
Services Agency,

      Defendants,

and

ST. VINCENT CATHOLIC
CHARITIES; MELISSA BUCK; CHAD
BUCK; and SHAMBER FLORE,

      Intervenor Defendants.

No. 2:17-cv-13080-PDB-EAS

HON. PAUL D. BORMAN

MAG. ELIZABETH A. STAFFORD

**PLAINTIFFS' MOTION TO
REOPEN PROCEEDINGS FOR
PURPOSES OF ENFORCING
THE SETTLEMENT
AGREEMENT**

Plaintiffs Kristy and Dana Dumont and Erin and Rebecca Busk-Sutton

respectfully move this Court to reopen proceedings in the above-captioned action

(the "Action") to enforce the settlement agreement they entered into with Defendants

Robert Gordon, in his official capacity as the Director of the Michigan Department

of Health and Human Services, and Jennifer Wrayno, in her official capacity as the then-Senior Deputy Director of the Michigan Children's Services Agency,[1] (the "State Defendants") on March 22, 2019 (the "Settlement Agreement").  For reasons explained in the accompanying memorandum of law, the State Defendants have stated that even though they are aware that a taxpayer-funded child placing agency ("CPA") has stated that it will not place children with same-sex couples, State Defendants will not comply with their obligation under the Settlement Agreement to enforce the State's non-discrimination requirement.  *See* ECF No. 86 at PageID.1477 ("[U]nless otherwise directed by this Court, the Department will take no action while waiting for Chief Judge Hood to rule on the preliminary injunction motion.").  This is a clear violation of the Settlement Agreement.

Catholic Charities West Michigan ("CCWM") has unequivocally stated that it will not place children with same-sex couples.  This violates the non-discrimination provision in its contracts with the Michigan Department of Health and Human Services ("MDHHS"), which states in relevant part that, in providing services under contract with MDHHS, CPAs may not discriminate "against any individual or group because of . . . sexual orientation." ECF No. 82, at

---

[1]     Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, former Acting Children's Services Agency Executive Director Jennifer Wrayno, who was named in her official capacity, has been substituted by Children's Services Agency Executive Director Joo Yeun Chang.

PageID. 1447. Under the Settlement Agreement, the State Defendants agreed that "[t]he Department shall enforce the Non-Discrimination Provision or Similar Provision against a CPA that the Department determines is in violation of, or is unwilling to comply with, such provisions . . . , up to and including termination of the Contracts in accordance with the termination provisions therein." *Id.* at PageID. 1445-1446. The State Defendants have renewed CCWM's contracts and have stated that they will take "no action" to enforce the non-discrimination provision at this time. *See* ECF No. 86 at PageID.1477. In so doing, they materially breached the Settlement Agreement. Plaintiffs respectfully request that the Court reopen proceedings and summarily enforce the Settlement Agreement.

1. The Settlement Agreement meets the standard for summary enforcement. This Court "retain[ed] jurisdiction over the enforcement of the Settlement Agreement in the Action." ECF No. 83, at PageID.1469. "[A]greement has been reached on all material terms." *See Therma-Scan, Inc.* v. *Thermoscan, Inc.* 217 F.3d 414, 419 (6th Cir. 2000). And "no substantial dispute exists regarding the entry into and terms of [the] agreement." *See RE/MAX Int'l, Inc.* v. *Realty One, Inc.*, 271 F.3d 633, 646 (6th Cir. 2001).

2. State Defendants have materially breached the Settlement Agreement. As State Defendants themselves have acknowledged, CCWM is unwilling to comply with the non-discrimination provision, but State Defendants will take no action to

enforce the non-discrimination provision.  This violates the clear language of the Settlement Agreement.

3.    Accordingly, the Court should order State Defendants to comply with the Settlement Agreement—namely, the Court should order the State Defendants to notify CCWM that its refusal to place children with same-sex couples when providing child-placing services under the contract with MDHHS violates the contract's non-discrimination provision, and, "[i]n the event [the] CPA refuses to comply with the Non-Discrimination Provision . . . within a reasonable time after notification by the Department of a Contract Violation, . . . terminate the CPA's Contracts." *See* ECF No. 82, at PageID.1446.

4.    In accordance with the Eastern District of Michigan's Local Civil Rule 7.1(a), Plaintiffs have conferred with counsel for defendants via e-mail on February 24, 2020 and the State Defendants were unable to advise as to the State's position within the time requested and the other defendants did not take a position.

5.    Plaintiffs notified counsel for Catholic Charities of West Michigan of this motion on February 24, 2020 via e-mail.

Dated:  February 24, 2020                    Respectfully submitted,

                                             *s/ Ann-Elizabeth Ostrager*

Jay Kaplan (P38197)                    Leslie Cooper
Daniel S. Korobkin (P72842)            American Civil Liberties Union
American Civil Liberties Union            Foundation
   Fund of Michigan                    125 Broad Street, 18th Floor
2966 Woodward Avenue                   New York, NY  10004
Detroit, MI  48201                     Telephone:  (212) 549-2633
Telephone:  (313) 578-6823             lcooper@aclu.org
jkaplan@aclumich.org
dkorobkin@aclumich.org
                                       Garrard R. Beeney
Daniel Mach                            Ann-Elizabeth Ostrager
American Civil Liberties Union         Leila R. Siddiky
   Foundation                          Jason W. Schnier
915 15th Street NW                     Hannah Lonky Fackler
Washington, DC  20005                  James G. Mandilk
Telephone:  (202) 675-2330             SULLIVAN & CROMWELL LLP
dmach@aclu.org                         125 Broad Street
                                       New York, NY  10004-2498
                                       Telephone:  (212) 558-4000
                                       beeneyg@sullcrom.com
                                       ostragerae@sullcrom.com
                                       siddikyl@sullcrom.com
                                       schnierj@sullcrom.com
                                       facklerh@sullcrom.com
                                       mandilkj@sullcrom.com

                                       *Counsel for Plaintiffs*

# UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

KRISTY DUMONT; DANA DUMONT;
ERIN BUSK-SUTTON; and REBECCA
BUSK-SUTTON,

      Plaintiffs,

      v.

ROBERT GORDON, in his official
capacity as the Director of the Michigan
Department of Health and Human
Services; and JOOYEUN CHANG in her
official capacity as the Senior Deputy
Director of the Michigan Children's
Services Agency,

      Defendants,

and

ST. VINCENT CATHOLIC CHARITIES;
MELISSA BUCK; CHAD BUCK; and
SHAMBER FLORE,

      Intervenor Defendants.

No. 2:17-cv-13080-PDB-EAS

HON. PAUL D. BORMAN

MAG. ELIZABETH A.
STAFFORD

**BRIEF IN SUPPORT OF
PLAINTIFFS' MOTION TO
REOPEN PROCEEDINGS TO
ENFORCE THE SETTLEMENT
AGREEMENT**

# TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ............................................................1

BACKGROUND ..............................................................................5

LEGAL STANDARD.......................................................................10

ARGUMENT .................................................................................11

I.    THE SETTLEMENT AGREEMENT MEETS THE STANDARD
FOR SUMMARY ENFORCEMENT. .........................................11

     A.    This Court Properly Retained Jurisdiction over the Enforcement
of the Settlement Agreement..............................................12

     B.    It Is Undisputed That The Dumonts and State Defendants
Reached Agreement on All Material Terms. .....................12

     C.    No Dispute Exists Regarding the Entry Into and Terms of the
Agreement. ......................................................................13

II.    STATE DEFENDANTS ARE IN BREACH OF THE SETTLEMENT
AGREEMENT...........................................................................14

III.    THIS COURT SHOULD ENJOIN THE STATE DEFENDANTS
FROM CONTINUING TO VIOLATE THE SETTLEMENT
AGREEMENT...........................................................................14

CONCLUSION ..............................................................................16

# TABLE OF AUTHORITIES

## CASES

*Brock* v. *Scheuner Corp.*,
    841 F.2d 151 (6th Cir. 1988) ................................................................11, 13, 15

*Cuyahoga Valley Ry Co.* v. *Monongahela Connecting R.R. Co.*,
    515 F. App'x. 494 (6th Cir. 2013) ......................................................11

*Dumont* v. *Lyon*,
    341 F. Supp. 3d 706 (E.D. Mich. 2018) ............................................5

*Kokkonen* v. *Guardian Life Ins. Co. of Am.*,
    511 U.S. 375 (1994)...................................................................v, 10, 12

*Moore* v. *U.S. Postal Svc.*,
    369 F. App'x 712 (6th Cir. 2010) ......................................................11, 12

*Plamondon* v. *Plamondon*,
    583 N.W.2d 245 (Mich. Ct. App. 1998)..........................................11, 15

*RE/MAX Int'l, Inc.* v. *Realty One, Inc.*,
    271 F.3d 633 (6th Cir. 2001) ......................................................*passim*

*Stenger* v. *Freeman*,
    683 F. App'x 349 (6th Cir. 2017)................................................v, 10, 12

*Therma-Scan, Inc.* v. *Thermoscan, Inc.*
    217 F.3d 414 (6th Cir. 2000) ............................................................10

## CONCISE STATEMENT OF ISSUE PRESENTED

1. Whether, in light of the State Defendants' material breach, the Court should reopen the Action to summarily enforce the Settlement Agreement.

## CONTROLLING OR MOST APPROPRIATE AUTHORITY

*Kokkonen* v. *Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 381 (1994) ("[I]f the parties' obligation to comply with the terms of the settlement agreement [is] made part of the order of dismissal . . . [then] a breach of the agreement would be a violation of the order, and ancillary jurisdiction to enforce the agreement would therefore exist."); *RE/MAX Int'l, Inc.* v. *Realty One, Inc.*, 271 F.3d, 633, 641 (6th Cir. 2001) ("[A] district court [has] the authority to dismiss pending claims while retaining jurisdiction over the future enforcement of a settlement agreement."); *id.* at 645-46 ("[S]ummary enforcement of a settlement agreement has been deemed appropriate where no substantial dispute exists regarding the entry into and terms of an agreement."); *id.* ("[N]o evidentiary hearing is required where an agreement is clear and unambiguous and no issue of fact is present."); and *Stenger* v. *Freeman*, 683 F. App'x 349, 350 (6th Cir. 2017) (Clay, J., concurring) ("A district court may summarily enforce a settlement agreement if: (1) it has subject matter jurisdiction over the separate, breach of contract controversy surrounding the settlement agreement; (2) it determines that agreement has been reached on all material terms; and (3) the agreement is clear and unambiguous and no issue of fact is present.  An evidentiary hearing is required where facts material to an agreement are disputed.  Regardless of whether an evidentiary hearing is held, the court must enforce the

settlement as agreed to by the parties and is not permitted to alter the terms of the agreement.") (internal quotation marks, citations, and alterations omitted).

## PRELIMINARY STATEMENT

Plaintiffs Kristy and Dana Dumont and Erin and Rebecca Busk-Sutton brought this action against the State Defendants after state-contracted, taxpayer-funded child placing agencies ("CPAs") discriminated against them based on their sexual orientation.  Plaintiffs agreed to voluntarily dismiss their claims because the State Defendants promised that the Michigan Department of Health and Human Services ("MDHHS") would enforce its contract requirement prohibiting CPAs from discriminating against prospective adoptive and foster families based on their sexual orientation.  *See* Settlement Agreement, ECF No. 82.

In entering into the Settlement Agreement, the State Defendants obtained dismissal of the claims against them by committing that MDHHS would investigate allegations of discrimination by CPAs against prospective adoptive or foster parents and take action against CPAs where MDHHS determined that a contract violation had occurred or that a CPA was unwilling to comply with the non-discrimination provision, including up to contract termination if the agency refuses to comply.

The State Defendants' promise to enforce the non-discrimination provision ensured that the State would comply with the Establishment and Equal Protection Clauses and provide Plaintiffs with the relief they were seeking—the ability to pursue fostering and adoption in the State's public child welfare system

with the same CPA options available to them that are available to heterosexual couples.  This Court dismissed this case with prejudice, pursuant to the terms of the Settlement Agreement, and retained jurisdiction over the enforcement of the Settlement Agreement.  ECF No. 82.

Shortly after Plaintiffs' suit was dismissed, two of the State's CPAs (including one that had been granted the right to intervene in this case) filed suit against the State, claiming that enforcement of the Settlement Agreement would violate their constitutional (and, in one case, statutory) rights.  *See Catholic Charities* v. *Michigan Department of Health and Human Services et al.*, No. 2:19-cv-11661-DPH-DRG (E.D. Mich) (Hood, J.), ECF Nos. 1-2, 1-3 ("*CCWM*"); *Buck* v. *Gordon*, 19-CV-00286 (W.D. Mich.) (Jonker, J.), ECF No. 1.  Rather than proceeding in this Court which had familiarity with the issues and had presided over the resolution of Plaintiffs' claims, the two CPAs elected to bring their claims in two separate courts.

One of those CPAs is St. Vincent Catholic Charities ("STVCC"), an Intervenor Defendant in this Action.  In 2017, when STVCC sought to intervene in this Action, STVCC recognized that "[State] Defendants may eventually want to settle this case with Plaintiffs."  ECF No. 18, at PageID.452.  It told this Court that "the burden of settlement would fall on Proposed Intervenors.  Were Proposed Intervenors unable to immediately appeal and protect their interest, the right to litigate their interest separately would be cold comfort . . . ."  *Id*.  This Court granted

2

the motion to intervene.  But when STVCC's prediction of a settlement came true, STVCC did not object to, or appeal from, this Court's order dismissing the case pursuant to the Settlement Agreement.  Instead, STVCC (and another CPA, Catholic Charities West Michigan ("CCWM")) did an end run around this Court, filing suits in different forums.

The Dumonts tried to intervene in both of these actions to protect the Settlement Agreement, but defendants in both cases objected.  In STVCC's case, the Dumonts' motion was denied and the judge, without addressing the evidence the Dumonts had sought to submit, preliminarily enjoined the State from taking any adverse action against STVCC based on their noncompliance with the non-discrimination provision in the CPA contract.  The Dumonts have appealed the trial court's refusal to allow them to intervene to attempt to protect the Settlement Agreement and assert their Constitutional rights.

In the CCWM case, the court has not yet ruled upon either the Dumonts' motion to intervene or CCWM's motion for a preliminary injunction.  While the parties await rulings on those motions, the State has chosen to stop honoring the Settlement Agreement as it applies to CCWM.

The Plaintiffs have spent years fighting to vindicate their right to participate in Michigan's child welfare system free from discrimination.  In the face of the State Defendants' breach, the Dumonts – having unsuccessfully attempted to

protect their rights in the cases the CPAs brought – have no option but to return and ask this Court for relief.[2]

The facts justifying summary enforcement are undisputed. In connection with the lawsuit it filed, CCWM stated unequivocally that it will *not* place children with same-sex couples, in direct violation of the non-discrimination provision in its contracts with MDHHS—the provision that the State Defendants, by entering the Settlement Agreement, committed to include and enforce against CPAs. Notwithstanding CCWM's clear statement that it will continue to engage in discrimination, the State has taken no action to require CCWM to comply with the non-discrimination provision in its contract, and, in fact, in September 2019, renewed CCWM's contract. The State Defendants have therefore breached the terms of the Settlement Agreement.

Reopening this Action to enforce the Settlement Agreement will allow the Plaintiffs to achieve the relief they thought they had bargained for and received in dismissing their claims. Because this Court properly retained jurisdiction over

---

[2]     In their Notice filed before this Court the State Defendants claim they are unable to abide by the terms of the Settlement Agreement because of CCWM's separate action before the Honorable Chief Judge Denise Page Hood. *See* ECF No. 86 at PageID.1477. But, unlike in the STVCC case, there have been no court orders or legal determinations that would bind the State Defendants or otherwise restrict the State Defendants from complying with the Settlement Agreement with respect to CCWM.

the Settlement Agreement which resolved Plaintiffs' claims, and because Defendants are now in breach of the Settlement Agreement, the Plaintiffs respectfully ask that the Court grant this motion to reopen proceedings to enforce the Settlement Agreement.

## BACKGROUND

*The Dumonts' Suit.*   In September 2017, after being subjected to discrimination by two CPAs, Plaintiffs initiated this Action by seeking relief under the Establishment and Equal Protection Clauses.   On March 22, 2018, the Court granted St. Vincent Catholic Charities ("STVCC") leave to intervene.   ECF No. 34. STVCC did not assert claims in the litigation but did, along with the State Defendants, move to dismiss the complaint, arguing that "prohibiting the State from allowing the use of religious criteria by [CPAs] hired to do the State's work would violate St. Vincent's Free Exercise or Free Speech rights."   *Dumont* v. *Lyon*, 341 F. Supp. 3d 706, 740, 749 (E.D. Mich. 2018).   The Court denied Defendants' motions, holding that the allegations of the complaint adequately alleged Establishment Clause and Equal Protection claims.   *Id.* at 743.   As to STVCC's Free Exercise and Free Speech arguments, the Court was "unconvinced that St. Vincent can prevail" on them.   *Id.* at 749.

*The Settlement Agreement.*   After substantial amounts of lay and expert discovery but before depositions and the briefing of summary judgment

motions, on March 22, 2019, Plaintiffs and the State Defendants entered into the Settlement Agreement to resolve Plaintiffs' claims. ECF No. 82. Pursuant to the Settlement Agreement, the State Defendants agreed, among other things, to enforce compliance with the non-discrimination provision in their CPA contracts by notifying CPAs of violations and, in the case of CPAs unwilling to comply, terminating those contracts. ECF No. 82, at PageID.1444–46. The Settlement Agreement made clear that "turning away or referring to another contracted CPA an otherwise potentially qualified LGBTQ individual or same-sex couple that may be a suitable foster or adoptive family for any child accepted by the CPA for services under a [state contract]" violates the non-discrimination provision. *Id.* at PageID.1445. In exchange, Plaintiffs agreed to dismiss their claims against the State Defendants with prejudice. Upon entering into the Settlement Agreement, Plaintiffs and State Defendants filed a stipulation of voluntary dismissal (ECF No. 82) and this Court dismissed the case "pursuant to the terms of the Settlement Agreement," "retain[ing] jurisdiction over the enforcement of the Settlement Agreement in the Action." ECF No. 83 at PageID.1469.

***The Follow-On Litigation Filed by the CPAs.*** After remaining silent on the Settlement Agreement, on April 15, 2019, the Intervenor Defendants from this Action (the "Buck Plaintiffs") filed a complaint against the State Defendants and Attorney General Nessel, as well as certain federal officials, in the Western

District of Michigan.   ECF No. 1, *Buck* v. *Gordon*, 19-CV-00286.   The Buck

Plaintiffs claimed that requiring STVCC to comply with the non-discrimination

requirement in its CPA contracts violated their Free Exercise and Free Speech rights.

The Dumonts moved to intervene in the *Buck* case on May 21, 2019, but that motion

was denied on July 31, 2019; an appeal of that denial is briefed and will be argued

next month.   ECF Nos. 18, 19, 52, *Buck* v. *Gordon* (W.D. Mich.); ECF Nos. 1, 28,

*Buck* v. *Gordon*, 19-CV-1959 (6th Cir.).   The Buck Plaintiffs moved for a

preliminary injunction and, on September 26, 2019, the district court issued an

opinion and order finding that "St. Vincent has never prevented a same-sex couple

from fostering or adopting a child" and that "the State's real goal is not to promote

non-discriminatory child placements, but to stamp out St. Vincent's religious belief

and replace it with the State's own."   ECF No. 69, at PageID.2518-2519, *Buck* v.

*Gordon*, (W.D. Mich.).   The court's opinion did not mention the Dumonts' sworn

declarations that they had been turned away by STVCC, or the lay and expert

testimony they had submitted demonstrating the harm to children that would be

caused by permitting CPAs to exclude qualified prospective parents.   The court

issued a preliminary injunction ordering the State not to take "adverse action against

St. Vincent Catholic Charities based on St. Vincent's protected religious exercise . .

. ." ECF No. 70 at PageID.2531, *Buck* v. *Gordon*, (W.D. Mich.).[3]  On April 24, 2019, CCWM filed a complaint against the State in the Michigan Court of Claims, which the State then removed to the District Court for the Eastern District of Michigan. ECF No. 1, *CCWM*, (E.D. Mich.).   The complaint raises arguments similar to STVCC's, as well as Michigan statutory claims.   In the complaint, CCWM made clear that it has not complied and will not comply with the non-discrimination provision of its contracts.  ECF No. 1-2, at PageID.40, *CCWM*, (E.D. Mich.).  On May 15, 2019, in support of a motion seeking a preliminary injunction to enjoin the State from enforcing the non-discrimination provision against CCWM, CCWM filed an official written policy stating it will only place children with "married couples made up of two parents of the opposite sex," ECF No. 1-2 at PageID.81, *CCWM*, (E.D. Mich.), and a sworn declaration of Christopher Slater, CEO of CCWM, dated May 15, 2019, stating that CCWM's policy "prohibits [it] from recommending or facilitating child placements with same-sex couples."  ECF No. 1-3 at PageID.241, *CCWM*, (E.D. Mich.).[4]   The Dumonts have moved to intervene in *CCWM*, which

---

[3]     That preliminary injunction is on appeal, and the Dumonts have also moved to intervene in that appeal, which motion remains pending, although the State has subsequently moved to voluntarily dismiss its appeal,  ECF No. 15, *Buck* v. *Gordon*, 19-CV-2185 (6th Cir. Oct. 28, 2019), which is also pending.

[4]     CCWM even separated a child from his siblings because they were in the care of a same-sex parent family.  *See* ECF No. 60-4 at PageID.2145-2150, *Buck* v. *Gordon,* (W.D. Mich).  In another case, CCWM determined that adoption by a same-sex couple was "in the child's best interest" but still refused to complete the child's

motion remains pending. ECF No. 20, *CCWM*, (E.D. Mich.).  The court has not ruled on CCWM's motion for a preliminary injunction, which was fully briefed in August, 2019. *See* ECF No. 26, *CCWM*, (E.D. Mich.).

    ***The State Defendants' Breach.***  The preliminary injunction issued in *Buck* limits the State's ability to enforce the Non-discrimination Provision against STVCC.  But there is no order restricting the State's ability to enforce that provision against any other agency, including CCWM.  Notwithstanding the Department's knowledge of CCWM's refusal to comply with the Non-Discrimination Provision, on or about September 30, 2019, the Department renewed its Adoption Services Contracts, Nos. MA 190000001067, MA 190000001069 and MA 190000001093, with CCWM.  The contracts are attached hereto as Exhibits A, B, and C.  Upon information and belief, the State Defendants have taken no action to enforce the terms of the Settlement Agreement with respect to CCWM.

    In accordance with Section 7 of the Settlement Agreement, on January 23, 2020, Plaintiffs served a Demand Letter (the "Letter") on the State Defendants, "providing written notice" of the breach of the Agreement.[5]  ECF No. 82, at PageID.1449.  A copy of the Letter is appended hereto as Exhibit D.

---

adoption with the couple.  See ECF No. 62-4 at PageID.2334-2335, *Buck* v. *Gordon* (W.D. Mich.).

[5]    The Settlement Agreement provides a 90 day cure period to resolve noncompliance with the Agreement.  (Settlement Agreement Section 7). ECF No.

## LEGAL STANDARD

A court may summarily enforce a settlement agreement where (1) it "retain[ed] jurisdiction over the future enforcement of a settlement agreement," *RE/MAX Int'l, Inc.* v. *Realty One, Inc.*, 271 F.3d, 641 (6th Cir. 2001); (2) "agreement has been reached on all material terms," *see Therma-Scan, Inc.* v. *Thermoscan, Inc.* 217 F.3d 414, 419 (6th Cir. 2000); and (3) "no substantial dispute exists regarding the entry into and terms of [the] agreement," *see RE/MAX*, 271 F.3d at 646. *See also Stenger* v. *Freeman*, 683 F. App'x. 349, 350 (6th Cir. 2017) (Clay, J., concurring) (explaining that "[a] district court may summarily enforce a settlement agreement if" these three requirements are met).

The Supreme Court has found that "enforcement of the settlement agreement . . . is more than just a continuation or renewal of the dismissed suit" and thus "requires its own basis for jurisdiction," but that "[i]f . . . parties wish to provide for the court's enforcement of a dismissal-producing settlement agreement, they can seek to do so." *Kokkonen* v. *Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 378, 381 (1994). The Sixth Circuit has since interpreted *Kokkonen* to permit a federal district

---

82 at PageID 1449. However, the State has made clear in its recently filed Notice to the Court that "unless otherwise directed by this Court, the Department will take no action while waiting for Chief Judge Hood to rule on the preliminary injunction motion." ECF No. 86 at PageID.1477. Thus, Defendants have effectively waived their right to a 90 day cure period on this issue by demonstrating that further delay would be futile.

court to retain jurisdiction over the enforcement of a settlement agreement after the underlying case has been dismissed by including in the dismissal order "a separate provision retaining jurisdiction over the settlement agreement." *Moore* v. *U.S. Postal Svc.*, 369 F. App'x 712, 716 (6th Cir. 2010); *RE/MAX Int'l, Inc.* 271 F.3d at 643.

"[S]ettlement agreements are a type of contract" and as a result "the formation and enforceability of a purported settlement agreement are governed by state contract laws." *Cuyahoga Valley Ry Co.* v. *Monongahela Connecting R.R. Co.*, 515 F. App'x. 494, 498 (6th Cir. 2013). Under Michigan contract principles parties are "bound by the settlement agreement absent a showing of mistake, fraud, or unconscionable advantage." *Plamondon* v. *Plamondon*, 583 N.W.2d 245, 246 (Mich. Ct. App. 1998). A district "court must enforce the settlement as agreed to by the parties and is not permitted to alter the terms of the agreement." *Brock* v. *Scheuner Corp.*, 841 F.2d 151, 154 (6th Cir. 1988) (quotations and citations omitted).

## ARGUMENT

## I.     THE SETTLEMENT AGREEMENT MEETS THE STANDARD FOR SUMMARY ENFORCEMENT.

The Court should summarily enforce the Settlement Agreement here because (1) "it has subject matter jurisdiction over the separate, breach of contract controversy surrounding the settlement agreement," (2) the Dumonts and State

11

Defendants have reached agreement on all material terms, and (3) "the agreement is clear and unambiguous and no issue of fact is present." *See Stenger*, 683 F. App'x. at 350 (Clay, J., concurring) (internal quotation marks and alteration omitted).

### A. This Court Properly Retained Jurisdiction over the Enforcement of the Settlement Agreement.

There can be no question that this Court "retain[ed] jurisdiction over the enforcement of the Settlement Agreement in the Action." ECF No. 83. On March 22, 2019, this Court entered a stipulated order dismissing Plaintiffs' claims with prejudice "pursuant to the terms of the Settlement Agreement." *Id.* As part of its order, the Court "retain[ed] jurisdiction over the enforcement of the Settlement Agreement in the Action," *Id.* at PageID.1469 (citing *Kokkonen*, 511 U.S. at 381 and *RE/MAX Int'l, Inc.*, 271 F.3d at 641). "Because 'a provision 'retaining jurisdiction' over the settlement agreement' was expressly included in the order of dismissal, the district court [can] properly exercise[] jurisdiction in this matter over the [Plaintiffs'] request for enforcement." *Moore*, 369 F. App'x at 717.

### B. It Is Undisputed That The Dumonts and State Defendants Reached Agreement on All Material Terms.

The Plaintiffs and the State Defendants sought multiple extensions from the Court to discuss and negotiate a settlement, which was then memorialized, signed by the parties and filed with the Court. *See* ECF No. 82. As shown by the

record and as conceded by the State in its Notice, agreement was reached on all material terms. *See Brock*, 841 F.2d at 154 (6th Cir. 1988).

### C.   No Dispute Exists Regarding the Entry Into and Terms of the Agreement.

Finally, "no substantial dispute exists regarding the entry into and terms of an agreement." *See RE/MAX Int'l, Inc.*, 271 F.3d at 646.   Plaintiffs and State Defendants jointly filed a stipulation of voluntary dismissal, and represented to the Court that the Settlement Agreement, which was reduced to writing and filed with this Court, "dispos[ed] of all claims asserted in the Action." ECF No. 82.

The "terms of" the Settlement Agreement are clear and unambiguous, including a requirement that "[t]he Department shall enforce the Non-Discrimination Provision or Similar Provision against a CPA that the Department determines is in violation of, or is unwilling to comply with, such provisions, . . . up to and including termination of the Contracts . . . ." ECF No. 82, at PageID.1445-46.

"Summary enforcement" of the Settlement Agreement is therefore the appropriate method to address a breach. *See RE/MAX Int'l, Inc.*, 271 F.3d at 646 ("[N]o evidentiary hearing is required where an agreement is clear and unambiguous and no issue of fact is present.").

13

II.     **STATE DEFENDANTS ARE IN BREACH OF THE SETTLEMENT AGREEMENT.**

The State Defendants have materially breached the Settlement Agreement.  As they concede in their Notice (*See* ECF No. 86 at PageID.1477), they have not taken nor do they currently intend to take any action against CCWM, despite knowing that CCWM refuses to place children with same-sex couples seeking to adopt and/or foster, in violation of the non-discrimination provision in its contract with MDHHS.  Quite to the contrary, the State Defendants have voluntarily entered into new contracts with CCWM.  This is in clear violation of the Settlement Agreement, which provides that "[i]n the event a CPA refuses to comply with the Non-Discrimination Provision . . . the Department will terminate the CPA's Contracts."  ECF No. 82 at PageID.1445–46.  Contrary to the State's claim that it is "between a rock and a hard place," there is nothing stopping the State from honoring its commitment to enforce the Non-Discrimination Provision with respect to CCWM as it agreed to do in the Settlement Agreement.  ECF No. 86 at PageID.1477.

III.    **THIS COURT SHOULD ENJOIN THE STATE DEFENDANTS FROM CONTINUING TO VIOLATE THE SETTLEMENT AGREEMENT.**

In light of this breach, pursuant to both federal and Michigan law, the Court should order the State Defendants to comply with the pertinent provisions of the Settlement Agreement.

14

Under Michigan contract principles, parties are "bound by the settlement agreement absent a showing of mistake, fraud, or unconscionable advantage." *Plamondon*, 583 N.W.2d at 246. And the Sixth Circuit has explained that a district "court must enforce the settlement as agreed to by the parties and is not permitted to alter the terms of the agreement." *Brock*, 841 F.2d at 154 (quotations and citations omitted).

Accordingly, in light of the State's breach, this Court should summarily enforce the Settlement Agreement by ordering the State to comply with the pertinent terms of the Settlement Agreement. In particular, the Settlement Agreement contemplates that CPAs might be unwilling to comply with the non-discrimination provision, and it dictates how the State must respond:

> The Department shall enforce the Non-Discrimination Provision or Similar Provision against a CPA that the Department determines is in violation of, or is unwilling to comply with, such provisions . . . , up to and including termination of the Contracts in accordance with the termination provisions therein, including without limitation:

> In the event a CPA refuses to comply with the Non-Discrimination Provision or Similar Provision within a reasonable time after notification by the Department of a Contract Violation, the Department will terminate the CPA's Contracts.

ECF No. 82, at PageID.1445–1446. The State Defendants accordingly have a contractual obligation to the Plaintiffs to enforce the non-discrimination provision

15

against a CPA that is unwilling to comply with the Non-Discrimination Provision. And they have an obligation to the children in CCWM's care to ensure that they have access to all qualified families, including same-sex couples. Absent an order from the Court requiring compliance with the Settlement Agreement, this violation of the Settlement Agreement threatens to render the relief obtained by Plaintiffs meaningless.

## CONCLUSION

For the reasons set forth above, the Plaintiffs respectfully request that the Court grant their motion to reopen this Action for purposes of enforcing the terms of the Settlement Agreement and order the State Defendants to notify CCWM of its contract violation and, if CCWM refuses to comply "within a reasonable time after notification[,] . . . terminate the CPA's Contracts."  ECF No. 82 at PageID.1446.

16

Dated:  February 24, 2020

Respectfully submitted,

s/ Ann-Elizabeth Ostrager

Jay Kaplan (P38197)
Daniel S. Korobkin (P72842)
American Civil Liberties Union
    Fund of Michigan
2966 Woodward Avenue
Detroit, MI  48201
Telephone:  (313) 578-6823
jkaplan@aclumich.org
dkorobkin@aclumich.org

Leslie Cooper
American Civil Liberties Union
    Foundation
125 Broad Street, 18th Floor
New York, NY  10004
Telephone:  (212) 549-2633
lcooper@aclu.org

Daniel Mach
American Civil Liberties Union
    Foundation
915 15th Street NW
Washington, DC  20005
Telephone:  (202) 675-2330
dmach@aclu.org

Garrard R. Beeney
Ann-Elizabeth Ostrager
Leila R. Siddiky
Jason W. Schnier
Hannah Lonky Fackler
James G. Mandilk
SULLIVAN & CROMWELL LLP
125 Broad Street
New York, NY  10004-2498
Telephone:  (212) 558-4000
beeneyg@sullcrom.com
ostragerae@sullcrom.com
siddikyl@sullcrom.com
schnierj@sullcrom.com
facklerh@sullcrom.com
mandilkj@sullcrom.com

Counsel for Plaintiffs

17

## CERTIFICATE OF SERVICE

I hereby certify that on this date, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to all counsel of record.

This the 24th day of February, 2020.

*s/ Ann-Elizabeth Ostrager*

18